IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KURSTEN OWEN, individually
and dba Elegance & Geekery LLC,

        Plaintiffs,

    v.

BREANA ASKEW, individually
and dba Breromi; KIANDRIA
DEMONE BOYCE; DOES 1-100,

        Defendants.

Civ. No. 6:25-cv-01272-AA

**OPINION & ORDER**

AIKEN, District Judge.

    This case comes before the Court on Plaintiff's Ex Parte Motion for Temporary Restraining Order. ECF No. 8. For the reasons set forth below, the Motion is GRANTED.

## LEGAL STANDARD

    "In deciding whether to grant a motion for a temporary restraining order ('TRO'), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *Pacific Kidney & Hypertension LLC v. Kassakian*, 156 F. Supp.3d 1219, 1222 (D. Or. 2016). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,

22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## DISCUSSION

Plaintiff in this case is the owner of a business, Elegance & Geekery LLC, which sells hair accessories. Compl. ¶¶ 3, 7. ECF No. 1. Defendant Breana Askew is a resident of Florida who does business as Breromi. *Id.* at ¶¶ 1, 4. Defendant Kiandra Demone Boyce is a resident of Georgia. *Id.* at ¶ 5.

Beginning on July 14, 2025, Askew "began a coordinated online campaign making false statements," including "publicly accusing Plaintiff of design/invention theft, racism, selling counterfeit versions of goods Defendant Askew claimed she

owned patents and trademarks covering, and encouraging the public to report Plaintiff's online shopping platforms on sites like Etsy, Shopify, and TikTok as fraudulent and/or engaged in illegal activity including selling counterfeit goods." Compl. ¶ 8.

Askew's campaign is based on her claim that Plaintiff is selling a hair accessory which Askew claims infringes on her patent. Compl. ¶ 10. Plaintiff alleges that "Askew's only claim to any intellectual property is her filing of an application (not yet reviewed) for a trademark over the phrase 'Magnetic Hair Clip' and a filed patent application (not yet published)" and that the "content of that application has never been provided, so no one knows what she is even claiming she has rights to." *Id.*

Plaintiff alleges that between July 14 and July 17, 2025, Defendants "engaged in an online smear campaign, attempting to leverage public hate and harassment as a means of forcing Plaintiff to flee the market." Compl. ¶ 12. This campaign is "ongoing" and "will likely continue without court interference." *Id.* Among other things, Defendants have accused Plaintiff of racism, theft of intellectual property relating to the hair clip, and the sale of counterfeit goods. *Id.* at ¶¶ 13-14. Boyce has attempted to coordinate a large number of third-party complaints to Plaintiff's vendors in an effort to have Plaintiff's store removed from online platforms. *Id.* ¶ 14.

Defendants' campaign against Plaintiff has resulted in public confusion, as well as threats and abuse directed at Plaintiff by third parties who read Defendants' statements concerning Plaintiff. Compl. ¶ 16.

This campaign has damaged Plaintiff's business reputation and her personal reputation. Plaintiff alleges that she had suffered lost profits, lost sales, and lost customer goodwill. Compl. ¶ 18.

Plaintiff bring claims for defamation (Claim 1); trade defamation (Claim 2); tortious interference with business relations and prospective economic advantage (Claim 3); civil conspiracy to defame and interfere with business (Claim 4); intentional infliction of emotional distress (Claim 5); false advertising and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a) (Claim 6); unfair and deceptive trade practices under Oregon law as to Askew (Claim 7); and negligence (Claim 8). Plaintiff seeks injunctive and declaratory relief.

With respect to the TRO motion, Plaintiff focuses on her claims for defamation and seeks an injunction restraining Askew and Boyce from making further defamatory statements concerning Plaintiff or her business; engaging in harassing or misleading conduct or encouraging others to do so; and directing Askew and Boyce to remove the defamatory posts they have already made concerning Plaintiff or her business.

