Kursten Owen
AIS Services LLC
60995 Stoney Point Road
Vernonia, OR 97064

**In the United States District Court for the District of Oregon**

:

Kursten Owen (individually and    :

d/b/a Elegance & Geekery LLC),

   :     **Complaint for Damages, Immediate**
     **Injunctive Relief, and Jury Demand**

Plaintiff,

v.                :

         **Case No.:**    **TBA**        

Breana Askew (individually and    :

d/b/a Breromi), Kiandria Demone Boyce,

and Does 1-100,             :

Defendants.           :

_____

## Jurisdictional and Venue

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because the parties are citizens of different states (Plaintiff resides in Oregon, and the known Defendants reside in Georgia and Florida), and the amount in controversy exceeds $75,000, excluding interest and costs.

2. This Court is the proper venue under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this dispute happened in Oregon. The Defendants' online action individually targeted an Oregon resident and

Oregon business and were intended to affect both. All harm was also experienced in Oregon.

## Parties

3. Plaintiff: Kursten Owen is an individual who is the owner of Elegance & Geekery LLC, a business licensed in Oregon.

4. Defendant Askew: Breana Askew is an individual doing business as Breromi.

5. Defendant Demone: Kiandria Demone Boyce is an individual who resides in Georgia.

6. Doe Defendants are currently unknown but may become known given the online nature of the events.

## Facts

7. Plaintiff operates an online business, Elegance & Geekery LLC, which sells accessories and the business gross sales were $190,310 last year.

8. On July 14, 2025, Defendant Askew began a coordinated online campaign making false statements: publicly accusing Plaintiff of design/invention theft, racism, selling counterfeit versions of goods Defendant Askew claimed she owned patents and trademarks covering, and encouraging the public to report Plaintiff's online shopping platforms on sites like Etsy, Shopify, and TikTok as fraudulent and/or engaged in illegal activity including selling counterfeit goods.

9. On July 14, 2025 around 9:50 PM, Defendant Askew first sent Plaintiff a "Cease and Desist" email wherein she stated: "I am writing to formally notify you that I have filed a patent application with the United States Patent and Trademark Office (USPTO) June 2025 relating to the Magnetic Hair Clique Invention…This letter serves as formal notice of our intellectual property rights…we urge you to immediately cease and desist from all activities that may infringe upon the claims of our application…if you continue any activities that may infringe upon our pending intellectual property rights, we reserve the right to pursue all available legal remedies." The cease and desist therefore essentially demanded Plaintiff immediately stop marketing, producing, or selling any products of hers that "infringe" a patent application that Defendant Askew did not disclose, making it impossible to even know what she claimed she had property rights over.

10. Despite the "Cease and Desist" granting "ten (10) business days from receipt" to respond, Defendant Askew almost immediately took to social media on July 15, 2025 to begin publicly defaming and harassing Plaintiff in an attempt to shame her into compliance:

   a. On multiple posts across Plaintiff's business Instagram account, Defendant Askew, writing from her own business Instagram account, repeated: "The functionality of the magnetic hair clique design **has been patented**. Down to the specific of using N52 magnets to create the hair clips as a claim. Remaining your invention to make **your own**

**design styles is still infringement. You can make you own styles with credit, but they cannot be sold. I will take action legally in the future (next few months) when my patent is finalized is this continues to be sold** on your storefront so fair warning." (41, 42, 44)

b. At this time, Defendant Askew's various social media profiles represented her products as "patented" and with the ™ symbol indicating they were trademarked. (59, H, F). She publicly stated, "I said **I trademarked my invention name and patented**." (59) She updated some of these during the course of her harassment campaign to indicate they were actually "patent pending." (40)  This indicates that she was aware of the legal difference between having a patent and a pending patent and was intending to use the leverage of purportedly having a patent in order to boost the image of her product and scare potential competitors. In reality, Defendant Askew's only claim to any intellectual property is her filing of an application (not yet reviewed) for a trademark over the phrase "Magnetic Hair Clip" and a filed patent application (not yet published). (Q, Z, 1) The content of that application has never been provided, so no one knows what she is even claiming she has rights to.

11. Because Plaintiff not only woke up to the receipt of both the cease and desist email and the start of Defendants' social media harassment campaign, it is evident that Defendant Askew sent the cease and desist in the late, evening

hours of July 14, 2025 and began her social media campaign almost immediately.

12. Between July 14-17, 2025, Defendant Askew and Defendant Demone engaged in an online smear campaign, attempting to leverage public hate and harassment as a means of forcing Plaintiff to flee the market. This campaign is ongoing and will likely continue without court interference.

