IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KURSTEN OWEN, individually and dba Elegance & Geekery LLC, | Civ. No. 6:25-cv-01272-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| BREANA ASKEW, individually and dba Breromi; KIANDRIA DEMONE BOYCE; DOES 1-100, | |
| Defendants. | |

AIKEN, District Judge.

This case comes before the Court on Plaintiff's Motion for a Preliminary Injunction. ECF No. 8. The Court held an evidentiary hearing by telephone on August 6, 2025. ECF No. 32. For the reasons set forth below, the motion is GRANTED in part.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the

balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## BACKGROUND

Plaintiff in this case is the owner of a business, Elegance & Geekery LLC, which sells hair accessories. Compl. ¶¶ 3, 7. ECF No. 1. Defendant Breana Askew is a resident of Georgia who does business as Breromi. *Id.* at ¶¶ 1, 4. Defendant Kiandria Demone Boyce is a resident of Georgia. *Id.* at ¶ 5.

Beginning on July 14, 2025, Askew "began a coordinated online campaign making false statements," including "publicly accusing Plaintiff of design/invention theft, racism, selling counterfeit versions of goods Defendant Askew claimed she owned patents and trademarks covering, and encouraging the public to report Plaintiff's online shopping platforms on sites like Etsy, Shopify, and TikTok as

fraudulent and/or engaged in illegal activity including selling counterfeit goods." Compl. ¶ 8.

Askew's campaign is based on her claim that Plaintiff is selling a hair accessory which Askew claims infringes on her patent. Compl. ¶ 10. Plaintiff alleges that "Askew's only claim to any intellectual property is her filing of an application (not yet reviewed) for a trademark over the phrase 'Magnetic Hair Clip' and a filed patent application (not yet published)" and that the "content of that application has never been provided, so no one knows what she is even claiming she has rights to." *Id.*

Plaintiff alleges that between July 14 and July 17, 2025, Defendants "engaged in an online smear campaign, attempting to leverage public hate and harassment as a means of forcing Plaintiff to flee the market." Compl. ¶ 12. This campaign is "ongoing" and "will likely continue without court interference." *Id.* Among other things, Defendants have accused Plaintiff of racism, theft of intellectual property relating to the hair clip, and the sale of counterfeit goods. *Id.* at ¶¶ 13-14. Defendants have attempted to coordinate third-party complaints to Plaintiff's vendors in an effort to have Plaintiff's store removed from online platforms.

Defendants' campaign against Plaintiff has resulted in public confusion, as well as threats and abuse directed at Plaintiff by third parties who read Defendants' statements concerning Plaintiff. Compl. ¶ 16.

This campaign has damaged Plaintiff's business reputation and her personal reputation. Plaintiff alleges that she had suffered lost profits, lost sales, and lost customer goodwill. Compl. ¶ 18.

Case 6:25-cv-01272-AA    Document 39    Filed 08/07/25    Page 4 of 18

On July 24, 2025, the Court granted Plaintiff's motion for a temporary restraining order ("TRO") and enjoined Defendants from (1) "[p]ublicly accusing Plaintiff Kursten Owen, individually and doing business as Elegance & Geekery LLC, of theft, counterfeiting, or other unlawful business practices," and (2) from "[e]ngaging in harassing conduct directed at Plaintiff, such as filing complaints with Plaintiff's business partners, or the encouraging of third parties to do so." ECF No. 10. Plaintiff was directed to promptly serve Defendants with the Complaint, the TRO motion, and the Order granting the TRO and to file proof of service within seven days.

Boyce was personally served by a process server in Marietta, Georgia on July 25, 2025. ECF No. 14. Despite repeated efforts, Plaintiff was unable to serve Askew by process server and, on July 29, 2025, Plaintiff filed a motion for alternative service. ECF No. 13. The Court granted the motion on July 30, 2025, and authorized Plaintiff to serve Askew by email. ECF No. 15. Defendant Askew was served by email on July 30, 2025. ECF No. 16.

Boyce appeared in this action on August 5, 2025. Askew appeared in this action at the hearing held on August 6, 2025.

