IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

Kursten Owen, individually and d/b/a
Elegance & Geekery LLC,
    Plaintiff,

v.

Breana Askew (individually and d/b/a Brerami),
Kiandria Demone Boyce, and Does 1-100,
    Defendants.

Case No. 6:25-cv-1292-AA

DECLARATION OF KIANDRIA DEMONE BOYCE
REGARDING COMPLIANCE WITH TRO

**Notice of Filing**
Respondent, Kiandria Demone Boyce, respectfully submits this Declaration to place on the record her compliance with the Temporary Restraining Order and related concerns. Respondent submits this Declaration solely to address compliance with the Temporary Restraining Order. Nothing herein should be construed as a waiver of Respondent's pending motion to dismiss for lack of jurisdiction or other defenses.

I, Kiandria Demone Boyce, declare as follows:

1. I am the Respondent in this matter and I am subject to the Temporary Restraining Order ("TRO") entered on 08/07/25.
2. I have complied in good faith with the TRO. I have not harassed Petitioner, nor have I instructed or encouraged any third parties to harass Petitioner or to report her website. On or about August 23, 2025, a content creator whom I did not previously know posted a video stating that Petitioner had made contact with her and mentioned these proceedings, and the content creator tagged me in that video. The third party content creator did not threaten Petitioner in any way; rather, she simply chose to respond publicly to Petitioner's threat of legal action. In her post, this creator spoke about being an activist and the importance of calling out harmful behavior. She stated that the plaintiff had claimed, in an email, that the judge told her that she "had a pretty good chance", and was "likely to win". The content creator disputed this assertion, noting that it was highly unlikely a court would make such a blanket assurance before any ruling. She mentioned the previous work I have done in Civil Rights, and encouraged people to research it. I commended her for her leadership style and encouraged my followers to watch her content as an example of supporting other women.

2A. It is important to note that this lawsuit only became public knowledge after Petitioner herself posted a video discussing it. Since that time, I have received multiple inquiries about the case, but I refrained from addressing it until I was tagged in this content creator's video. Even then, I did not discuss the details of the case; I only commended the creator for standing up for herself and pointed to her actions as an example of allyship and leadership. Shortly after that post, Petitioner sent me the email referenced above. Given the timeline and the fact that this is the only content related to the lawsuit that I have engaged with, I have reason to believe Petitioner's email concerns this particular post, despite the fact that I have not opened the email or engaged with Petitioner directly.

3. On 08/24/25, Petitioner sent me an email regarding this matter. Out of caution and respect for the TRO, I have not opened or responded to this email, because I want clarification from the Court before engaging with any direct communication. I intend to forward this email to my attorney for review and need time to respond appropriately. A screenshot of the unopened message is attached as **Exhibit A**.
4. Petitioner is actively monitoring my social media activity and attempting to twist my commentary into supposed violations. For example, she previously attempted to hold me in contempt of court over a video in which I was responding to a death threat from an unrelated party, and advising women to learn about their Second Amendment rights. In that post, I did not threaten anyone, nor did I break any laws. I did not even speak directly to the person who had made the death threat toward me. Instead, I directed my energy toward educating women on their rights and the lawful ways they can protect themselves. Despite this, Petitioner tried to frame that lawful educational content as a violation.
5. I have taken significant steps to avoid any contact with Petitioner. At no time have I directed anyone to file complaints against Plaintiff's storefront or encouraged any effort to have her business taken down. I have blocked Petitioner on every social media platform available to me. I have also blocked multiple accounts that followed her previously, appeared in her comments, or that I reasonably believed might be associated with her. I have made every effort to prevent any contact between us. The fact that Petitioner continues to view and report on my content despite these blocks shows that she is actively seeking me out. This demonstrates that she is not using the TRO for protection from harm, but rather as a means to control the narrative. The effect of her monitoring is to create a chilling effect on my constitutionally protected speech, despite my full compliance with the injunction.
6. I also note that Petitioner has threatened to sue multiple people if they even speak about this situation, yet she is the only one who has continued to post public content about it. Neither I nor my co-defendant have created videos or ongoing content about this matter, while Petitioner herself has. This inconsistency raises serious concerns. If Petitioner were genuinely under stress and seeking protection, it would not make sense for her to repeatedly bring public attention to the situation. Her continued posting despite seeking protection suggests inconsistency with a genuine need for relief.

