## In the United States District Court for the District of Oregon

|  |  |
|---|---|
| Kursten Owen (individually and d/b/a Elegance & Geekery LLC), Plaintiff, v. Breana Askew (individually and d/b/a Breromi), Kiandria Demone Boyce, and Does 1-100, Defendants. | : : : : : : : : : Plaintiff's Emergency Motion for Order to Show Cause  Case No.: 6:25-cv-01272-AA |

---------------------------------------------

**Plaintiff's Emergency Motion for Order to Show Cause**

Plaintiff respectfully asks this Court, pursuant to Federal Rule of Civil Procedure 65 and the Court's inherent authority, for an order to show cause as to why Defendant Kiandria Demone Boyce should not be found in contempt for violation of the Court's Preliminary Injunction (Doc. 39) due to posts Defendant Boyce has made on her social media on August 24, 2025. Plaintiff certifies that prior to submitting this motion, she attempted to meet and confer in good faith in compliance with the requirements of Oregon Local Rule 7-1, and that the opposing party, Defendant Boyce, willfully refused to confer, as explained in more detail in the supporting memo.

**In the United States District Court for the District of Oregon**

| | |
|---|---|
| Kursten Owen (individually and d/b/a Elegance & Geekery LLC), : : Plaintiff, : v. : Breana Askew (individually and d/b/a Breromi), Kiandria Demone Boyce, and Does 1-100, : Defendants. : | Plaintiff's Memo in Support of Emergency Motion for Order to Show Cause<br><br>Case No.: 6:25-cv-01272-AA |

---------------------------------------------

**Plaintiff's Memo in Support of Emergency Motion for Contempt**

Plaintiff, Kursten Owen, hereby moves the Court for an order requiring Kiandria Demone Boyce to show cause as to why she should not be found in contempt for violation of the Court's Preliminary Injunction (Doc. 39) dated August 7, 2025. In support, Plaintiff states as follows:

1. Plaintiff complied with local rule 7-1 by sending Defendant Boyce an email on August 24, 2025, noting her intent to file this motion and stating "In accordance with Oregon Local Rule 7-1, this email constitutes a good faith effort to resolve this matter without court intervention by offering removal of the content as an alternative to filing the motion for an order to show cause.

In further compliance with the rules, I am open to scheduling a meet and confer at your earliest availability." (Exhibit A). The email had the relevant posts Plaintiff alleges are in violation of the Court's injunction attached. (Exhibit B) The email was opened by Defendant Boyce at 3:25 PM PST on August 24, 2025. (Exhibit C). Rather than respond to the email, Defendant Boyce posted on her social media at 3:37 PM PST on August 24, 2025, that "There is a person monitoring my social media, and trying to twist everything that I say into something to have me arrested. I am NOT going to live my life like that and I'm not going to be bullied. Leave me alone. I am not going to say it again." (Exhibit D).

2. Out of fear for her safety, Plaintiff respectfully requests that this interaction be sufficient to satisfy the requirements of Rule 7-1 as she attempted good faith resolution outside of court regarding this matter and was met with public hostility and willful refusal to confer or respond by Defendant Boyce alongside a demand that further contact cease and that she is "not going to say it again," which implies escalation to a non-verbal action if Plaintiff continues to attempt outreach.

3. Plaintiff confirms that the email to meet and confer is the only time she has contacted Defendant Boyce, that replies to Defendant Askew's email outreach to "mediate" were her only contacts with Defendant Askew (Exhibit K), that she does not operate any of the "burner accounts" identified by Defendants and the fact that the case is public record that third parties discuss is not

something within her control, nor is the public perception that her case is valid, which is equally countered by online discussion disparaging her case. Plaintiff confirms she only passively reviews content posted public by defendants, especially after periods of increased harassment, in order to identify if any new harassing or defaming content has been generated by Defendants. Such passive review is lawful and required to ensure the protections of the injunction are effectuated.

