Gmail

# Exhibit A

**Kursten Owen <kursten.owen@gmail.com>**

---

## Urgent Meet and Confer Regarding Violation of Preliminary Injunction – Immediate Action Requested
1 message

---

**Kursten Owen** <kursten.owen@gmail.com>                                    Sun, Aug 24, 2025 at 3:21 PM
To: kboyce6977@gmail.com

 Dear Ms. Boyce,

I am writing to address your recent social media reposting and commentary, as reflected in the attached, related to the pending litigation between us, which appears to violate the preliminary injunction entered against you by the United States District Court for the District of Oregon in Case No. 6:25-cv-01272-AA.

The injunction prohibits you from engaging in harassing conduct directed at me or my business, as well as encouraging third parties to do so.

The attached posts and underlying content endorsed by you continue to publicly name me, accuse me of theft and copying, disparage my business, accuse me of weaponization of the legal system, and rally others to attention and confrontation regarding these matters. You explicitly call on others to "confront," "call out," "amplify" and "speak up" in reference to comments that perpetuate the harm that led to this suit and were the reason why the preliminary injunction was granted. Such actions clearly constitute ongoing harassment and intent to incite others to harass, which the injunction prohibits.

In accordance with Oregon Local Rule 7-1, this email constitutes a good faith effort to resolve this matter without court intervention by offering removal of the content as an alternative to filing the motion for an order to show cause. In further compliance with the rules, I am open to scheduling a meet and confer at your earliest availability.

Due to the urgent and ongoing nature of the harm, I respectfully request that you remove the violating content and cease all further harassing conduct within two (2) calendar days of your receipt of this notice.

If you do not comply within this timeframe, I will take necessary steps to seek enforcement of the Court's injunction, including filing a motion for an order to show cause for contempt.

Please confirm your compliance promptly.

Thank you for your immediate attention to this serious matter.

Sincerely,

 **Kursten Owen, Owner**
**Elegance & Geekery, LLC**
[EleganceAndGeekery.com](http://EleganceAndGeekery.com)
@EleganceAndGeekery

 sender notified by
**Mail Track for Gmail**

---

 **kiandria reposted liz video on threads.pdf**
3572K

Hey White Girl, If you want to know the difference between being an "ally" and being an acc...
https://www.threads.com/@kiandria/post/DNvdKzGXEag



**Thread**
16.8K views

# Exhibit B



**kiandria**  2h

Hey White Girl,

If you want to know the difference between being an "ally" and being an accomplice...
@allboutlizspam is a good example to follow. 💪  1/3

♡ 436     💬 26     ⇄ 16     ▷

Top ⌄                                    View activity ›

**kiandria**  1h
threads.com/@allb...  3/3

**allboutlizspam**  1d
Last night I received an email saying I was added to a lawsuit over a TikTok I
made last month about an unnamed white creator who copied
@breromiofficials hair clip design.

Well Kursten, add me to your lawsuit over a design you did not create. I am
truly blown away by the audacity of all of this, I'd love to see you in court....



♡ 22     💬     ⇄ 1     ▷

📌 Pinned

**kiandria**  2h
Go watch her last video!  2/3

♡ 38     💬 1     ⇄     ▷

**kiandria**  1h  · Author
The way she is not just sitting back and protecting herself, but she is standing up
is a perfect example of why we need more people like that! It's so easy to paint
the Black woman as the mean girl. But when you piss off the girl with pink hair
and tattoos? You know you're really doing the most and now you fucked up. 🤣
🤣🤣

♡ 33     💬 1     ⇄     ▷

**fortbirthday**  49m
The last line is making me 🤣

♡     💬     ⇄     ▷

**kiandria**  1h  · Author
This woman was threatened with the same lawsuit I'm dealing with, and instead of
folding or staying quiet, she made an entire video breaking it down and calling
out harmful behavior for what it is. That's what it looks like to stand up, not just
talk about it.

♡ 33     💬     ⇄     ▷

**kiandria**  1h  · Author
Being an ally is cute for social media. Being an accomplice means you're willing to
risk something to confront the harm and protect the people targeted.

Follow her example.

♡ 35     💬     ⇄     ▷

**kiandria**  1h  · Author
Thank you @unapologetically_jackie for amplifying this message as well! I really
have built a community on here that stands 10 toes behind me and I'm forever
grateful! 💪💪💪

♡ 46     💬     ⇄     ▷

**kiandria**  1h  · Author
So many people try to hide behind the legal system to avoid accountability for
their racism. White people speaking up about it is exactly what we need right
now. 💪💪💪

♡ 38     💬     ⇄     ▷

**mrcarter916**  2h
I ran into this canadian "ally" this morning. She blocked me when I called her out
on her hypocrisy.

**itsnotmeitsallyou**  6m
😊
Nobody come at me, i am pro immigration.
But I got roped into a huge cell bill once
because I got stuck talking to Apu from the
Simpsons 😊
I didn't have a clue what was going on.
They did reverse it all for me, but I told
them he shouldn't be calling Canadians bc
his English was horrible 😊



8    4

**patriciadeanna**  1h
I second this notion ✅

5

**just_evans99**  1h
Definitely followed!

**basquefamilycatalonia**  23m
Now following 🙂

**misscuthbert1901**  2h
Following

1

**lovelyleolady**  1h
I just followed

**alt.mom.n.dog**  1h
Thank you - following her now!

1

**evelyn_saintjames**  2h
Gave her a follow! Thanks for the tip

**evelyn_saintjames**  2h
Gave her a follow! Thanks for the tip

**glynnyboo**  2h
Following already 🙂

**kayci.ess**  1h
Thank you — following

**yorkshire_kara**  2h
Thank you.

**Exhibit C**



Case 6:25-cv-01272-AA    Document 58-1    Filed 08/25/25    Page 6 of 25



# Exhibit D

**Thread**
25.7K views

Log in

---

**kiandria** 6h

There is a person monitoring my social media, and trying to twist everything that I say into something to have me arrested.

