IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

**Kursten Owen, individually and d/b/a Elegance & Geekery LLC,**
 Plaintiff,

v.

**Breana Askew (individually and d/b/a Breromi),**
 **Kiandria Demone Boyce,** and
 **Does 1–100,**
 Defendants.

Case No. 6:25-cv-01272-AA

# DEFENDANT KIANDRIA DEMONE BOYCE'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE

## Certification Regarding Conferral

Pursuant to LR 7-1, Defendant certifies that conferral was not practicable. Plaintiff has repeatedly mischaracterized Defendant's lawful speech as threats, admitted to monitoring Defendant's blocked accounts, and filed documents accusing Defendant of violence. Given these circumstances, Defendant does not feel safe conferring directly with Plaintiff. Defendant certifies that she cannot in good faith engage in conferral until the Court provides clarity regarding the scope of the injunction or Plaintiff obtains counsel.

## Preliminary Statement

Plaintiff's Emergency Motion is an overreach designed to weaponize this Court against constitutionally protected speech. Defendant Boyce has complied with the Temporary Restraining Order at all times. Plaintiff cannot identify a single "true threat" or unlawful incitement attributable to Defendant. Instead, she mischaracterizes satire, activism, and rhetorical hyperbole as harassment in order to suppress Defendant's public advocacy.

The First Amendment protects broad speech on matters of public concern, including parody, political commentary, and survivor testimony. Plaintiff's motion does not demonstrate a need for judicial protection; it demonstrates a misuse of process to chill activism and silence criticism. The Court should reject this attempt to transform protected speech into contempt.

---

## I. BACKGROUND

I, Kiandria Demone Boyce, am a nationally recognized content creator and civil rights activist. My work combines education, humor, satire, and creative skits to raise awareness about racism, sexism, and abuse. I use my platform to highlight harmful behavior so that the public can hold abusers, racists, and oppressors accountable. These individuals may face social consequences, but I have never directed or encouraged unlawful harassment or violence against anyone. In fact, most of these "virtual funerals" are for corporations or abstract concepts, not individual people.

One example Plaintiff cites is a post where I said: *"If you are racist or a bigot, fight me."* Plaintiff mischaracterizes this as a violent threat toward her personally. In truth, this statement was about lawful self-defense. As a Black woman and activist, I am subjected to racism daily. My post was a general statement against racism and bigotry, not against Plaintiff. If Plaintiff chooses to interpret that post as directed at her, it is because she is assuming the role of the racist or bigot I was describing. By doing so, she admits to engaging in the very behavior I condemn.

The phrase *"square up"* is also being mischaracterized. "Square Up" is the name of a nationally recognized campaign I led to expose a payment processor for profiting from racial harm. That campaign was widely reported on, and I was recognized nationally and internationally for my efforts. Plaintiff attempts to twist "square up" into language of physical violence, when in reality it refers to a legitimate activist campaign that brought public attention to corporate misconduct. It is both constitutionally protected speech and part of my documented activism, not a threat of harm.

I frequently use my platform to call out abuse—including abuse I have personally suffered in my own family. For example, I previously obtained a TRO in Georgia after reporting sexual abuse by a family member. I chronicled that journey publicly to encourage other survivors to come forward and to build a community of support. Because I am estranged from most of my family, my online community often provides the only support system I have. Stripping me of my right to express my feelings on my social media will also limit my ability to connect with other survivors who have become my only support system.

Another example Plaintiff misrepresents is my post about *"being monitored."* This was a broad statement about feeling surveilled. I was documenting the fear I was experiencing. Plaintiff inserted herself into the scenario. The post did not include Plaintiff's name or my abuser's/stalker's name. If Plaintiff interpreted it as about her, it was because she was exhibiting those behaviors.

Even if I was speaking about the stress of this case and my feelings of being monitored, I never directed anyone to harass Plaintiff. I did not disclose her name, respond to inquiries about her identity, or encourage anyone to report or attempt to take down her store. My speech was limited to expressing my own experience of feeling watched and intimidated. For these reasons, I have not violated the TRO in any way.

Plaintiff has claimed that none of the burner or alternate accounts harassing me belong to her. However, because she is blocked from my accounts, she could not access my posts without relying on third parties or alternate accounts. This raises reasonable concerns about how Plaintiff continues to monitor my content so closely and frequently. At a minimum, her denials should be viewed with caution, as the level of monitoring described cannot be squared with her claim of "passive" viewing (Exhibit C). Plaintiff further claims that a particular account is not hers; however, that account appears to speak on her behalf and repeat her litigation positions.

