**EXHIBITS**



**Exhibit A – Target "Virtual Funeral Home Flyer"**

Exhibit A is a screenshot of a "virtual funeral home flyer" I created during the Target boycott. This demonstrates that the "virtual funeral" format is satire, hyperbole, and social commentary. It is designed as fun social media content that brings awareness to social issues, not as a threat of physical harm. No person has been harassed, and no one has been harmed as a result of this content. It is parody and rhetorical critique — forms of expression protected under the First Amendment.



**Exhibit B – Instagram Post Featuring "Square Up" (Time-Stamped Before This Case)**
Exhibit B is a screenshot from my Instagram, time-stamped prior to the filing of this case. It shows that the phrase "Square Up" was already part of my activism, where I was nationally recognized for exposing a payment processor that profited from racial harm. This proves that the term "square up" in my content is not violent in nature. Instead, it reflects my documented activism and public advocacy, which has been covered and recognized nationally. Plaintiff's attempt to reframe "square up" as violent language is a distortion of the record and ignores its well-established meaning in the context of my civil rights work.

**Exhibit C** – Screenshot of comment thread

Shows that plaintiff is actively monitoring defendant's social media content through surveillance, alternate accounts, or third party affiliates, therefore willingly engaging in contact, despite claiming to need protection from all contact with defendant. Illustrates cyberstalking and harassment by Plaintiff under cover of TRO.

Proves that individuals affiliated with Plaintiff's company initiated contact with Defendant by commenting directly, while Plaintiff simultaneously alleges contempt based on speculative audience comments. Shows that Plaintiff and her affiliates engaged voluntarily. Affiliate posted public comment, falsely accuses defendant of "doxxing", despite repeated attempts to clarify that all information shared was public, therefore no law was broken and no "doxxing" actually occurred. This behavior is inconsistent with the plaintiff's claims of need for relief, and instead suggest a pattern of attempting to sway public opinion and unfairly characterize defendant as "aggressive" and "dangerous". Plaintiff continues to make these claims despite there being no "true threat" or direct mention of her or her business.



**Exhibit D** – Screenshot of Social Media Account Affiliation
This exhibit shows that a social media account repeatedly engaging with and monitoring Defendant is followed by Plaintiff's business page, the same page where the initial contact between the parties occurred. The affiliation establishes a connection between Plaintiff and the account at issue.

In addition to following Plaintiff's business page, the account also follows two other accounts that share Plaintiff's last name, suggesting a possible familial relationship. While Defendant does not make a definitive claim as to their identity, this pattern supports the reasonable inference of association between the Plaintiff and the account.

Although Plaintiff seeks to hold Defendant responsible for speculative comments made by audience members, Defendant has continued to receive unsolicited contact from accounts affiliated with Plaintiff. Defendant is not actively monitoring Plaintiff. This evidence was provided to Defendant by a third party, who reported being contacted by the same account and shared the information solely out of concern for Defendant's safety.



