Kiandria Demone Boyce
[Address Redacted for Safety – motion to redact pending]
Pro Se Defendant
Email: kboyce2020@gmail.com
Phone: [Phone Redacted for Safety]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **Kursten Owen (individually and d/b/a Elegance & Geekery LLC),**<br><br>Plaintiff,<br><br>v.<br><br>**Breana Askew (individually and d/b/a Breromi),**<br> **Kiandria Demone Boyce,**<br> **and Does 1–100,**<br><br>Defendant(s). | Case No.: 6:25-cv-01272-AA<br><br>**DEFENDANT KIANDRIA DEMONE BOYCE'S SPECIAL MOTION TO STRIKE**<br><br>**(ORS 31.150 – Oregon Anti-SLAPP Statute)** This motion is brought pursuant to Oregon's anti-SLAPP statute, ORS 31.150, which applies in federal court proceedings. See United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972 (9th Cir. 1999); Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, 890 F.3d 828, 833 (9th Cir. 2018). |

**I. INTRODUCTION**

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 1**

Defendant Kiandria Demone Boyce ("Defendant"), appearing pro se, respectfully files this Special Motion to Strike pursuant to ORS 31.150. This Motion is filed in the alternative if the Court determines it has jurisdiction over Defendant.

Plaintiff's lawsuit arises entirely from Defendant's online commentary in a speech in a public forum addressing issues of consumer protection and online commerce, both of which are matters of public interest under ORS 31.150(2)(c)–(d). The Complaint frames Defendant's speech as "defamation," "harassment," and "threats." Each of these claims arises from constitutionally protected expression. Plaintiff cannot convert protected commentary into tort liability by attaching different labels.

All claims asserted against Defendant that are based on her speech fall within Oregon's anti-SLAPP protections. Because Plaintiff cannot demonstrate a probability of prevailing on the merits, those claims must be dismissed.

This Motion is filed in the alternative and should not be construed as a waiver of Defendant's pending objections to personal jurisdiction and venue. Defendant does not waive and expressly preserves her objections to personal jurisdiction and venue. See Fed. R. Civ. P. 12(b)(2), (3).

---

## II. LEGAL STANDARD

ORS 31.150 permits a defendant to file a special motion to strike any claim that arises from written or oral statements made in a public forum in connection with an issue of public interest, or from other conduct in furtherance of the exercise of free speech in connection with a public issue or issue of public interest.

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 2**

The analysis is two-step. First, Defendant must show that the claims arise from protected activity. Second, the burden shifts to Plaintiff to establish a probability of prevailing with admissible evidence. *Neumann v. Liles*, 358 Or. 706, 369 P.3d 1117 (2016). Federal courts sitting in diversity or exercising supplemental jurisdiction apply state anti-SLAPP statutes, including ORS 31.150, under the Erie doctrine. See *Liberty Mutual v. Virden*, 2010 WL 4008838 (D. Or. Oct. 12, 2010). See Newsham, 190 F.3d at 972; Planned Parenthood, 890 F.3d at 833. Accordingly, ORS 31.150 governs this case.

If Plaintiff cannot meet this burden, her claims must be stricken, and Defendant is entitled to dismissal and costs. Filing of this motion automatically stays discovery under ORS 31.152(2). Defendant respectfully requests enforcement of that statutory stay pending resolution of this motion.

---

### III. ARGUMENT

**A. Defendant's Speech Was Protected Activity in a Public Forum**

Defendant's statements were made on social media platforms, which are quintessential public forums. The content of her commentary related to consumer protection, the accuracy of marketing claims, and product development attribution, all of which are issues of public interest. See Obsidian Finance Group, LLC v. Cox, 740 F.3d 1284, 1291 (9th Cir. 2014) (recognizing online commentary as speech on matters of public concern).

This conversation was already viral and national in scope before Defendant ever posted. Multiple individuals had commented publicly, and posts existed for up to two days before Defendant's

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 3**

first statement. Plaintiff herself further amplified the controversy by publicizing her case filings and leaving hostile comments visible in public forums. Defendant merely added her perspective to a dialogue that was already underway.

---

**B. Plaintiff Cannot Establish a Probability of Prevailing**

1. **Opinion and Activism, Not Defamation**

   Defendant's statements were framed as opinion, speculation, and activist commentary. For example, Defendant prefaced statements with qualifiers such as "my guess" and "I think." Courts consistently hold that such speculative phrasing signals opinion rather than fact, and is therefore non-actionable (*see Exhibit G*). See Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990) (opinion not actionable as defamation where it cannot be proven true or false).

2. **No Evidence of True Threats or Harassment**

   Plaintiff asserts that Defendant engaged in harassment and made threats. However, Plaintiff previously sought contempt sanctions on this same basis, attempting to hold Defendant responsible for third-party speech and unrelated online activity. The Court denied that motion. This reflects a broader pattern in Plaintiff's litigation strategy: repeatedly mischaracterizing constitutionally protected speech and online commentary as "harassment" or "threats."