### I.   Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on

the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

As noted, Plaintiff's TRO motion is focused on her claims for defamation. The Oregon Supreme Court has "recognized a common-law action for defamation for injury to reputation for over 150 years." *Neumann v. Liles*, 358 Or. 706, 711 (2016). To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party. *Wallulis v. Dymowski*, 323 Or. 337, 342-43 (1996). A defamatory statement is one "that would subject the plaintiff to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held or excite adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Neumann*, 358 Or. at 711 (internal quotation marks and citation omitted, alterations normalized). In the professional context, a statement is defamatory if it falsely "ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Brown v. Gatti*, 341 Or. 452, 458 (2006) (internal quotation marks and citation omitted).

Some defamatory statements are actionable *per se*, meaning without proof of pecuniary loss or special harm. *Neumann*, 358 Or. at 716. "Libel, that is, defamation by written or printed words, is actionable *per se*," while slander, "which is defamation by spoken words, also may be actionable *per se* under certain circumstances." *Id.* Among the categories of *per se* defamation are statements accusing the plaintiff of "misconduct or dishonesty in the performance of his profession or employment."

*Wheeler v. Green*, 286 Or. 99, 124 (1979); *see also Barnett v. Phelps*, 97 Or. 242, 244-45 (1920) (listing the categories of *per se* defamatory statements, which include "defamatory words, falsely spoken of a party which prejudice such party in his or her profession or trade.").

Here, Plaintiff has alleged that Defendants have publicly and falsely accused her of theft and the sale of counterfeit goods and that they have incited third parties to make false reports against her business. Plaintiff has supported these allegations with exhibits which appear to show Defendants making public statements accusing Plaintiff, among other things, of stealing intellectual property. The Court concludes that Plaintiff has demonstrated a likelihood of success on the merits and that this factor weighs in favor of injunctive relief.

## II.     Irreparable Harm

A plaintiff seeking an injunction must "must establish that irreparable harm is *likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original). Plaintiff has presented evidence that Defendants' false statements have and will continue to harm their business interests and goodwill. Loss of goodwill supports a finding of irreparable harm. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). Plaintiff has made a sufficient showing of irreparable harm to justify the issuance of an injunction.

## III.    Balance of the Equities

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding

of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). Here, Plaintiff is faced with the ongoing harm to her business reputation and business goodwill if Defendants are allowed to continue publishing defamatory statements concerning Plaintiff and her business. Defendants, by contrast, will suffer little, if any, hardship in not being allowed to publish statements concerning Plaintiff or her business. The balance of the equities weighs in favor of the requested injunction.

### IV.     Public Interest

The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Although the issuance of an injunction against speech based on falsity implicates serious First Amendment concerns, "courts routinely grant TROs restricting speech that is not merely false, but defamatory." *Recovery Housing Academy LLC v. Candelario*, 562 F. Supp.3d 333, 339-40 (D. Ariz. 2022). Here, the Court concludes that, at the very least, the public interest does not weigh against the issuance of a TRO.

## CONCLUSION

For the reasons set forth above, Plaintiff's Ex Parte Motion for Temporary Restraining Order, ECF No. 8, is GRANTED. The Court concludes that no bond by Plaintiff is necessary at this time, but the Court will consider the issue of a bond at the time of the preliminary injunction hearing. As of the date and time of this Order,

Defendant Breana Askew, individually and doing business as Breromi, and Defendant Kiandria Demone Boyce are ENJOINED from:

(1) Publicly accusing Plaintiff Kursten Owen, individually and doing business as Elegance & Geekery LLC, of theft, counterfeiting, or other unlawful business practices;

(2) Engaging in harassing conduct directed at Plaintiff, such as filing complaints with Plaintiff's business partners, or the encouraging of third parties to do so;

This injunction is effective from the date and time of this Order and shall continue in effect for fourteen (14) days. Plaintiff is directed to promptly serve the Complaint, the Motion for Temporary Restraining Order, and this Order on Defendants. Plaintiff is to file proof of service on Defendants within seven (7) days of the date of this Order. The Court sets an evidentiary hearing on Plaintiff's request for a preliminary injunction for August 6, 2025, at 10:00 a.m., Pacific time. The Court notes that Defendants are residents of Florida and Georgia and so the hearing will be held by telephone.

It is so ORDERED and DATED this ___24th___ day of July 2025 at _8:09_ a.m..

                                                /s/Ann Aiken
                                                ANN AIKEN
                                                United States District Judge