13. Defendant Askew defamed Plaintiff and/or her products and business when falsely accusing her of theft, lies, racism. She additionally defamed her by stating she was committing an illegal action, selling counterfeits, and defamed her products and business by calling the products counterfeits. She additionally called on the public to continue in the defamation and spread it, particularly through telling them to report her store fronts, which was an explicit attempt to interfere with Plaintiff's business and business relationships/agreements with platforms like Shopify, Etsy, and TikTok. These acts are factually supported in the attached evidentiary documents, which include the following:

   a. G: "This is a sad case of a white woman trying to **steal** from a black woman **for her own personal gain/profit**…I have a patent pending on my invention but can't sue until it is finalized. I attempted to Cease and Desist but she ignored it. She **stole my invention concept**, and is trying to claim it as her own. **Lied** about never seeing my invention before **to have a racist attack on my brand**."

b. G: "The best thing we can do at the moment is **file a complaint for illegal activity and claim she is selling counterfeits**" The post then instructs members of the public on how and where to file these false complaints.

c. I: Includes steps to report Plaintiff's store. "**Counterfeit Storefront: eleganceandgeekery.com**"

d. Q: post implying the Plaintiff "was plotting to **steal and tried to trademark "magnetic hair clip"**"

e. 11, 12: "The person **who stole my invention** just posted a tiktok & reel claiming I didn't file a patent because she couldn't find the number." And "this is defamation right?" This statement is also inaccurate. Plaintiff simply stated she couldn't **find any evidence** that a patent had been filed, which is true because the filing was not and is not published.

f. 20, 21: "you are a **thief**"

g. 13, 14, 18, 22, 24: Multiple posts directed towards defending and reasserting her false claims and calling on followers to do the same.

h. 15, 16 ("giving my video exposure"): Posts using publicity garnered by unlawful conduct to self-promote and re-direct business from Plaintiff to herself.

    i.   16: "**She has been harassing my tiktok**" despite Plaintiff making no claims or posts at all on Defendant Askew's TikTok. And instructing follows to help with "Defending me here."

    j.   19: "**she has people on tiktok calling me a bully**" despite Plaintiff directing no one to address any comments towards Defendant Askew.

    k.   17: posts directing followers to make false claims defaming Plaintiff's goods as counterfeit.

    l.   19: Instructing followers to "repost on tiktok for more traction, she has a bunch of racists trying to defend her"

14. Defendant Demone, to an audience of 102,000 followers (26), did the same as Defendant Askew:

    a.   A: "A Black woman inventor designed a magnetic hair clip…and a white lady **immediately stole her design**."

    b.   B, K: Posted faces and names of the Plaintiff and her family member online in an act of doxing.

    c.   J: "Keep reporting **that thief**."

    d.   L: "@eleganceandgeekery **stole a Black woman inventor's design**."

    e.   Posts containing content solely intended to cause Plaintiff emotional distress and anguish: L, 32, 34, 38, 39, 47, 48, 56 (also inviting another large creator to add onto the defamatory dog-pile), 57, 58

    f.   M: "the white woman **stealing** @brebreomi's design" and "I **broke down the code on her checkout page and found she uses**

**Shopify. And Shopify has a policy against selling counterfeit items. Enough complaints will flag the store and force her to prove the products are hers…or take the whole store down**."

g. N, 30: "this **colonizer stole** from a Black inventor" and linking to Plaintiff's TikTok page in order to direct the public there to further harass and bully the Plaintiff.

h. O, 29: "@eleganceandgeekery Bre didn't **send a mob after you…I DID.**" And "Stop **stealing from Black women**." Defendant therefore acknowledges and publicly (and repeatedly, as she also said the same thing in a later video) admits that she intended to, and did, encourage the public to attack the Plaintiff, harass her, and cause her emotional harm as well as damage her business.

i. P, 27m: "This company **STOLE this idea from a Black inventor**."

j. 49: "@eleganceandgeekery is now **essentially blackmailing a Black woman inventor**." A video is also part of this post that contains deeply troubling, threatening language, continues to spread defamatory statements that are demonstrably false and at the very least negligently informed, threatens harassment and unknown harm against Plaintiff, and confirms that absent court intervention Defendant Demone intends Plaintiff, her business, and possibly her family, harm. The transcript of Defendant Demone's statements in this video is attached with the evidence in the complaint.

15. Defendant Askew and Demone were engaged in an active and coordinated effort to harass and defame Plaintiff. G: "@kiandria and I are strategizing," I: "@kiandria and @brebreomi have the info on their pages" for how to falsely report Plaintiff's products and shop, M, 31: "we aren't just tussling in the comments. **We have a plan**."