## DISCUSSION

Plaintiff bring claims for defamation (Claim 1); trade defamation (Claim 2); tortious interference with business relations and prospective economic advantage (Claim 3); civil conspiracy to defame and interfere with business (Claim 4); intentional infliction of emotional distress (Claim 5); false advertising and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a) (Claim 6); unfair and

Page 4 –OPINION & ORDER

deceptive trade practices under Oregon law as to Askew (Claim 7); and negligence (Claim 8). Plaintiff seeks injunctive and declaratory relief in addition to monetary damages.

Plaintiff focuses her request for injunctive relief on her claims for defamation and seeks to continue the existing TRO as a preliminary injunction restraining Askew and Boyce from making further defamatory statements concerning Plaintiff or her business or engaging in harassing or misleading conduct or encouraging others to do so.

### I. Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

#### A. Service

At the hearing, Defendants each separately challenged sufficiency of service. Boyce asserts that she was not properly served and denies that she received personal service. However, on July 30, 2025, Plaintiff filed a Return of Service signed by a professional process server stating that Boyce was personally served on July 25, 2025, at 3:40 p.m. ECF No. 14. The Ninth Circuit has held that a "signed return of service

constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *S.E.C. v. Internet Sols. for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (internal quotation marks and citation omitted). Boyce has not presented evidence sufficient to overcome the prima facie showing of the Return of Service.

With respect to Askew, on July 30, 2025, the Court authorized alternative service by email on Askew following multiple unsuccessful attempts to complete conventional service. ECF No. 15. On July 30, 2025, Plaintiff filed a signed Return of Service indicating that alternative service by email was accomplished at the address named in the Court's Order. ECF No. 16. Askew has not presented evidence sufficient to overcome the prima facie showing of the Return of Service.

The Court concludes that both Defendants were properly served and that no defects of service will prevent the exercise of jurisdiction over Plaintiffs.

### B. Personal Jurisdiction

Both Defendants assert that this Court may not exercise personal jurisdiction over them because they lack the necessary minimum contacts with Oregon to sustain personal jurisdiction.

"An exercise of personal jurisdiction in federal court must comport with both the applicable state's long-arm statute and the federal Due Process Clause." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022). Oregon's long-arm statute "authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

Accordingly, the Court must examine whether its exercise of jurisdiction over Defendants would comport with the limits imposed by federal due process.

There are two types of personal jurisdiction that a court may exercise over a defendant: general and specific personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). A defendant is typically only subject to general personal jurisdiction in the state where he or she is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks and citations omitted). Here, there are no facts that would establish general personal jurisdiction in the State of Oregon and so the Court must turn to specific personal jurisdiction.

"Federal due process permits a court to exercise personal jurisdiction over a non-resident defendant if that defendant has at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106, (9th Cir. 2020) (internal quotation marks and citation omitted). The Ninth Circuit uses a three-prong test to analyze whether a party's minimum contacts meet the due process standard for the exercise of specific personal jurisdiction. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022).

"First, the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Glob.*

*Commodities*, 972 F.3d at 1107 (internal quotation marks and citations omitted, alterations normalized). Second, the plaintiff's "claim must arise out of or relate to the defendant's forum-related activities." *Id*. Third, the district court's exercise of personal jurisdiction over the defendant must be reasonable. *Id*.

"All three prongs must be satisfied [for a court] to assert personal jurisdiction." *LNS Enters.*, 22 F.4th at 859. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Glob. Commodities*, 972 F.3d at 1107 (internal quotation marks and citation omitted).

Under the first prong of the specific-jurisdiction inquiry, "purposeful availment" and "purposeful direction" are "distinct concepts." *Glob. Commodities*, 972 F.3d at 1107. Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort, but "[a]t bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a rest of random, fortuitous, or attenuated contacts." *Id*. (internal quotation marks and citation omitted).