7. At no point have I tagged or directly named Petitioner in my posts. In the instance at issue, I simply told my followers to view the content of another creator, whom I felt was showing a strong example of leadership while facing intimidation and duress, which I believed reflected the pressure surrounding this situation, and I referenced the video as an example of allyship. This was not just educational content; it was me amplifying the message of another creator who was calling out conduct she believed to be harmful. My focus was on activism itself. My followers ask me almost daily how they can become better feminists and stronger allies in this political climate, especially as women. My commentary was about leadership and allyship under pressure, not about Petitioner personally.
8. The post at issue was made in a thread, which is a main post followed by a series of comments elaborating on the original point. In that thread, I included multiple comments making clear that my followers did not need to take action or get involved. I emphasized that my purpose was to encourage them to educate themselves on the example of allyship, not to target or harass Petitioner in any way. Screenshots of the thread, showing these clarifying comments, are attached as **Exhibit B**.
9. This commentary also ties directly to my ongoing educational work, including a book I have written titled *"Hey, White Girl: Unlearning Privilege and Prejudice"*, which was already in development and available for pre-order before this case was ever filed. The post in question was framed as part of a broader series aligned with this book, which is focused on education, feminism, and dismantling the patriarchy. That context makes clear that my words were educational in nature, directed to my audience, and not an effort to harass or direct others toward Petitioner.
10. Restricting my ability to speak about activism or about the broader political climate not only limits my ability to promote and sell my book (and generate income), but also hinders my ability to continue the work I do in my community. My activism and educational content are intended to empower others, especially women, to recognize injustice and speak out against it. Everything I have posted has been done in good faith, with the intention of creating positive change and encouraging accountability, not out of malice toward Petitioner or anyone else. To interpret these efforts as harassment would not only silence my voice, but would also deprive my community of the educational resources and support that they seek from me.
11. Petitioner has repeatedly attempted to hold me in contempt of court for actions that were not directed toward her in any way. Even in this case, my commentary was not about Petitioner, but about allyship and public education.
12. Before posting, I sought legal advice regarding what speech is and is not permitted under the TRO. I was advised that I may speak generally about my experiences and broader issues, so long as I do not direct others to harass Petitioner or report her website. I relied in good faith on this advice, and I have abided by those boundaries.

12A. I also understand that the Court, in its August 7, 2025 Order, specifically narrowed the Temporary Restraining Order to prohibit only "harassing conduct directed at Plaintiff, particularly seeking to have Plaintiff's storefronts removed." This limitation reflects Oregon and Ninth Circuit law, which recognize that courts must avoid prior restraints on

protected speech. My posts fall within the category of general commentary, education, and activism, and not within the prohibited conduct.

13. I also want to communicate to the Court the serious impact these repeated contempt threats have on my safety. In the current political climate, a threat of contempt and potential arrest is not abstract. As a Black woman and a civil rights activist, I face a disproportionately higher risk of harm in any encounter with law enforcement. National data continues to show that Black people are more likely to be harmed or killed during police interactions. This constant fear of being monitored and threatened with contempt of court for what is actually lawful speech is impacting my daily life and causing unnecessary stress. It has taken a toll on my mental health and overall sense of safety.
14. The ongoing monitoring of my social media, repeated attempts to twist my words into contempt proceedings, and the constant threat of arrest have created a pattern of cyberstalking and intimidation. I feel deeply uncomfortable knowing that my lawful educational content is being surveilled in this way. The possibility of arrest, especially as a Black woman and activist, makes me fear for my life. I am placing this on record so the Court understands that I am not only complying with the TRO, but I am also experiencing harassment and intimidation as a result of its misuse. I intend to seek appropriate relief from this conduct, as it is not protective in nature but controlling and dangerous.
15. I also want the Court to understand the personal impact these threats carry. I am a widow and the sole caretaker for my minor son. Any period of incarceration (especially for conduct that does not violate the TRO) would cause irreparable harm to both myself and my minor child. The thought of being jailed for something I have not done, while my child is left without his mother and caretaker, is terrifying. This underscores the severity of the intimidation I am experiencing and the urgent need for the Court to prevent misuse of this process.
16. I submit this Declaration in good faith to assist the Court in understanding my compliance with the TRO and to ensure the record is complete.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 08/25/25

Respectfully submitted,

/s/ Kiandria Demone Boyce
Pro Se Defendant
2146 Roswell Rd 108

Marietta GA 30062
Phone: 404 957 9984
Email: kboyce6977@gmail.com