4. Plaintiff has never attempted to use the TRO against lawful speech. This motion is the first time she has ever suggested non-compliance with the Court's orders directly to Defendants, other than her prior denied motion that she determined was not worth pursuing further which Defendants did not even have to respond to. Defendants seem to have submitted their documents this morning proactively due to their awareness that this motion was likely forthcoming based on Plaintiff's meet and confer outreach. This motion is necessary due to the clear and blatant disregard of the order that places Plaintiff in harms way. Plaintiff is not hostile and has attached all direct communication with Defendants for purposes of making her lack of hostility clear—she is professional and courteous in communications and does not publicly disparage Defendants or encourage others to do so despite Defendant's ongoing unwillingness to take accountability for any harm suffered by Plaintiff.

5. Plaintiff made one video in response to frequent third party discussion online about the lawsuit, including comments under a now-deleted post of Defendant Boyce's where she asked her followers for recommendations for lawyers in Oregon. In that video, Plaintiff solely stated: "I'm aware there's online discussion about ongoing litigation involving myself and my business. This matter is being resolved through the court system, where all parties are and will continue to be heard fairly and factually. As this process unfolds I ask that public discussion treat all parties with respect. Out of my own respect for the legal process, I won't be commenting further. Official court records are publicly available for those seeking accurate information. Thank you for understanding."

6. Plaintiff has only sent a cease and desist, already on record, to Defendant Askew and the third party video poster discussed below, representing her only "threats to sue," which were lawfully made based on those individuals posting viral defamatory videos. In her cease and desist to the third party, Plaintiff simply noted that the court's preliminary finding of a likelihood of success on the merits for her defamation claims as a factor in favor of granting the injunction indicated the lawsuit was not frivolous and that the claims were likely defamatory.

7. Plaintiff notes that Defendant Boyce's post purportedly discouraging harassment was made after Plaintiff sent her email regarding meet and conferral, also notes her confirmed opening of the email based on tracking

services, and additionally notes that previously opened emails can be manually marked "unopened" in GMail platforms to look unopened. She further notes that given there has never been any direct communication between Defendant Boyce and herself, Defendant Boyce's refusal to even open a meet and conferral email request based on Plaintiff's "hostility" is unwarranted.

8. Defendant Boyce's online persona generally suggests a willingness to escalate to violence and/or extensive online harm that places Plaintiff in fear of harm to her physical safety, reputation, and well-being. This includes videos of Defendant Boyce cocking a gun off-screen (Exhibit G), a post where she explicitly states "What y'all don't understand is I'm not just talking…If you are a racist or a bigot, you can actually fight me…Like in real life," and "Square up, bitch." (Exhibit H). And "Consider this your first and only warning. I DO NOT FUCKING PLAY, especially when it comes to Black people. Picture the worst dragging you've ever seen somebody receive online and multiply it by 10. The gloves are off…if you stick around, there will be CARNAGE," and noting that if someone "pick(s) a fight" with her "that's your virtual funeral." (Exhibit I).

9. On August 7, 2025, this Court entered a Preliminary Injunction enjoining Defendant Boyce from "engaging in harassing conduct directed at Plaintiff, such as filing complaints with Plaintiff's business partners, or the encouraging of third parties to do so." (Doc. 39).

10. Defendant Boyce was served with the order via ECF given her registration with the platform as an unrepresented party.

11. On August 24, 2025, Defendant Boyce reposted a video made by a third party after Plaintiff requested the third party remove a currently circulating video made republishing the alleged defamatory statements in this case, given that video has over 2.5 million views and is a major source of ongoing harassment towards Plaintiff and her business currently. In the email to the third party, Plaintiff noted that she reserved the right to add the third party individual as a defendant to this lawsuit if necessary. The third party responded by making the video reposted by Defendant Boyce.

12. The video reposted by Defendant Boyce names Plaintiff directly ("Kursten, I'm going to address you directly here"), states Plaintiff's lawsuit is "bogus," alleges Plaintiff is "mad that (she) can no longer profit off of someone else's design," states that the third party "find(s) it disgusting that (Plaintiff) think(s) that (she) could sit here and copy both Breromi's design, but also her marketing, like down to the words, and then try and weaponize the justice system against her and against civil rights no activists like Kiandria." (Exhibit E).