I am NOT going to live my life like that and I'm not going to be bullied. Leave me alone. I'm not going to say it again. 👌🏾

♡ 2.1K    💬 96    ⟲ 54    ⊿ 1

---

**bl4ckchad** 6h

I'm willing to bet all my money they're yt

♡ 61    💬 2    ⟲    ⊿

---

**healing_thru_laughter** 2m

Whenever we gather…. They are close by

♡    💬    ⟲    ⊿

---

**tmasterofdisaster_butinpublic** 5h

How is anything you've ever posted within a million-mile radius of a crime? Tf?!

♡ 35    💬 2    ⟲    ⊿

---

**roweurboat81** 5h

I'mma say this with my whole fucking chest. I'm a white woman with bipolar disorder and an insanity defense on standby and that's a privilege I will use to put motherfuckers like this in their place. Period.

If someone can dox this mf lemme know.

▶ ||||||||||||||||||||||

♡ 19    💬    ⟲    ⊿

---

**writedmc** 5h

Well there's a shocker.

♡    💬    ⟲    ⊿

---

**cdanaceau** 2h

Block with abandon

♡    💬    ⟲    ⊿

---

**theeshanmarie** 5h

In this political climate????? That's a threat against your safety!!!

♡ 30    💬 1    ⟲    ⊿

---

**kiandria** 3h · Author

My sentiments exactly. I do not take it lightly at all.

♡ 13    💬    ⟲    ⊿

---

**natashanb_** 5h

Are you serious? Are they ⚪?

♡ 25    💬 2    ⟲    ⊿

---

**wfhwithruby** 5h

**kendallreevesxo** 5h

There is a person monitoring my social media, and trying to twist everything that I say into something to have me arrested. I am NO…



Log in

I just got fired from Amazon. So screw it- here are 3 things they wish nobody knew about:

♡ 3    ◯    ⇄    ▽

**jeff.m.keller**  5h    ⋯
To whoever it is, swatting is a felony. Attempting to weaponize the police against someone is a serious crime. Stop now, before you find yourself over the neck in trouble.

♡ 74    ◯    ⇄ 1    ▽

**jps8443**  3h    ⋯
Forgive me, but isn't it possible to just block them on everything? People like that don't even deserve access.

♡ 2    ◯ 1    ⇄    ▽

**kiandria**  3h  · Author    ⋯
No. They are monitoring me from other accounts, even though I have them blocked on everything.

♡ 7    ◯ 1    ⇄    ▽

**jps8443**  3h    ⋯
Oof. So say things get worse and that's what the future holds for other people who choose to speak out. What do you feel we should do?

♡    ◯    ⇄    ▽

**joe_jaeger117**  6h    ⋯
Some people need to get a hobby. 😒

♡ 2    ◯    ⇄    ▽

**jazzydane1nonly**  3h    ⋯
Why can't ppl leave you be? You do great things. These losers need to rot in hell! Sorry you're going through this!

♡    ◯    ⇄    ▽

**adilahbrodie** ✓  5h    ⋯
Okay! So I see they think YOU'RE ALONE! We right here and we ride at Dawn!!!

♡ 10    ◯ 1    ⇄    ▽

**thedivineabsurdity**  42m    ⋯
Nah, man. Y'all ride at dawn. I'm already omw.
Third shift, baby. lol

♡    ◯    ⇄    ▽

**gorham.thomas**  3h    ⋯
who is it?! tell us so we can help!

♡    ◯    ⇄    ▽

**bedsidearts**  5h    ⋯
Just where do you get the energy to do that like why want to harm another human being at all
Work on yourself
Sit down and shut up you are doing too much whoever you are

♡    ◯    ⇄    ▽

**black2lifefitness**  4h    ⋯
We stand with you Sis!!!🙏🏾💪🏾

♡    ◯    ⇄    ▽

8/24/25, 9:42 PM

Case 6:25-cv-01272-AA    Document 58-1    Filed 08/25/25    Page 8 of 25

There is a person monitoring my social media, and trying to twist everything that I say into something to have me arrested. I am NO…



Log in

**concillas** 5h

Out this person and we will help.

♡ 10

**lanebaldwinofficial** 4h

The girl says a name,^ then makes sure she's seen on security cameras** a couple states away on…

-flip

-flipflip

-flip

… a week next Thursday good for you?

*- hat tip to Game of Thrones

**- casinos are great for this. Also you can keep receipts for cash outs, meals, valet parking, maybe a spa visit bc you sure do deserve one!

**myheartbeatquiet79** 1h

Love you need my sisters shirt let me post it I love the f out of her

♡    ♡ 1

**myheartbeatquiet79** 1h

This I need this 🙏🙏

**Related threads**

**aiirbearmusic** ✔ 10h

it's lonely being a top or however the saying goes

♡ 53    ♡ 10    ⟲ 3

**blendermeme** 15h

Yer a wizard, harry

## Exhibit E: Video reposted by Kiandria Originating from Elizabeth Jones

Description on threads:
Last night I received an email saying I was added to a lawsuit over a TikTok I made last month about an unnamed white creator who copied @breromiofficials hair clip design.Well Kursten, add me to your lawsuit over a design you did not create. I am truly blown away by the audacity of all of this, I'd love to see you in court.Please follow kiandria and
@breromiofficial
Threads won't let me share the full video but here's the link it on TT tiktok.com/t/ZP8…

00:00:00:00 - 00:00:27:23
Elizabeth Jones
Does anyone remember when I posted this video last month?

(playing first video)
Breana Askew
Accessory that wouldn't break on me.

Elizabeth Jones
I don't know if y'all have seen this, but this is such a great idea. I have been on the wait list for the restock
(Stops playing video)

Elizabeth Jones
I have an unexpected update. **I'm being sued over this video**, not me exclusively. Breromi, the creator of this very specific type of magnetic clip, is being sued by the other creator, the unnamed white lady in my video who allegedly **copied not only her product, but her marketing strategy**.