Finally, I did not "dox" Plaintiff. I reposted a publicly available LinkedIn page that was sent to me, which simply revealed that the company at issue was not solely owned by the portrayed influencer. Plaintiff has falsely characterized this as threats to her family, when in reality the information was public and was sent to me by a third party to report in my social media content. At no point did I direct harassment or threats toward Plaintiff or her family.

A hallmark of my activism is the use of parody, including my "virtual funeral home flyer" format. This is satire that metaphorically signals the end of harmful conduct online. For example, during the Target boycott, I created a flyer joking that "the internet is a better place without Target's harmful behavior." Target was obviously not physically harmed, demonstrating that this format is parody and cultural critique, not a literal threat of violence (see Exhibit A).

Plaintiff further alleges I should be held in contempt because a person in my audience speculated about her identity in a comment. That comment, however, misspelled her name, did not contain any threats, and simply speculated that she was involved in a lawsuit with me—which is already a matter of public record. This does not constitute a violation of the TRO.

I cannot be held responsible for every single comment made by third parties on public platforms. If that were the standard, then Plaintiff should equally be held accountable for harmful and harassing comments made by her own followers. To be clear, I am not seeking license to violate the TRO. I am asking this Court for fairness—that I not be punished for lawful speech or for the independent conduct of third parties outside of my control.

At the same time, I have evidence that individuals affiliated with Plaintiff's company are appearing in comment sections, speaking on her behalf, and initiating direct contact with me. Plaintiff cannot reasonably claim that I am responsible for independent speculation by third parties while she and those affiliated with her company are actively engaging with my content and inserting themselves into conversations between me and my audience. I have attached a screenshot of such an example as Exhibit C.

This demonstrates that Plaintiff is not a passive victim of online discussion but rather is actively participating in it through affiliates—further undercutting her claim that my speech violates the TRO.

---

## II. SIDE-BY-SIDE REBUTTAL

| Plaintiff's Allegation | Defendant's Response |
|---|---|
| **¶1–2:** Plaintiff claims compliance with LR 7-1 by emailing me and interprets my post ("There is a person monitoring my social media… I'm not going to say it again") as hostile. | LR 7-1 does not require unsafe conferral. Plaintiff admits to monitoring me. My post expressed frustration at being watched and harassed; it was rhetorical, not a threat. No reasonable person could construe it as unlawful violence. |
| **¶3:** Plaintiff says she "passively reviews" content. | This cannot be true. I have blocked Plaintiff, so she cannot "passively" view my posts. If she sees them, it is only through alternate accounts or third parties. That is intentional monitoring, not passive viewing. Such conduct is consistent with stalking, not protection. |
| **¶4–7:** Plaintiff speculates I manipulated my email inbox and argues refusal to engage shows hostility. | This is conjecture without evidence. Avoiding contact with someone alleging violence is a protective measure, not hostility. |
| **¶8–9:** Plaintiff cites "square up" and "virtual funeral" as violent intent. | These are satire and rhetorical hyperbole, protected by the First Amendment (*Hustler v. Falwell*). No specific threat was made. Exhibit A demonstrates that the "virtual funeral" format is parody. |
| **¶11–19:** Plaintiff says reposting another activist's video incited harassment. | Reposting commentary is protected unless it is a true threat (*Virginia v. Black*, 538 U.S. 343 (2003)). I |

| | |
|---|---|
| | expressly stated: "I'm not asking anyone to contact anybody." This negates incitement. |
| **¶20–23:** Plaintiff says I portrayed her as racist and hiding behind courts. | I have not named Plaintiff in any content posted after the TRO was granted. If she interprets herself as the "racist" or "abuser," that is her assumption. ORS 30.866 requires targeted conduct. Broad advocacy about racism and systemic abuse is protected (*NAACP v. Claiborne Hardware*). |
| **¶29–33:** Plaintiff cites my post about being monitored and follower comments like "ride at dawn." | I cannot be held responsible for independent third-party comments. Under *Brandenburg v. Ohio*, incitement requires direct advocacy of imminent unlawful action. I never encouraged harassment. |
| **¶34–37:** Plaintiff concludes I am running a "public campaign" and should be sanctioned. | Plaintiff is misusing this injunction to chill my activism. My content — satire, education, and creative commentary — is constitutionally protected. Her interpretation is overbroad, vague, and unconstitutional. |

## III. CONCLUSION

For the reasons stated, Defendant respectfully requests that the Court deny Plaintiff's Emergency Motion for Order to Show Cause. Plaintiff has failed to show any violation of the injunction and is instead using the Court to suppress protected speech and harass an activist.

Respectfully submitted,

Dated: August 25, 2025

---

Dated: 08/25/25

Respectfully submitted,

/s/ Kiandria Demone Boyce
Pro Se Defendant

2146 Roswell Rd 108 Marietta GA 30062
Phone: 404 957 9984
Email: kboyce6977@gmail.com