   This type of repeated attempt to reframe free expression as wrongful conduct is precisely the harm that Oregon's anti-SLAPP statute, ORS 31.150, was intended to guard against. The statute exists to prevent litigants from using the courts to retaliate

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 4**

against individuals for participating in public debate and to chill constitutionally protected expression. Plaintiff's claims, like her unsuccessful contempt motion, seek to punish Defendant for commentary on a matter of public concern. Plaintiff has not produced admissible evidence of true threats or malicious fabrication, relying instead on selective screenshots and conclusory assertions that are contradicted by Defendant's exhibits. Only "true threats" fall outside First Amendment protection. Virginia v. Black, 538 U.S. 343, 359 (2003). Plaintiff has not shown any such threat.

3. **Plaintiff's Own Role in Amplification**

   Plaintiff failed to mitigate alleged harm and in fact exacerbated publicity by sharing her own case filings publicly, leaving comments visible, and engaging in the same online forums she now claims caused her reputational injury. A party cannot create the very publicity she complains of and then attribute the harm solely to Defendant.

4. **Third-Party Conduct Cannot Be Attributed to Defendant**

   Plaintiff seeks to hold Defendant liable for responses and comments from unrelated third parties. The law does not permit this. 47 U.S.C. § 230(c)(1) bars liability for the independent content of others. See Dyroff v. Ultimate Software Grp., Inc., 934 F.3d 1093, 1097–98 (9th Cir. 2019) (Section 230 broadly immunizes speakers from liability for third-party content).

5. **Selective Targeting Undermines Credibility**

   Numerous individuals posted about Plaintiff and her business during the viral controversy, yet Plaintiff has selectively chosen to sue only Defendant. This selective enforcement reveals retaliatory motive and underscores that Plaintiff cannot show Defendant uniquely caused her alleged harm. Selective litigation aimed at retaliation

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 5**

contravenes constitutional principles. See BE & K Constr. Co. v. NLRB, 536 U.S. 516, 530 (2002).

6. **Mischaracterization of Evidence and Protected Rhetorical Expression**

Plaintiff relies on selective screenshots and attempts to mischaracterize Defendant's expressive speech as threats. For example, Plaintiff cites a post in which Defendant stated, "you're going to find out who the [expletive] I am," and portrays it as a personal threat. In context, this statement was rhetorical hyperbole and activist expression. Defendant was referencing her nationally recognized work exposing a payment processor that enabled harmful practices while selectively enforcing policies based on political views. The meaning of the statement was not to threaten Plaintiff, but to emphasize that Defendant has a history of engaging in nationally visible advocacy and bringing attention to harmful conduct. This was rhetorical hyperbole. Courts consistently hold such figurative speech is non-actionable. See Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 14 (1970).

7. **Reports Regarding Plaintiff's Website Were a Form of Protected Activism and Public Concern**

Plaintiff also alleges harm from Defendant's participation in public commentary concerning the content of Plaintiff's website. Defendant and others noted that Plaintiff appeared to be offering products that included designs or patterns associated with well-known brands such as Bowser and SpongeBob, without evidence of licensing. (See Exhibit H) Defendant's statements on this issue were directed at protecting consumers and encouraging transparency in online commerce.

Encouraging concerned members of the public to report potential intellectual property

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 6**

or consumer protection issues to Shopify or other appropriate entities is advocacy on a matter of public concern. Such reporting falls squarely within the protections of ORS 31.150. Defendant's purpose was not to cause Plaintiff targeted harm, but rather to prevent consumers from being misled or scammed. Plaintiff cannot transform good faith consumer advocacy into actionable "harassment" or "defamation."

---

**IV. POLICY CONSIDERATIONS**

Oregon's legislature enacted ORS 31.150 to prevent retaliatory litigation designed to chill public participation in matters of public interest. Plaintiff's claims, targeting online commentary in a viral national controversy, are the type of chilling actions the anti-SLAPP statute was intended to deter. The Oregon Legislature expressly enacted ORS 31.150 to protect participants in public debates. See 2001 Or. Laws ch. 616, § 1. The First Amendment also safeguards "vehement, caustic, and sometimes unpleasantly sharp attacks" on matters of public concern. Snyder v. Phelps, 562 U.S. 443, 458 (2011).

Plaintiff cites Defendant's statement, "you're going to find out who I am," as if it were a literal threat. In context, this was rhetorical hyperbole referencing Defendant's public advocacy work. Courts consistently hold such figurative speech is non-actionable. See Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 14 (1970).

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 7**

Allowing this case to proceed would punish an activist for good faith participation in a matter of public concern, even though Plaintiff herself amplified the controversy and the Court has already found Defendant's conduct was not harassment.

## V. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court:

1. Grant this Special Motion to Strike;
2. Dismiss with prejudice all claims against Defendant arising from her protected speech; and
3. Award Defendant her costs, and if counsel is retained before the Court's ruling, reasonable attorney's fees as provided by ORS 31.152(3), together with such further relief as the Court deems just and proper.
4. Enforce the automatic stay of discovery under ORS 31.152(2).

Respectfully submitted,

Dated: September 15, 2025

/s/ Kiandria Demone Boyce

**Kiandria Demone Boyce**

Pro Se Defendant

[Contact Information Redacted For Safety Pending Court Approval]

**DEF' BOYCE'S SPECIAL MOTION TO STRIKE 8**

Telephone: [Redacted]

Email: [Redacted]