16. Their defamation caused the public expressed confusion, believing the Defendants' defamatory statements, and, propelled by Defendants' instructions to do so, engaged in an a hate campaign that is currently unending and involves threats, repeating of the defamatory statement, and mass reporting of Plaintiff and her business as engaging in illegal conduct via selling purported "counterfeit" goods. Plaintiffs accounts were flooded by thousands of individuals calling her a "racist" and "thief," because they were led to believe she was those things by the Defendants. This was intended by Defendants to be acts of public shaming to force Plaintiff into submission and destroy her business.

   a. Public confusion and hate directed to Plaintiff and business, accusing Plaintiff of defamation for stating she was unable to find any public patent filing and didn't think she could infringe because of that, with encouragement to continue to falsely report Plaintiff's business to platforms like Shopify: C, D, E, S, T, V, W, 2 (also showing how Defendant Askew's actions gave her online publicity as reflected via google search amplification), 4, 5, 6, 7, 45, 46, 50, 51, 52, 53, 54, 55,

b. Public confirmation that they had made false counterfeit claims based
on defamation by Defendants and encouraging others to do so: J

17. Defendant Askew is now soliciting donations to support a legal campaign
against Plaintiff. In her public funding campaign, she continues to recklessly
defame Plaintiff without evidence and with no regard for the truth.

a. "This company has a history of stealing products and rebranding them
to avoid infringement."

b. "They are counterfeit thieves."

c. "The owner of the company has taken to social media to play the victim
to their followers." In reality, Plaintiff has posted a total of (3) videos in
response to the onslaught of hatred that was undeniably first initiated
by Defendant Askew. This is in comparison to many, many messages
on social media that the Defendants have posted. The attached
evidence documentation of screenshots alone is over 80 pages long.

d. "On July 15, I received a notification" and subsequently sent a cease
and desist to Plaintiff. The email is time stamped as received by
Plaintiff the evening of July 14.

e. "This company is not only copying my product but also is mimicking
me as a creator. They've adopted my marketing campaign, the
language I use, and the content I produce." There are no real
similarities between the design of these products (Plaintiff's look like
donuts, while Defendant Askew's are stars), or advertising/language,

other than generic references to "low tension" hair styles and "space buns."

f. Describing Plaintiff as engaged in "a deliberate act of stealing my creative identity and the essence of my business."

18. As a result of this ongoing conduct, Plaintiff has:

a. Suffered an overnight, confrontation with a sudden surge of coordinated messages, threats, and commercial penalties from online platforms, as well as an overwhelming volume of hate speech, customer loss, and unfounded negative reviews.

b. Suffered, and will continue to suffer, irreparable injury to her personal reputation.

c. Suffered, and will continue to suffer, irreparable injury to her business reputation.

d. Suffered severe emotional anguish, and suffered threats (including death) to herself and her family, requiring acute therapy.

e. Had to decrease activity on her business platforms (i.e., through actions like restricting comments and, in some instances, entirely disabling her business accounts).

f. Suffered financial loss in the form of lost profits, lost sales, lost future sales, and loss of customer support/backing.

    g. Suffered overwhelming numbers of false reports against her social media platforms and business accounts/shops as a result of direct filings by Defendants and the filings they incited others to make.

## Claims for Relief

The following claims are brought against both Defendant Askew and Defendant Demone, and any appropriate Doe Defendants discovered through litigation, unless the claim is specifically noted as only brought against Defendant Askew. All allegations above (1-18), apply equally to all of the following claims.

### Claim 1: Defamation (Libel and Slander)

19. Defendants Askew and Demone published and distributed numerous false statements to third parties, both in written (libel) and spoken (slander) forms, accusing Plaintiff of theft, racism, and the sale of counterfeit products.

20. These statements were made with actual malice or reckless disregard for the truth, intending to harm Plaintiff's reputation and business.

21. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

22. As a direct and proximate result, Plaintiff suffered reputational harm, emotional distress, and loss of business opportunities in excess of $30,000.00.

### Claim 2: Trade Defamation (Injurious Falsehood/Business Disparagement)

23. Defendants Askew and Demone knowingly made and disseminated false, disparaging statements specifically about the quality, authenticity, and legality of Plaintiff's goods and services.

24. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

25. Such statements wrongfully imputed a lack of integrity to Plaintiff's business and resulted in actual and consequential damage, including economic and reputational losses in excess of $20,000.00.

**Claim 3: Tortious Interference with Business Relations and Prospective Economic Advantage**

26. Defendants Askew and Demone intentionally and improperly interfered with Plaintiff's existing and prospective contractual/business relationships, including platforms such as Shopify, Etsy, and TikTok, as well as with existing and potential customers.

27. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

28. This interference was accomplished through public campaigns encouraging false reports, coordinated harassment, and disparagement, resulting in disrupted business operations and monetary losses in excess of $10,000.00.

**Claim 4: Civil Conspiracy (to Defame and to Interfere with Business)**

29. Defendants Askew and Demone knowingly acted in concert and agreement, with the shared purpose of defaming Plaintiff and interfering with her business.

30. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

31. Through coordinated planning and repeated joint actions, Defendants furthered their unlawful objectives, amplifying the harm to Plaintiff, which is in excess of $10,000.00.