Because the claims in this case sound in tort, the Court will begin with the purposeful direction analysis. To determine whether a defendant "purposefully directed" its activities toward the forum, courts apply the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). "That test focuses on the forum in which the

defendant's actions were felt, whether or not the actions themselves occurred in the forum," and asks "whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands, Inc. v. Photoplaza*, 72 F.4th 1085, 1091 (9th Cir. 2023) (internal quotation marks and citations omitted). Under the second prong of the "effects" test, a plaintiff must demonstrate that the defendant expressly aimed its actions at the forum state and "'something more' than mere foreseeability is required in order to justify the assertion of personal jurisdiction, and that 'something more' means conduct expressly aimed at the forum." *Fatnani v. JPMorgan Chase Bank, N.A.,* 743 F. Supp.3d 1253, 1268-69 (D. Or. Aug. 1, 2024) (internal quotation marks and citation omitted, alterations normalized).

As discussed in the following section, the exhibits submitted by Plaintiff show Defendants repeatedly publishing statements accusing Plaintiff of being a thief and counterfeiter and encouraging their social media followers to report Plaintiff for selling counterfeit goods in an effort to have her online storefronts taken down. Boyce also posted images of Plaintiff's LinkedIn page, showing that she was located in Oregon. ECF No. 29-1, at 5. This demonstrates an intentional act, aimed at Plaintiff in Oregon, with the expectation that Plaintiff's Oregon-based business would be harmed by their actions. On this record, the Court concludes that Defendants' actions satisfy the "effects" test and that Defendants purposefully directed their activities towards Oregon.

To assess whether the claims arise out of Defendants' Oregon-related activities, courts use a "but-for" test. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-32 (9th Cir. 2003). Plaintiff's claims plainly arise out of Defendants' forum-related conduct and there is a "but-for" connection between the claims and Defendants' published accusations of theft and counterfeiting and their efforts to have Plaintiff's storefront removed.

Once it has been determined that a defendant has established minimum contacts with a forum, the defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). Courts consider seven factors in weighting reasonableness: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Harris Rutskey & Co.*, 328 F.3d at 1132. No one factor is dispositive and courts balance all seven factors. *Id.* Defendants have not addressed these factors, but as Defendants are pro se, the Court will assess them based on the record.

Here, with respect to the first factor, the Court has already concluded that Defendants purposefully directed their activities to Oregon and "[a]ctions directed at a forum resident expected to cause harm in the forum constitute purposeful injection."

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011).  The Court concludes this factor weighs in favor of jurisdiction.

The second factor concerns the "burden" of litigating the case in Oregon. Defendants are both residents of Georgia.  However, "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past." *CollegeSource*, 653 F.3d at 1080 (internal quotation marks and citation omitted).  The Court notes that Defendants were able to appear and participate in the hearing by telephone and, with the proliferation of videoconferencing software, the burdens of long-distance participation are less than they were even a few years ago.  The Court concludes that this factor weighs very slightly in Defendants' favor.

The third factor concerns conflict between the Court's exercise of jurisdiction in Oregon with the sovereignty of Georgia, Defendants' home state.  The allegations in this case concern a mix of federal and Oregon state law claims and, in the absence of any showing by Defendants, the Court concludes that this claim is neutral.

The fourth factor is the forum state's interest in adjudication.  "The Ninth Circuit assumes that a forum state maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Adidas America, Inc. v. Cougar Sport, Inc.*, 169 F. Supp.3d 1079, 1094 (D. Or. Mar. 14, 2016) (internal quotation marks and citation omitted).  This factor favors the exercise of jurisdiction.

The fifth factor concerns efficient judicial resolution. "This factor focuses on the location of the evidence and witnesses" and, as with the factor considering the burden on the defendant, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *Adidas America*, 169 F. Supp.3d at 1094 (internal quotation marks and citation omitted). Although no argument has been presented on this issue, the Court presumes that the parties' evidence and witnesses will largely be located in their home states. This factor is neutral.

The sixth factor is the convenience and effectiveness of relief for the plaintiff. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995). If Oregon is not a proper forum, then Plaintiff would be required to litigate this case in Georgia. Although litigating the case in Georgia would likely be inconvenient for Plaintiff, the Ninth Circuit does not give much weight to the plaintiff's inconvenience. *Id.* This factor only slightly favors jurisdiction.