13. Plaintiff also notes that Defendant Boyce's communications, including at the hearing for the preliminary injunction, mirror the language and themes used by the third-party individual who created and posted the video Defendant Boyce subsequently reposted. This includes similarities in the

characterization of Defendant Boyce's work, claims that Plaintiff is unlawfully "consistently monitoring" defendants, accusations that Plaintiff is using AI or ChatGPT for communications, and descriptions of Defendant Boyce as a "civil rights activist." Plaintiff believes based on the tone, content, and consistent usage of terms between the individuals—as well as the third party's inclusion of an explicit disclaimer that her statements "are not reflective of the opinions of anyone else"—that there was direct communication or coordination between Defendant Boyce and the third-party poster.

14. Defendant Boyce reposted this video on August 24, 2025 with the caption: "Hey White Girl, If you want to know the difference between being an "ally" and being an accomplice…@allboutlizspam is a good example to follow." (Exhibit F). She therefore endorsed and republished the full contents of the video, and noted it as the act of an "accomplice."

15. In comments on this thread Defendant Boyce then instructs followers to "Go watch her last video!" referring to the third party whose content she republished (Exhibit F).

16. Defendant Boyce additionally comments "The way she is not just sitting back and protecting herself, but she is standing up is a perfect example of why we need more people like that! It's so easy to paint the Black woman as the mean girl. But when you piss off the girl with pink hair and tattoos? You know

you're really doing the most and now you fucked up. (laughing emojis)" (Exhibit F).

17. Defendant Boyce additionally comments "This woman was threatened with the same lawsuit I'm dealing with, and instead of folding or staying quiet, she made an entire video breaking it down and calling out harmful behavior for what it is. That's what it looks like to stand up, not just talk about it." (Exhibit F).

18. Defendant Boyce additionally comments "Thank you @unapoligetically_jackie for amplifying this message as well!" (Exhibit F).

19. Defendant Boyce additionally comments "So many people try to hide behind the legal system to avoid accountability for their racism. White people speaking up about it is exactly what we need right now." (Exhibit F).

20. After receiving my email regarding meet and conferral, Defendant Boyce added an additional comment stating "This is about educating ourselves about standing up to this broken system we are in. It is about showing true character versus being performative. Nothing else. I'm not asking anyone to contact anybody, I'm not asking anybody to take any action other than just watching and learning. The time for action will come and it won't involve a TikTok video. Please remember that we have real work to do in this country right now." (Exhibit F).

21. These comments constitute harassment as prohibited under the preliminary injunction because they include republication of a direct targeting of Plaintiff

by name alongside content framing Plaintiff as weaponizing the legal system, pursuing bogus or frivolous claims against a "civil rights activist," and perpetuating the same defamatory narrative that led to the initiation of this suit in the first instance. (Exhibits D, E, F).

22. Republication of the video also incited direct harassment and targeted abuse from followers given that the video explicitly disparaged Plaintiff by framing her conduct as "disgusting" and as targeting a civil rights activist in pursuit of "bogus" claims so that she can "profit off of someone else's design." (Exhibit E).

23. Defendant Boyce's own comments portray Plaintiff as "try(ing) to hide behind the legal system to avoid accountability for (her) racism," and suggests that she is "doing the most" and has "fucked up." (Exhibit F).

24. In a comment on the third-party video maker's original video (which identifies Plaintiff by name) as posted to TikTok, Defendant Boyce stated, "Just a friendly reminder that I am a civil rights activist…I would not be here if there wasn't some sort of racism involved," again perpetuating the online belief that Plaintiff is engaged in racism. (Exhibit J).

25. Defendant Boyce's comments express support for these statements against Plaintiff and encourage her followers to "call out harmful behavior for what it is." This statement also suggests publicly that Plaintiff's conduct is harmful. (Exhibit F).

26. Defendant Boyce further suggests that "we need more people like" the woman in the reposted video, further endorsing her comments and behavior towards Plaintiff and constituting incitement of third parties to harass Plaintiff. (Exhibit F).

27. Defendant Boyce's comments encourage followers to "watch" the video expressing disparaging statements against Plaintiff. (Exhibit F).

28. Defendant Boyce's comments explicitly call on her followers to "confront," "call out," "amplify" and "speak up" in reference to comments that perpetuate the harm that led to this suit and were the reason why the preliminary injunction was granted. (Exhibit F).