00:00:27:24 - 00:00:50:29
Elizabeth Jones
Like the videos are the sa-. Okay, I digress. I gotta say y'all, "allegedly" AI did a just okay job of making this all seem legitimate and say everything I mentioned moving forward is alleged I am here speaking of my own volition. These are just my opinions. These are not reflective of the opinions of anyone else. Moving on, Kursten, I'm going to address you directly here.

00:00:51:01 - 00:01:18:27
Elizabeth Jones
I find it incredibly hard to believe that any legal representation that wants to see you win, or any legal representation at all, would have had you email me personally, threatening to add me **to your absolutely bogus sounding lawsuit over a TikTok where I quite literally never**

**mentioned you or your business by name**. I didn't even know your name, **Kristen**, until you emailed me telling me that the court thinks it is "highly likely" that you'll win this lawsuit.

00:01:18:27 - 00:01:38:00
Elizabeth Jones
But what you have to prove that the court thinks it's highly likely you'll win this lawsuit is a preliminary injunction. Why did you send me that, **Christine**? **Was it just to try and coerce me into taking a video that, at the end of the day, is simply me promoting another business, down. Because, like, again, I never mentioned you by name. I simply wanted to direct traffic to the original creator of the concept.**

00:01:38:07 - 00:02:02:12
Elizabeth Jones
You and I both know that this is a pretty incredible stretch for something. You can personally send me as many ultimatums as you want, Kirsten, but until I'm ordered to by a judge, because you provide the sufficient evidence that you came up with this idea before Breromi, this specific idea. Well, yes, magnetic hair clips have existed. This is a low tension accessory tool that is meant to hold all of the hair back without pulling on it.

00:02:02:18 - 00:02:25:14
Elizabeth Jones
Difference in what Bre created and sold. And then you later started to sell, is that they hold the hair back without the need of any additional elastics, versus some of the other clips which need to be placed over already held elastics because they are simply fashion accessories, not tools as well. **Until either one of those things happen, I will not be taking anything down because it just seems like you're mad that you can no longer profit off of someone else's design.**

00:02:25:16 - 00:02:44:00
Elizabeth Jones
Now, I'm not a lawyer or a professional by any means, **but I do know that a judge isn't going to say, hey, we think you have a good chance.** So what? I assume you're getting that from the preliminary injunction. **That's just the court agreeing to move forward with this lawsuit and telling you not to talk to you, or about the person you're suing.**

00:02:44:01 - 00:02:59:07
Elizabeth Jones
**Now, again not a lawyer, but I don't know how the court would feel about you consistently monitoring the people that you're not supposed to be in communication with.** So all I'm going to say that, **but the existence of your preliminary injunction, it doesn't mean that you're likely to win. It simply means the court has agreed to proceed.**

00:02:59:09 - 00:03:25:02
Elizabeth Jones

**To which I say, Kreirsten, add me to the suit.** This is ridiculous. I would absolutely love to go to court over something like this. On a serious note, **I find it disgusting that you think that you could sit here and copy both Breromi's design, but also her marketing, like down to the words, and then try and weaponize the justice system against her and against civil rights activists like Kiandria. Kiandria is another person apparently named in this lawsuit email that she sent me.**

00:03:25:04 - 00:03:47:29
Elizabeth Jones
**If you don't know Kiandria, you should. She went viral a couple months back for exposing the payment processor that was being used to process almost the million dollars in donations to that white lady in Minnesota who hate crime to child. That specific work of exposing digital discrimination got the notice of our current president, who wrote an executive order saying, essentially that Americans can't be denied access to financial institutions for being racist.**

00:03:48:00 - 00:04:11:03
Elizabeth Jones
**This is who you're trying to sue because random TikTokers and the woman who allegedly, allegedly who designs you copied, that wasn't enough. You're going after activists now too. Civil rights activists now too wow. Contrary to your ridiculous email, Kristen, I never called you a racist. I said,**

**(Plays older video)**

**this is a common theme among us white people, right? We see somebody excelling and being excellent, and we need to steal it for ourselves.**

00:04:11:10 - 00:04:26:25
Elizabeth Jones
But. But Bre is the person who invented this. I know because like, eight months ago, I was doing a ton of research on these things. I was trying to find one for Christmas. And this is the inventor. This is the person who stocks them

(Stops playing older video)

so that white people have a long history of stealing and profiting off of the theft of black creatives and their ideas.

00:04:26:25 - 00:04:46:19
Elizabeth Jones
**And honestly, you have yet to prove that you're any different from the history that I mentioned.** To add to that statement, I will say we also have a history of weaponizing historically and systemically racist institutions against black people as well. It's also not a part of any

coordinated online attack. **I was taking part in public discourse about what I was viewing as theft of a creator I follow.**

00:04:46:21 - 00:05:05:03
Elizabeth Jones
I did not know either of the women named in your lawsuit last month. When I made that video, I was simply talking about the things that I talk about on this-

8/24/25, 9:44 PM
Hey White Girl, If you want to know the difference between being an "ally" and being an accomplice... @allboutlizspam is a good ex…

Case 6:25-cv-01272-AA    Document 58-1    Filed 08/25/25    Page 13 of 25



# Exhibit F

**Thread**
28K views

Log in

**kiandria** 14h

Hey White Girl,

If you want to know the difference between being an "ally" and being an accomplice…
@allboutlizspam is a good example to follow. 💪🏾

♡ 850    💬 43    ⟳ 23    ⇗

---

**kiandria** 13h · Author
threads.com/@allb…

> **allboutlizspam** 1d
>
> Last night I received an email saying I was added to a lawsuit over a TikTok I made last month about an unnamed white creator who copied @breromiofficials hair clip design.
>
> Well Kursten, add me to your lawsuit over a design you did not create. I am truly blown away by the audacity of all of this, I'd love to see you in court.…
>
> I'M BEING SUED
>
> It's a long one Yall 2x speed
>
> I MISSED HER
>
> TikTok
> @allboutliz

♡ 88    💬 2    ⟳ 3    ⇗

---

📌 Pinned

**kiandria** 14h · Author

Go watch her last video!