### Claim 5: Intentional Infliction of Emotional Distress

32. Defendants Askew and Demone engaged in extreme and outrageous conduct, including mass publication of defamatory content, doxing, solicitation of online harassment, and incitement of threats against Plaintiff and her family.

33. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

34. Such conduct was intended to cause, and did cause, Plaintiff severe emotional distress, necessitating therapy, reclusion from online and public life, and affecting her personal well-being, resulting in excess of $20,000.00 of harm.

### Claim 6: False Advertising (Lanham Act, 15 U.S.C. § 1125(a)) and Unfair Competition

35. Defendants Askew and Demone made false and misleading statements about Plaintiff's products and business, misrepresenting them as counterfeit,

infringing, and illegal, in commercial advertising and public communications intended to mislead consumers.

36. Such conduct constitutes false advertising and unfair competition, causing confusion in the marketplace and substantial commercial harm to Plaintiff.

37. As a result of this conduct, Plaintiff is entitled to actual damages in excess of $2,000.00, disgorgement of Defendant Askew's profits, and treble damages due to the willfulness of Defendants' conduct.

## Claim 7: Unfair and Deceptive Trade Practices (State Law) against Defendant Askew

38. Defendant Askew's actions constitute unfair, deceptive, and unlawful practices under Oregon's Unlawful Trade Practices Act (ORS § 646.608), based on her dissemination of false information and unfair competition.

39. As a result of this conduct, Plaintiff is entitled to actual damages in excess of $2,000.00, disgorgement of Defendant Askew's profits, and any other statutorily permitted remedies and damages.

## Claim 8: Negligence

38. In the alternative, if Defendants Askew and Demone did not act intentionally, they acted with negligence by failing to ascertain the truth or falsity of their statements and campaigns, foreseeably causing injury to Plaintiff's business and reputation.

39. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

40. As a direct and proximate result, Plaintiff suffered reputational harm, emotional distress, and loss of business opportunities in excess of $30,000.00.

### Claim 9: Request for Immediate Injunctive Relief

34. Plaintiff will suffer immediate and irreparable injury if Defendants Askew and Demone are not immediately enjoined from publishing or disseminating further false and defamatory statements and from inciting third parties to take punitive action against Plaintiff and her business. Plaintiff's reputation, business relations, and safety are in immediate jeopardy, and monetary damages alone cannot compensate for the ongoing harm as described above. Plaintiff therefore respectfully requests the Court issue a temporary restraining order, followed by a preliminary injunction, prohibiting Defendants from making further defamatory statements, engaging in harassing or misleading conduct or encouraging others to do so, as well as prohibiting them from keeping their current defamatory posts up and circulating, or allowing current defamatory posts to continue to be engaged with or viewed by the public.

### Claim 10: Declaratory Relief

35. Plaintiff seeks a declaration that she has not infringed upon any valid intellectual property rights of Defendant Askew and that Defendant Askew and Defendant Demone's claims and conduct are unsupported and wrongful.

## Jury Demand

36. Plaintiff demands a trial by jury on all claims.

## Prayer for Relief

**WHEREFORE, Plaintiff respectfully requests:**

37. Judgment in her favor as to all claims for relief;

38. Compensatory, consequential, and punitive damages not less than $124,000;

39. Statutory damages as provided by law;

40. Costs and reasonable attorneys' fees;

41. Immediate Injunctive relief;

42. Declaratory relief; and

43. All such further relief as the Court deems just and proper.



### **Affidavit in Support of Immediate Injunctive Relief/Restraining Order**

I, Kursten Owen, declare under penalty of perjury that all factual allegations above and in attached exhibits are true and correct to the best of my knowledge. The overnight shift from legal threat to mass, ongoing harassment has caused me and continues to cause me immediate and irreparable business, reputational, and emotional damage. Allowing these individuals to continue to assert these illogical, harassing, damaging, and unfounded claims will result in irreparable continued harm to my reputation and business and place my mental and physical health, as well as that of my family, whose information is actively being disclosed, in immediate danger.

Signed,

*Kursten Owen*

Kursten Owen

July 17, 2025

**Please see attached
All Purpose
Jurat form
for additional
Notary Events**

# JURAT ATTACHMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ___Texas_____ }

COUNTY OF ___Harris_____ }

The foregoing instrument was subscribed and sworn before me this date of
__07/17/2025__, by _Kursten Owen_____

This notarial act was an online notarization.
Document Notarized using a Live Audio-Video Connection



BEATRIZ ADRIANA LOPEZ
ELECTRONIC NOTARY PUBLIC
STATE OF TEXAS
NOTARY ID: 135513465
COMISSION EXP: APRIL 29 2029

(Notary Seal)

Notary's Signature_____

Registration No.: _135513465_____

Commission Expiration Date:_April 29, 2029_____