The seventh factor concerns the availability of a suitable alternative forum. "Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource*, 653 F.3d at 1080 (internal quotation marks and citation omitted). Here, there has been no showing that Oregon is an unreasonable forum and so this factor does not weigh against the exercise of jurisdiction.

Weighed in the balance, the Court concludes that the exercise of jurisdiction in Oregon is reasonable. As all relevant factors have been satisfied, the Court concludes that it possesses personal jurisdiction over Defendants.

### C. Defamation

As noted, Plaintiff's motion is focused on her claims for defamation. The Oregon Supreme Court has "recognized a common-law action for defamation for injury to reputation for over 150 years." *Neumann v. Liles*, 358 Or. 706, 711 (2016). To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party. *Wallulis v. Dymowski*, 323 Or. 337, 342-43 (1996). A defamatory statement is one "that would subject the plaintiff to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held or excite adverse, derogatory or unpleasant feelings or opinions against the plaintiff." *Neumann*, 358 Or. at 711 (internal quotation marks and citation omitted, alterations normalized). In the professional context, a statement is defamatory if it falsely "ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Brown v. Gatti*, 341 Or. 452, 458 (2006) (internal quotation marks and citation omitted).

Some defamatory statements are actionable *per se*, meaning without proof of pecuniary loss or special harm. *Neumann*, 358 Or. at 712. "Libel, that is, defamation by written or printed words, is actionable *per se*," while slander, "which is defamation by spoken words, also may be actionable *per se* under certain circumstances." *Id.* Among the categories of *per se* defamation are statements accusing the plaintiff of "misconduct or dishonesty in the performance of his profession or employment." *Wheeler v. Green*, 286 Or. 99, 124 (1979); *see also Barnett v. Phelps*, 97 Or. 242, 244-

45 (1920) (listing the categories of *per se* defamatory statements, which include "defamatory words, falsely spoken of a party which prejudice such party in his or her profession or trade.").

Here, Plaintiff has alleged that Defendants have publicly and falsely accused her of theft and the sale of counterfeit goods and that they have incited third parties to make false reports against her business. Plaintiff has supported these allegations with exhibits which appear to show Defendants making public statements accusing Plaintiff, among other things, of stealing intellectual property and selling counterfeit goods. Among these exhibits[1] are:

- A post from Boyce stating that Plaintiff "stole" the magnetic hair clip design from Askew. Compl. Ex. 1, at 34.

- A post from Askew accusing Plaintiff of "trying to steal from a black woman for her own personal gain/profit," and stating that Plaintiff "stole [Askew]'s invention concept and is trying to claim it as her own." Askew also included a link and asked her social media followers to "follow the link to file a complaint to the merchant for illegal activity and state that [Plaintiff] is selling counterfeit products." Askew presented this course of action as the result of her "strategizing" with Boyce. Compl. Ex. 1, at 35.

- In another post, Askew asked her social media followers to follow a link and provided step-by-step instructions for them to report Plaintiff for "selling counterfeit items." Compl. Ex. 1, at 36.

---

[1] In the interests of brevity, the Court will not reproduce every post in which Defendants accused Plaintiff of theft or counterfeiting in this Opinion. The following list is a representative sample.

Page 14 –OPINION & ORDER

- Boyce posted that Plaintiff "stole a Black inventor's design." Compl. Ex. 1, at 36.

- Boyce posted that Plaintiff sells her products on Shopify, which "has a policy against selling counterfeit items," and that "Enough complaints will flag the store and force her to prove the products are hers . . . or take the whole store down." Compl. Ex. 1, at 37.

- Boyce stated that Askew "didn't send a mob after [Plaintiff] . . . I DID. Protect Black women. Stop stealing from Black women." Compl. Ex. 1, at 37.[2]

- Askew stated that Plaintiff "stole my invention." Compl. Ex. 1, at 41, and "you [Plaintiff] are not a small creator you are a theif [sic]." Compl. Ex. 1, at 44.

- Askew asked her social media followers to "continue to report this theif [sic], this is disgusting." Compl. Ex. 1, at 45.