29. Defendant Boyce's follow-up post after receiving my meet and confer email is a public response to legal process that continues to frame Plaintiff as antagonistic to Defendant Boyce's followers, even if not identifying Plaintiff directly. Her statements that Plaintiff is attempting to "twist" or "bully" are unfounded and led to calls to action in the comments of the post. (Exhibit D).

30. As of this morning, Defendant Boyce has posted a follow up wherein she states: "Well good fucking morning y'all. I just have to add that I understand so deeply why so many victims of abuse do not come out publicly against their abuser or against their stalker because it is enough to make you wantto pull your hair out on top of the stress you already have when people suggest the most simple solution like you didn't fucking think of that. "Did you block them, did you block them, well why don't you just block them?" This person

is harassing me. This person is seeking me out. Trying to intimidate me, of course I blocked them."

31. In general, Defendants wrongfully paint Plaintiff as threatening or intimidating when she has engaged in essentially no outreach to Defendants, has never directly named either beyond her original response video to Defendant Askew's social media campaign, and has only passively viewed their public posts to ensure her protection throughout the course of this lawsuit. She has never abused process or court orders in this case, and passive viewing for court order compliance is not "stalking" or "harassment" as Defendant Boyce suggests.

32. The attached posts and underlying content endorsed by Defendant Boyce continue to publicly name Plaintiff, accuse her of theft and copying, disparage her business, accuse her of weaponization of the legal system, and rally others to attention and confrontation regarding these matters. Such actions clearly constitute ongoing harassment and intent to incite others to harass, which the injunction prohibits, regardless of if it is framed as "calling out," or "standing up." (Exhibits D, E, F).

33. That these posts are successful in inciting others to harass and threaten Plaintiff can be explicitly seen by a direct comment by a follower to Defendant Boyce's post wherein the commenter states: "Imma say this with my whole fucking chest. I'm a white woman with bipolar disorder and an insanity defense on standby and that's a privilege I will use to put

motherfuckers like this in their place. Period. If someone can dox this mf let me know." (Exhibit D).

34. While Defendant may claim protected civil rights expression, First Amendment rights do not excuse violating a court order. The injunction narrowly and appropriately balances freedom of speech with the need to prevent irreparable harm to Plaintiff's business and reputation. Defendant Boyce's comments in violation of the order go beyond lawfully protected First Amendment speech and constitute violation of a Court order and disregard for the Court's authority.

35. These acts of reposting, applauding, and mobilizing followers demonstrates a willful violation of the preliminary injunction, as it fosters an environment of persistent and escalating harassment intended to injure Plaintiff. Defendant Boyce's conduct is not limited to private opinion but is an orchestrated public campaign, increasing the likelihood of reputational harm and emotional distress to the Plaintiff.

36. The defendant's conduct taken as a whole demonstrates a deliberate effort to perpetuate the harassment condemned by the Court, and to delegitimize the Court's findings and preliminary injunction. This conduct leverages the defamatory accusations that led to this suit to stir up third-party intervention, directly contravening the injunction's clear terms.

37. Contempt sanctions are necessary to enforce the injunction, uphold the authority of this Court, and prevent continued irreparable injury to Plaintiff.

**Legal Standard**

The Court has authority to enforce its orders and to issue contempt sanctions under its inherent powers and Federal Rule of Civil Procedure 65. A party may be held in civil contempt for failing to comply with a clear and specific court order. Defendants' conduct is ongoing and causes Plaintiff irreparable injury to her reputation, business goodwill, emotional wellbeing and economic interests. Immediate relief is required to prevent further harm.

Plaintiff respectfully requests that the Court Issue an Order to Show Cause requiring Defendant Boyce to appear and show cause why she should not be held in contempt for violating the preliminary injunction, to impose appropriate sanctions (including coercive fines, compensatory damages, filing and service fees, or a finding of criminal contempt and associated sanctions), and to order Defendant Boyce to immediately cease all conduct in violation of the preliminary injunction and remove any offending material or communication.

**Declaration**

I, Kursten Owen, declare under penalty of perjury pursuant to the laws of the United States and Oregon that the above is true and correct to the best of my knowledge and belief and that all attached exhibits are true and authentic copies.

Dated: 8/25/2025

/s/ Kursten Owen

    Kursten Owen