♡ 80    💬 1    ⟳ 1    ⇗

---

**kiandria** 13h · Author

The way she is not just sitting back and protecting herself, but she is standing up is a perfect example of why we need more people like that! It's so easy to paint the Black woman as the mean girl. But when you piss off the girl with pink hair and tattoos? You know you're really doing the most and now you fucked up. 🤣 🤣🤣

♡ 106    💬 1    ⟳    ⇗

---

**fortbirthday** 12h

The last line is making me 🤣

♡ 2    💬    ⟳    ⇗

8/24/25, 9:44 PM
Case 6:25-cv-01272-AA    Document 58-1    Filed 08/25/25    Page 14 of 25
Hey White Girl, if you want to know the difference between being an "ally" and being an accomplice... @allaboutizspam is a good ex…

Log in

**kiandria** 13h · Author
This woman was threatened with the same lawsuit I'm dealing with, and instead of folding or staying quiet, she made an entire video breaking it down and calling out harmful behavior for what it is. That's what it looks like to stand up, not just talk about it.

♡ 93

**kiandria** 13h · Author
Thank you @unapologetically_jackie for amplifying this message as well! I really have built a community on here that stands 10 toes behind me and I'm forever grateful! 💪🏾💪🏾💪🏾

♡ 86    💬 1

**unapologetically_jackie** 11h
I've got you 🏽.

♡ 12

**kiandria** 12h · Author
So many people try to hide behind the legal system to avoid accountability for their racism. White people speaking up about it is exactly what we need right now. 💪🏾💪🏾💪🏾

♡ 72    💬 1

**brittovar_** 10h
I have a genuine question- for those of us that just repost, comment, etc. or do actionable items like email in on things, or spend money purposefully.. is there something that you personally feel is the equivalent of accomplice behavior but doesn't fall under content creation?

♡ 1    💬 1

**kiandria** 6h · Author
Right now, I think the best thing you could do is educate yourself! Find examples of people who are standing up to the system and just learn from them. You don't need to take the same action that they take because you may not be a part of that situation specifically. Especially when it comes to something legal! It's not about harassing people. It's about learning how to stand up in community when harm is being done.

♡ 2    💬 1

**brittovar_** 11m
Thank you for taking the time to respond!

Unrelated- but I got my shirts in today!



8/24/25, 9:44 PM

Case 6:25-cv-01272-AA   Document 58-1   Filed 08/25/25   Page 15 of 25

Hey White Girl, if you want to know the difference between being an "ally" and being an accomplice…@allaboutizspam is a good ex…



Log in

♡   💬   ⟲   ◁

**kiandria**  6h  · Author

This is about educating ourselves about standing up to this broken system we are in. It is about showing true character versus being performative. Nothing else. I'm not asking anyone to contact anybody, I'm not asking anybody to take any action other than just watching and learning. The time for action will come and it won't involve a TikTok video. Please remember that we have real work to do in this country right now! 🔳👏🏿👏🏿👏🏿

♡ 49    💬    ⟲    ◁

**misscuthbert1901**  14h

Following

♡ 1    💬    ⟲    ◁

**queenvictorius**  2h

Thanks for the recommendation!

♡    💬    ⟲    ◁

**basquefamilycatalonia**  11h

Now following 🙂

♡    💬    ⟲    ◁

**patriciadeanna**  13h

I second this notion ✅

♡ 8    💬    ⟲    ◁

**alt.mom.n.dog**  13h

Thank you - following her now!

♡ 1    💬    ⟲    ◁

**this_is_my_song**  11h

Thank you ❤️ followed

♡    💬    ⟲    ◁

**mrc.157**  8h

Got a follow from me

♡    💬    ⟲    ◁

**laura.rftm**  7h

Thank you for the recommendation. Going to check out her page now.

♡    💬    ⟲    ◁

**glynnyboo**  13h

Following already🙂

♡    💬    ⟲    ◁

**lovelyleolady**  13h

I just followed

♡    💬    ⟲    ◁

**just_evans99**  13h

Definitely followed!

♡    💬    ⟲    ◁

8/24/25, 9:44 PM     Hey White Girl, if you want to know the difference between being an "ally" and being an accomplice... @allboutizspam is a good ex…

Case 6:25-cv-01272-AA     Document 58-1     Filed 08/25/25     Page 16 of 25



Log in

**yorkshire_kara** 13h · · ·

Thank you.

♡ ⬭ ⟳ ◁

**evelyn_saintjames** 13h · · ·

Gave her a follow! Thanks for the tip

♡ ⬭ ⟳ ◁

**evelyn_saintjames** 13h · · ·

Gave her a follow! Thanks for the tip

♡ ⬭ ⟳ ◁

**kayci.ess** 13h · · ·

Thank you — following

♡ ⬭ ⟳ ◁

## Related threads

**milkypiratez** 5h · · ·

i used to think burning man was like a marathon event but then my husband told me that's ironman

♡ 34   ⬭   ⟳   ◁

**stuz0r** ✔ › **Art Threads** 12h · · ·

Beside myself

♡ 29   ⬭ 1   ⟳   ◁

**digishinigami** 16h · · ·

I did not believe in blue maga until I saw how they simp for gavim.

I swear they literally settle for their own trump so long as they get to say they won

♡ 7   ⬭ 7   ⟳ 1   ◁

**ronaldfilipkowski** 6h · · ·

Fact check: True.

**Exhibit G**

# Kiandria's video Gun Audio Threat Aug 1st 12:26 pm

Threads description: Every time I open these apps, there is an angry white person threatening me. Consider this the first and only time I'm going to address that. I think a huge part of it is the fact that I'm a woman. Y'all think I'm just loud and vulnerable. Find you somebody safe to play with.
Instagram: Every time I open these apps, there is an angry white person threatening me. Consider this the first and only time I'm going to address that. I think a huge part of it is the fact that I'm a woman. Y'all think I'm just loud and vulnerable. Find you somebody safe to play with.