On this record, the Court concludes that Plaintiff has demonstrated a likelihood of success on the merits of her claim for defamation and that this factor weighs in favor of injunctive relief.

## II.    Irreparable Harm

A plaintiff seeking an injunction must "must establish that irreparable harm is *likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original). Plaintiff has presented evidence that Defendants' false statements have

---

[2] At the hearing, Boyce stated that this post was intended to be sarcastic and that she had subsequently clarified this in statements online.

and will continue to harm their business interests and goodwill. Loss of goodwill supports a finding of irreparable harm. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). Plaintiff has made a sufficient showing of irreparable harm to justify the issuance of an injunction.

### III. Balance of the Equities

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). Here, Plaintiff is faced with the ongoing harm to her business reputation and business goodwill if Defendants are allowed to continue publishing defamatory statements concerning Plaintiff and her business and attempting to have Plaintiff's online storefronts taken down. Defendants, by contrast, will suffer little, if any, hardship in not being allowed to publish defamatory statements concerning Plaintiff or her business.

As discussed in the Court's order granting the TRO, "courts routinely grant TROs restricting speech that is not merely false, but defamatory." *Recovery Housing Academy LLC v. Candelario*, 562 F. Supp.3d 333, 340 (D. Ariz. 2022). However, the imposition of a more durable injunction against defamatory speech runs the risk of offending constitutional strictures against the prior restraint of speech, particularly when there has been no final adjudication that the speech in question is defamatory or otherwise outside the protections of the First Amendment. *Overstreet v. United Brotherhood of Carpenters and Joiners, Local Union No. 1506*, 409 F.3d 1199, 1218

(9th Cir. 2005); *Oakley, Inc. v. McWilliams*, 879 F. Supp.2d 1087, 1090-91 (C.D. Cal. 2012). In general, the remedy for defamation is an award of damages after publication, rather than injunctive relief. *Baffert v. Wunderler*, Case No. 3:23-cv-1774-RSH-BLM, 2025 WL 1784625, at *9 (S.D. Cal. June 27, 2025).

However, the Court also recognizes that it may be necessary to enjoin a litigant from harassing another party during the pendency of litigation. *Baffert*, 2025 WL 1784625, at *10; *see also Thomson v. Persistence Tech. BCI Pte Ltd.*, Case No. 2:23-cv-04669-MEMF-MAR, 2024 WL 5220885, at *3 (C.D. Cal. Dec. 26, 2024) ("Courts in this district and elsewhere have recognized that it may be permissible and necessary to enjoin a litigant from harassing another party."); *Beyond Blond Prods., LLC v. Heldman*, CV 205581 DSF (GJ Sx), 2022 WL 2784404, at *4-5, 7 (C.D. Cal. June 17, 2022) (enjoining a party from "sending threatening or harassing emails," and "posting threatening or harassing content" to or about another party).

The Court will therefore limit its previously issued TRO to preliminarily enjoin Defendants from engaging in harassment directed at Plaintiff or her business and particularly from seeking to have Plaintiff's online storefronts removed during the pendency of this action. This solution will balance the need to prevent irreparable harm to Plaintiff's business and business reputation during the pendency of this action with the need to avoid prior restraint on the exercise of Defendants' First Amendment rights.

### IV. Public Interest

The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Beyond the First Amendment issues already discussed, the Court concludes that the public interest does not weigh heavily either for or against the requested injunction.

For the reasons set forth above the Court will grant Plaintiff's request for a preliminary injunction in part and will enjoin Defendants from engaging in harassing conduct directed at Plaintiff or her business and, in particular, to refrain from seeking to have Plaintiff's online storefronts taken down.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction, ECF No. 8, is GRANTED in part. The Court concludes that no bond by Plaintiff is necessary at this time.

As of the date of this Order, Defendant Breana Askew, individually and doing business as Breromi, and Defendant Kiandria Demone Boyce are ENJOINED from engaging in harassing conduct directed at Plaintiff, such as filing complaints with Plaintiff's business partners, or the encouraging of third parties to do so.

It is so ORDERED and DATED this ___7th___ day of August 2025.

    /s/Ann Aiken
    ANN AIKEN
    United States District Judge