Video is in response to a comment on screen stating: And treated as terrorists and killed

*Humming gospel music and loading a gun of screen*
*cocks gun off screen*
*Looks into screen*
Kiandria: You were saying?

**Exhibit H**



## Exhibit I



**Exhibit J**



# Exhibit K

 **Gmail**

**Kursten Owen <kursten.owen@gmail.com>**

---

## Request to Initiate Mediation Discussions

---

**Breana Askew** <shop@breromi.com>            Thu, Aug 7, 2025 at 9:08 PM
To: Kursten Owen <kursten.owen@gmail.com>

**Ms. Owen,**

I have reason to believe that your recent communications have not been made in good faith. The tone and content of your negotiation efforts have left me feeling coerced and harassed, and I view them as unreasonable and inconsistent with a constructive resolution process.

As stated in my initial message, I expressed a willingness to engage in **mediation**—not a financial settlement. My position on that has not changed.

Moving forward, I request that all further communications on this matter be conducted through attorneys.

This communication is made solely for mediation purposes.

Sincerely,
Breana Askew

> I am open to discussing fair and reasonable terms through direct email mediation if you are willing; however, I want to clarify that I am not open to settlement through any payment. I would also like to clarify that I am an individual defendant and not acting on behalf of any other party. Any matters involving the co-defendant are separate, and I cannot speak for or meditate on their behalf.

On Thu, Aug 7, 2025 at 11:52 PM Kursten Owen <kursten.owen@gmail.com> wrote:
> Dear Ms. Askew,
>
> Your message is noted as confirmation that you do not intend to negotiate or settle this matter in good faith. As you've made clear that you will not offer any meaningful relief—monetary or otherwise—I will continue pursuing the matter through the formal legal process.
> Per your statement, I will not contact you further. However, if your position changes, you may reach out at any time. I remain open to good-faith resolution, despite your current unwillingness.
>
> This communication is made solely for settlement purposes.
>
> Sincerely,
>
> Kursten Owen
>
>
> On Thu, Aug 7, 2025, 8:29 PM Breana Askew <shop@breromi.com> wrote:
> > Ms. Owens
> > Please stop contacting me when I already stated my terms. You will not receive any payments from me.
> >
> > This communication is confidential and made solely for settlement purposes.
> >
> > Breana Askew
> >
> >
> > On Thu, Aug 7, 2025 at 11:21 PM Kursten Owen <kursten.owen@gmail.com> wrote:
> > > Dear Ms.Askew,
> > >
> > > As stated, I remain open to resolving this matter and will actively pursue court-appointed settlement mediation. I am also happy to engage with your counsel in that process. If you prefer private mediation outside the court system, that will need to proceed at your own expense, given the availability of a free, neutral court-sponsored option that you have thus far declined to participate in.
> > >
> > > That said, in continued good faith, below is a proposal that accounts for your stated unwillingness to engage in public correction and provides a resolution without requiring you to make any such statements:
> > >
> > > In the absence of significant non-monetary relief, substantial monetary relief is necessary to resolve this matter. Accordingly, my opening offer for full dismissal of all claims, with no requirement of a public statement, is $200,000. I am willing to consider a structured repayment plan if needed.

This figure reflects the documented reputational, emotional, and economic harm already sustained, as well as projected damages based on the court's injunctive findings and comparable defamation judgments. It also includes allowance for good-faith negotiation. I remain open to reasonable proposals within a range that acknowledges both the minimum damages articulated in the complaint and the real-world impact of your actions.

While I understand you feel that a public correction would contradict your personal perspective, a correction would reflect the legal truth—not subjective feeling. Your personal belief does not alter the objective falsity of the published statements or the legal consequences that follow. The court has already issued two forms of injunctive relief after reviewing the record, which further underscores this point.

Put plainly: your public statements and coordinated campaign require substantial relief—whether monetary, non-monetary, or some combination—in order to justify dismissal.

I remain willing to engage in further settlement discussions if you are prepared to participate in a legally grounded and good-faith negotiation process.

This communication is confidential and made solely for settlement purposes.

Sincerely,

Kursten Owen

On Thu, Aug 7, 2025, 7:33 PM Breana Askew <shop@breromi.com> wrote:

## Ms. Owen,

My prior mediation offer still stands. As previously stated, my personal boundaries remain firm, particularly with regard to standing by my own truth.

It is entirely acceptable if we do not agree on certain matters—similarly, I do not agree with many of your statements. My intention has always been to pursue a mutual resolution, not to be pressured into making statements that do not reflect my genuine position.

If you do not have an offer that respects those boundaries, then further conversation is not necessary. However, if you would like to continue discussing the matter, I am open to doing so through attorneys, as previously stated.

Sincerely,
Breana Askew

This communication is made solely for the purpose of mediation and settlement discussions. It is confidential and not to be used as evidence in any court proceeding.

On Thu, Aug 7, 2025 at 10:03 PM Kursten Owen <kursten.owen@gmail.com> wrote:
Dear Ms. Askew,

Thank you for your continued correspondence. I remain open to a fair and structured resolution, but your stated refusal to participate in court-facilitated mediation—with no explanation—is unreasonable under the circumstances.

Court mediation is neutral, cost-effective, and procedurally fair. Your preference for attorney-led negotiation, while declining court mediation, is difficult to understand. You're free to retain counsel and bring them to court mediation, but asking me to assume added expense or delay—when a no-cost, court-supported path is available—is not appropriate. However, hiring counsel may help clarify the legal reality: the terms you're offering are not remotely sufficient, and any reasonable attorney will likely tell you the same.

To be clear, there are no claims pending against me. This case centers on my claims—which the court has already found are likely to succeed and deserving of injunctive relief. Settlement is not a mutual exchange of grievances; it is a release of legal liability in return for meaningful remedy. Delayed post removals without retraction or relief are not sufficient under the law, nor do they reflect any accountability for the impact caused. You're essentially asking me to drop my significant claims (likely over six figures in worth) for delayed post deletions. That isn't a reasonable approach to settlement.

I understand you feel affected by this process, but your refusal to take responsibility in any form — financial or corrective — suggests a continued unwillingness to negotiate in a way that could reasonably lead to closure. Your suggestion that this dispute involved "another party" is also simply inaccurate. I am the person who was defamed, publicly mischaracterized, and harmed both professionally and personally. There is no influencer — the content and response were solely my own.

I will now be moving forward with a formal request for the court to assign a neutral settlement judge. It is your choice whether to participate in that process or not. If you retain counsel for purposes of settlement, they are welcome to reach out to me directly, or to my attorney once representation is formalized.

In the meantime, if you are willing to engage in this dialogue in a reasonable and good-faith manner — including a willingness to discuss actual remedies that reflect the court's findings and the impact of your actions — I remain open to continued discussion here as well.

This communication is confidential and made solely for settlement purposes.

Sincerely,

Kursten Owen

On Thu, Aug 7, 2025, 5:53 PM Breana Askew <shop@breromi.com> wrote:

Ms. Owen

Thank you for your message. While we have differing perspectives on this matter, I agree that pursuing a resolution to avoid further litigation is worthwhile. I do not wish to proceed with court-facilitated mediation but remain open to private settlement discussions between attorneys or a structured phone meeting with counsel present if we cannot reach agreement through correspondence.

I am not in a position to agree to public statements, apologies, or monetary payments. I believe you are viewing this situation as one-sided and may not fully recognize the significant harm it has caused me. You are asking me to apologize and say things that are not my truth. We likely will not reach agreement on this point, as I believe I was deeply wronged. However, I am willing to explore other terms, such as mutual non-disparagement and forward-looking agreements, that would allow both of us to move on without further dispute.

This situation has caused me significant distress, including anxiety, panic attacks, and online harassment that have impacted my health and my ability to focus on my business. Regardless of intent, the impact has been real and damaging. I would also clarify that this online dispute happened between me and an influencer associated with your company, not you personally. I hope we can reach a resolution that allows us both to move forward productively.

As with prior communications, this statement is made solely for confidential settlement discussions and is not admissible in any legal proceeding.

Sincerely,

Breana Askew


On Thu, Aug 7, 2025 at 7:45 PM Kursten Owen <kursten.owen@gmail.com> wrote:

Dear Ms. Askew,

Thank you for your recent message. I appreciate your continued engagement and your acknowledgment that resolution is worth pursuing. That said, we remain far apart on the terms necessary to reach a meaningful and lawful conclusion.

As you are aware, the court has now issued both a Temporary Restraining Order and a Preliminary Injunction in this matter—remedies granted only where the court finds not only that ongoing harm is occurring, but that the legal claims are likely to succeed. These findings are based on the evidentiary record, not just competing personal perspectives.

Your current proposal, which refuses to include any public correction, no apology, and no compensation, is not a viable path forward. Simply deleting content does not resolve defamation. That content was public, widely circulated, and had real-world consequences for my business and reputation. Deleting it now does nothing to remedy the harm that has been caused by the posts. At this point, more—not less—public clarification is required to begin undoing the damage.

This is also not a situation involving mutual wrongdoing. My conduct has been careful, measured, and legal. I understand that you are upset that I publicly responded to your public campaign, and that I voiced disagreement with your statements when doing so, but at no point was anything defamatory said, I actively asked for harassment to stop in those videos, and blurred out your identifying information many times. The harm here stems entirely from your initial and continuing public claims and the campaign that followed. I cannot accept a resolution that suggests otherwise or frames this as a mutual disagreement rather than the subject of a legal action resulting in court orders. This is a legal defamation case, not a social media back and forth.

I also want to note that I found your comments about crowdfunding your legal defense troubling in the context of settlement communications. While I fully understand the need for financial resources in litigation, references to launching new campaigns—particularly while a Preliminary Injunction barring further harmful statements is in effect—raise serious concerns, especially given the strong defamatory content contained in your last crowdfunding effort, which was publicly described as an effort to support legal counsel related to this issue in the first place. Regardless, I trust you'll proceed in a way that respects the boundaries of the court's injunction.

At this point, I unfortunately do not believe you are engaging here with an understanding of legal reality or willingness to hold yourself accountable in a manner that would actually create resolution.

I think, then, that requesting that the court assign a neutral settlement judge to facilitate a structured resolution process is our best next step. This would avoid continued legal process while ensuring settlement is reached fairly and with a clear understanding of each parties' rights and the harm they have caused and appropriate confidential remedies. I remain open to fair settlement terms through that process—ones that reflect the court's findings, the legal harm already identified, and the need for both corrective action and fair compensation.

Please let me know whether you are willing to participate in court-facilitated mediation and I will organize that process. I remain committed to resolving this fairly and professionally, but I cannot do so without meaningful engagement on the legal realities of the case.

This communication is confidential and intended solely for settlement purposes.

Sincerely,

Kursten Owen


On Thu, Aug 7, 2025 at 3:47 PM Breana Askew <shop@breromi.com> wrote:

Dear Ms. Owen,

Thank you for your continued communication. I appreciate your openness to resolution, and I remain willing to consider a constructive path forward.

At this stage, I believe the most appropriate and balanced form of resolution would involve the following:

**Proposed Terms for Resolution:**

- Mutual takedown of all posts, videos, and content referencing each other or this dispute.

- No further public statements or commentary—direct or indirect—including retweeting, liking, or sharing posts—regarding the case, our businesses, or each other.

- Deletion of my GoFundMe summary, and photos relating to this matter. The GoFundMe campaign will be revised to focus solely on Intellectual Property protection.

- Implementation of comment filters on both of our social media accounts for our business names to prevent further commentary about us.

- No requirement for public apologies, outreach, or corrective content, as I believe such actions would not serve either of our interests at this point.

I firmly believe that continued public discussion or outreach surrounding this dispute would only draw more attention to the matter, ultimately harming both of our businesses and reputations. For that reason, I do not agree to the public-facing demands outlined in your message.

While I have not yet submitted my evidence, claims and motions, this was a deliberate choice to conserve time and resources. I have focused instead on building my business, which I currently operate alone. This naturally limits the number of products I can produce and sell at any given time. Nonetheless, I am working toward expansion and am committed to long-term growth.

I also want to clarify that I never instructed anyone to create or post videos about this situation. Third parties acted on their own, expressing independent opinions. While I understand your concern, it is not possible—or legally enforceable—to control the speech of unrelated individuals. I became aware of your content only after others tagged me and shared it with me.

If we are unable to reach a fair and private resolution, I may explore crowdfunding options to support my legal efforts moving forward. This is not a threat—it is simply a reflection of the resources I may need if the matter proceeds in court.

If a private, mutual de-escalation is agreeable to you, I remain open to resolving this matter confidentially. Otherwise, I understand that we may need to proceed through the legal process.

This message is made solely for the purpose of confidential settlement discussions and is not admissible in any legal proceeding.

Sincerely,

**Breana Askew**

On Thu, Aug 7, 2025 at 6:10 PM Kursten Owen <kursten.owen@gmail.com> wrote:

Dear Ms. Askew,

Thank you again for taking the time to respond. I truly appreciate your continued willingness to engage openly and your interest in finding a constructive path forward.

I'd like to offer a few clarifications about the current status of the case and the record before the court, as well as restate what I believe are the minimum elements of a fair and workable resolution:

1. As you know, the court has issued an order finding that my defamation claims are likely to succeed and that I have suffered significant reputational and financial harm as a result. While the case is still ongoing, this finding followed a careful review of the extensive record—including posts, messages, and videos forming the core of this dispute, and was not issued lightly.

2. The court also granted an ex parte Temporary Restraining Order (TRO)—a rare and serious form of relief issued only where a plaintiff demonstrates immediate and irreparable harm and a strong likelihood of prevailing. The court's decision to issue such an order reflects both the gravity of the harm at issue and the strength of the claims based on the evidence presented.

3. The evidentiary record at this point is essentially complete. It includes public content posted by you and by others in response to or encouraged by your statements online. Based on the completeness of that record and the court's preliminary findings, it seems highly unlikely that any new discovery would alter the legal analysis or establish a defense such as truth, protected opinion, mistake, or lack of fault. If such defenses were viable, the recent court orders would not have issued.

4. You noted that you did not "make a claim" against my business directly, but simply pointed others in that direction. I understand this may not have seemed harmful at the time, but courts have long held that someone who encourages or facilitates others in publishing false information may still be legally liable, even if they did not write the specific words themselves. In fact, we discussed this during our July 16 communications. You also are the originator of the defamatory claims - stating I stole from you and was a counterfeiter. The fact that you yourself did not report does not limit your defamation liability.

5. A helpful example of this principle can be found in the 2024 decision I Buy Beauty LLC v Dong. In that matter, a Canadian court awarded $350,000 CAD in damages after finding the defendant responsible not only for her own defamatory videos—accusing the plaintiff of illegal conduct—but also for encouraging her audience to comment and act similarly. The court found liability extended to the defendant's role in facilitating and inciting the actions of followers, including what was said in her comment sections. The underlying conduct and harm are strikingly similar to this case: accusations of unlawful behavior, an online audience, public incitement, and reputational and commercial harm that followed. This precedent powerfully reinforces the importance of accountability and correction in matters like this.

6. I also want to address your recent mention of my Bowser and SpongeBob inspired products. These designs were not part of the original dispute and appear to be raised now as an explanation or defense. I'd gently suggest that this shift — focusing on unrelated products — doesn't change the course of the legal matter. For clarity, these items do not violate third-party rights, and as previously discussed, those rights are not yours to enforce. Referencing different products now offers no legal justification for prior public claims about different products or the impact of the existing campaign.

Given all of the above, I believe this remains a strong case, both legally and factually. That said, I continue to feel that resolution is possible—and preferable—provided it includes an appropriate acknowledgment of the harm that has occurred and actions to restore what's been damaged. At this point, I'm not open to arguing over whether you did defame me. The court's orders and the evidence speaks for itself.

Our next steps here should center on what you can do to make me fairly whole following this incident such that I feel comfortable releasing my claims against you. You've yet to offer any potential solutions or things you'd be willing to do to resolve this.

Despite that, I remain open to a resolution that need not be entirely financial in nature. However, for it to be effective and truly meaningful, it must include substantial non-monetary measures and some level of monetary compensation. Specifically, the non-monetary relief would need to include items such as:

• A written and video apology (with language approved by me), shared and pinned to all relevant social media accounts for at least 60 days;
• Immediate and permanent removal of all videos, posts, captions, and content referencing me or the dispute—including edits to remove references in the GoFundMe campaign;
• Active moderation of comments under apology or educational content, including deletion or public correction of any inappropriate, defamatory, or misleading remarks posted by third parties;
• Reasonable, good-faith outreach to third parties who were encouraged to create content based on your campaign, requesting removal or correction; and
• An educational post or statement clarifying the legal standards around defamation and intellectual property, and helping your audience better understand the responsibilities involved in using legal terms in public allegations.

This approach is aligned with standards in comparable cases and would be a helpful public step toward clarification and repair. Still, some monetary component is necessary. That's not due to punishment, but simply because defamation is a tort designed to compensate for very real harm—financial, reputational, emotional, and otherwise.

As you know, your GoFundMe campaign—which remains publicly available—includes statements such as "they are counterfeit thieves" and "this company has a history of stealing products." Those were and are serious accusations, and played a role in generating more than $12,000 in fundraising, along with publicity that clearly supported product sales. While I understand that some of those funds may since have been spent, the fact remains that they were raised on the basis of false public claims—and that harm has continued.

Between legal expenses, business disruption, and broader consequences, I've already incurred thousands of dollars simply in pursuing this case, and I anticipate a judgment—should we proceed—could reasonably reach the six-figure range, as seen in similar cases including I Buy Beauty.

For these reasons, a non-monetary-only resolution isn't feasible. However, I am happy to discuss alternatives, including structured payment terms, if a good faith effort is made toward closure. I'm also open to court-facilitated mediation if you'd prefer to resolve this with the help of a neutral.

Please let me know your interest in continuing along those lines.

This communication is confidential and made exclusively for settlement purposes, and is not to be used in any legal proceeding.

Warmly,

Kursten Owen

On Thu, Aug 7, 2025 at 1:31 PM Breana Askew <shop@breromi.com> wrote:

**Confidential Mediation Communication – Not Admissible in Court**
*This letter is submitted solely for the purpose of mediation and confidential settlement discussions under Federal Rule of Evidence 408 and is not admissible in any legal proceeding.*

**Dear Ms. Owen,**

Thank you for your message. I remain open to resolution and appreciate the opportunity to continue exploring mediation options. However, I feel it is important to clarify a few points to ensure the record is accurate.

Your legal claims, including defamation, remain allegations—not established facts. While the court may have issued preliminary findings based on limited information, these do not represent a final judgment or confirmation of liability. I respectfully dispute that defamation occurred.

Additionally, the suggestion that I have made "significant, real money" from this situation is speculative and not based on verified facts. This experience has been challenging for both of us, and while it may have brought visibility to our respective platforms, assuming financial gain based solely on social media activity or reach is not a fair or reliable measure.

In reference to your video directed at me, which has garnered substantial views, I note that your business appears to operate primarily through Etsy and Amazon, with social media links pointing to your Shopify storefront. Regarding my own transparency, the funds raised through my GoFundMe campaign have gone toward legal expenses, including consultations with my patent attorney.

To clarify, when public discussions arose about your storefront, they also included commentary about other listings that raised intellectual property questions—for example, products referencing well-known characters like SpongeBob and Bowser. While I did express concerns relating to my invention, I did not personally file any business report with Shopify regarding the accessory in question, despite similarities that were noted. Should my patent be granted, I will evaluate any future enforcement options based on the rights conferred by the United States Patent and Trademark Office.

Regarding the initial non-financial resolution you mentioned: I declined that proposal because it included a request for me to issue public statements directed to third parties. I was not comfortable with that requirement, as I felt it did not truthfully reflect my perspective and could have created confusion about my position. My decision to decline those terms was based on personal and legal boundaries—not a refusal to engage in good faith resolution.

Despite our differing perspectives, I remain open to resolving this matter amicably and wish you continued success in your business. I do not fear competition. My primary concern has always been that my original marketing and product presentation appeared to be closely mirrored following the successful launch of my Kickstarter campaign, which received wide attention.

Once again, this communication is made solely for the purpose of confidential settlement discussion and is not admissible in any legal proceeding.

Sincerely,
**Breana Askew**

On Thu, Aug 7, 2025 at 2:51 PM Kursten Owen <kursten.owen@gmail.com> wrote:
Hello Ms. Askew,

I appreciate the outreach and I'm also interested in mediation and/or settlement. However, due to the significant financial losses incurred as a result of the defamation (defamation the court has found likely occurred and on claims I will likely succeed on in court), and the costs incurred in even having to bring this action, a non-financial resolution is not viable at this point. Please recall that a non-financial resolution was brought to you in our email thread July 16th and you responded to me with the following:

- "I've decided that no agreement has been made because
The cease and desist was completely liable.
Everything will be staying up.
I will continue to defend my invention.
And I am filing a civil suit.
See you in court."
- "My lawyer will be in touch with you all."

It is recommended that some introspection is undertaken to recognize wrongdoing here and understand that we have reached the point of financial liability. I understand you are a small business owner, but I am as well, and you have made significant, real money off of this issue, whereas I have only suffered losses. When cases like this do go to trial, the financial awards can be significant. I'm entitled to some financial compensation for the harm you've caused, and I'd like you to consider that if we move forward via email settlement. Otherwise, I'd be happy to ask the court to appoint a judge to oversee settlement, which I believe is free for four hours and then offered at a reduced rate after.

This is intended solely for confidential settlement discussions. It is not to be used as evidence in any legal proceeding.

Thanks,

Kursten Owen

On Thu, Aug 7, 2025 at 10:49 AM Breana Askew <shop@breromi.com> wrote:

Hi Kursten, I'm reaching out in the hope of resolving this matter privately and respectfully, without the need to continue through the court process. While I do not admit to any wrongdoing, I believe it is in both of our best interests to explore a mutual resolution outside of litigation.

I am open to discussing fair and reasonable terms through direct email mediation if you are willing; however, I want to clarify that I am not open to settlement through any payment. I would also like to clarify that I am an individual defendant and not acting on behalf of any other party. Any matters involving the co-defendant are separate, and I cannot speak for or meditate on their behalf.

Additionally, I wish to disclose that I intend to maintain my GoFundMe campaign if we reach mediation. Going forward, the campaign will be exclusively dedicated to covering expenses related to my pending intellectual property filings and associated legal fees. This fundraiser will remain focused solely on supporting the protection and enforcement of my intellectual property rights.

If you are open to resolving this through direct email mediation, please let me know by August 11th, and we can begin discussions. If you would prefer mediation by phone, I would need time to secure legal representation to be present during the call.

This communication is made without admission of liability and is intended solely for confidential settlement discussions. It is not to be used as evidence in any legal proceeding.

Sincerely,

Breana Askew

Email: shop@breromi.com