# In the United States District Court for the District of Oregon

| | |
|---|---|
| Kursten Owen (individually and d/b/a Elegance & Geekery LLC), Plaintiff, | : : : |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT KIANDRIA DEMONE BOYCE'S SPECIAL MOTION TO STRIKE** |
| Breana Askew (individually and d/b/a Breromi), Kiandria Demone Boyce, and Does 1-100, | Case No: 6:25-cv-01272-AA |
| Defendants. | : |

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT KIANDRIA DEMONE BOYCE'S SPECIAL MOTION TO STRIKE

Plaintiff Kursten Owen respectfully submits this opposition to Defendant Kiandria Demone Boyce's Special Motion to Strike.

**In the United States District Court for the District of Oregon**

| | |
|---|---|
| Kursten Owen (individually and d/b/a Elegance & Geekery LLC), Plaintiff, v. Breana Askew (individually and d/b/a Breromi), Kiandria Demone Boyce, and Does 1-100, Defendants. | PLAINTIFF'S OPPOSITION TO DEFENDANT KIANDRIA DEMONE BOYCE'S SPECIAL MOTION TO STRIKE<br><br>Case No: 6:25-cv-01272-AA |

----------------------------------------------

**Plaintiff's Memo in Support of Opposition to Defendant Kiandria Demone Boyce's Special Motion to Strike**

**Introduction**

Oregon's anti-SLAPP statute "provides a mechanism for a defendant to move to strike certain *nonmeritorious* claims predicated on speech and petitioning activity potentially entitled to constitutional protection." Davoodian v. Rivera 327 Or.App. 197 P.3d 309 (July 26, 2023). Here, Defendant Boyce was required to show that her speech was made "in connection with a public issue or an issue of public interest" or was otherwise "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or

an issue of public interest." ORS 31.150(2). Given her speech is not constitutionally protected, she has failed to do so.

As an initial matter, Plaintiff does not believe that under Neumann v. Liles, 261 Or. App. 567, 578–79, 323 P.3d 521, 529 (2014), rev'd, 358 Or. 706, 369 P.3d 1117 (2016), Defendants' statements were on a matter of public concern. This private matter was not "already viral" when Defendant Boyce spoke. Defendant Boyce even admits that she's "the one who made the viral post about it", meaning the virality she caused happened before the video on the 17th she referenced (Exhibit A). In reality, Defendant Boyce requested Plaintiff's handle from Defendant Askew before Plaintiff had even made a response (Exhibit B), and Defendant Boyce made a post responding to Plaintiff's first video within 2 hours (Exhibit C). Just this post garnered over 107k views and within the comments, Defendant Boyce directly tagged Plaintiff along with sending a direct link to Plaintiff's Tiktok video. Because of this and the many other posts made by the Defendants, Defendant Boyce and Askew were a driving factor of virality. Further, Defendant Boyce's commentary was only incidentally relaying "consumer protection information." Her primary accusations involved private business matters and were centered on promoting the private interests of a business competitor, not in protecting the public.

In Makaeff v. Trump, the Ninth Circuit found online review posts were on an issue of public concern where "they were intended as "a warning not to use plaintiffs' services" and came in the context of information that was "provided to aid consumers."" That is not the case here. Defendant Boyce nowhere attempted to

warn consumers about Plaintiff's products. Her accusations of counterfeiting and theft were solely intended to interfere with Plaintiff's ability to sell her products (Compl. at 14f) not to protect or warn the public or aid the public in their purchasing decisions. In fact, Defendant Boyce never, in all of her posts about Plaintiff, instructs the public not to purchase from Plaintiff or to avoid her products. Instead, she instructs her audience to file false reports and leave false reviews regarding Plaintiff's business—her posts therefore do not *aid* the public, they *weaponize* the public as a means of harassment in order to gain the upper hand in a private dispute. This was the reality—even Defendant Askew planned to continuously post online regarding her complaints stating "If the C&D doesn't work/is ignored I plan to call them out on every single social media outlet I have"(Exhibit D). These posts therefore are not actions in furtherance of the public's benefit. They are a weaponization of the public in order to force a desired outcome in a private dispute. Respectfully, the defendants cannot transform a fundamentally private business dispute regarding intellectual property into a protected matter of public concern merely by amplifying their false claims to a large, online audience. To find otherwise would result in all online posts about any private or business matter being granted First Amendment protection simply because they are made online and couched in business language, which cannot be the case.

Defendant Boyce's sudden invocation of intent to protect the public against unlicensed products is additionally unconvincing given her own business, Femme Finds Atl, sells products that are inspired by a well-known movie franchise, without

evidence of licensing. (Exhibit E). Defendant Boyce is not earnestly interested in public protection against counterfeiters and therefore was not speaking on a matter of public concern.

**Probability of Prevailing**

However, even if Defendant Boyce was speaking on a matter of public concern, her motion to strike still fails as Plaintiff can show, and in fact has already shown, a probability of prevailing on the merits of her claims.

The bar for Plaintiff to succeed is low, and Plaintiff more than meets it as to all of her claims, as they are not brought to harass or intimidate Defendants, but rather to vindicate her rights. Neumann v. Liles, 369 P.3d 1117, notes this as a: ""low bar" established by ORS 31.150 "to weed out meritless claims meant to harass or intimidate" a defendant."

**Defamation**

The Court has already determined, and it is therefore "the law of the case" that, "Plaintiff has demonstrated a likelihood of success on the merits of her claim for defamation." Doc. 39, page 15. "Under that doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." In Thomas v. Bible, 983 F.2d 152 (Ninth Circuit, 1993), the court stated that, "a court may have discretion to reopen a previously resolved question under one or more of the following circumstances: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred;

(3) the evidence on remand is substantially different; (4) other changed circumstances exist; (5) a manifest injustice would otherwise result." Thomas v. Bible, 983 F.2d 152 (Ninth Circuit, 1993). Defendant Boyce has not established that any of those situations exist that would allow the Court to re-visit its determination that Plaintiff has shown a likelihood of success on the merits of her defamation claim.

Plaintiff showing a likelihood of success is above and beyond what is required to defeat an anti-SLAPP motion, and that determination alone should make the Court deny Defendant's special motion to strike the defamation claim. "[T]he statutory text indicates that the presentation of substantial evidence to support a *prima facie* case is, *in and of itself,* sufficient to establish a probability that the plaintiff will prevail; whether or not it is "likely" that the plaintiff will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS 31.150(3)." However, even if the Court reassessed this, Plaintiff still defeats the motion to strike her defamation claim.

"To determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern. If it does, then the dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact. To answer that question, we adopt the following three-part inquiry: (1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or

hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." Neumann v. Liles 369 P.3d 1117. Here, Defendant Boyce made extensive statements of fact regarding Plaintiff and her business.

Defendant Boyce repeatedly stated that Plaintiff "stole" Defendant Askew's design or product. Compl. Exhibit 1 at A ("a white woman immediately stole the design"), J ("keep reporting that thief"), L ("stole a Black inventor's design"), M ("white woman stealing @brebreomi's invention"), N ("this colonizer stole from a Black Inventor"), O ("stop stealing from Black women"), P ("this company STOLE this idea from a Black inventor"), 38 ("a Black woman had her invention stolen BLATANTLY"), 49 ("their company stole the design"), 55 ("that white thief"). These are just a selection of Defendant Boyce's statements.

As in Nuemann v. Liles, "the bulk of the post is nonrhetorical and factual." These statements are clearly able to be determined true or false (whether intellectual property has been stolen, and theft claims generally, are routinely determined to be true or false in courts around the country), are not hyperbolic as they are direct assertions of fact, and are not opinion based or couched in opinion statements. Defendant Boyce's only evidence of opinion statements comes from a single video where she used words like "in my opinion," but "those words alone will not insulate an otherwise factual assertion from liability." Neumann v. Liles, 369 P.3d 1117. Here, any reasonable viewer would understand these statements as ones of fact that

were not figurative and are susceptible to being proven true or false. *SEE Wheeler v. Green,* 286 Or. 99, 104–06, 593 P.2d 777 (1979).

These statements were also not made in the course of any debate regarding who owns the intellectual property at issue. They were made as statements of fact, meant to inform the public about perceived harm to a Black creator, and came from an individual who is a self-described internet activist that the public goes to for information on individuals who act in ways that are contrary to the advancement of the Black community. Defendant Boyce essentially acted in a manner meant to inform the public of her perceived factual reality that theft occurred. Her theft claims were not hyperbolic, but rooted in actual assertions of criminal conduct that even directed the public to file claims against Plaintiff with Shopify's legal department. (Comp. Exhibit 1 at page 45) ("go to Shopify and…go to their legal department to report somebody.").

Additionally, if Plaintiff has to show actual malice to succeed on her claims, she has done so. To start, Defendant Boyce has admitted to seeing the emails (Compl. at Exhibit 1 pages 2-9), where Plaintiff clearly states that the statements Defendants were making were false. ("You currently have no enforceable property rights…There are no counterfeit products on the market."). Defendant Boyce saw this, as she admitted that she "saw the email" (Exhibit F, Compl. Exhibit 1 at 56) and also clearly stated she was aware that Defendant Askew "didn't legally patent" the design and that Defendant Askew "has not had the resources to protect it legally." (Compl. at Exhibit 1 page 44, 46). Plaintiff additionally publicly denied these

allegations and requested that Defendants "stop sending (their) hate mob after" her. (Exhibit G). This alone should have prompted Defendant Boyce to consider whether her statements were truthful and the harm they were causing, but it did not. Despite knowing that Defendant Askew had no legally protected intellectual property rights and admitting it, Defendant Boyce continued to post her statements defaming Plaintiff as an intellectual property "thief" and told her audience to report her store as selling counterfeits.

Defendant Boyce points to products unrelated to this dispute that Plaintiff sells in order to prove her claims were true, despite the fact that the claims in question clearly did not relate to these products. In fact, Defendant Boyce only referenced these other products a single time in a single video over the course of this dispute. (Compl. Exhibit 1 at page 45) ("they sell Shrek and Spongebob themed shit."). However, using these unrelated and clearly distinct products to back her initial claims actually hurts Defendant Boyce because it suggests she was aware that her core infringement claims were baseless and unsupported and that she needed to find different products to point to in order to justify her false claims. This shows an attempt to manipulate a false narrative by broadening her accusations to dissimilar products. Such action does not correct her prior defamatory statements.

Defendant Boyce also acted maliciously because she acted with the clear intent to have Plaintiff de-platformed and have her stores shuttered. Compl. Exhibit 1 at 31 ("take the whole store down"). She further acted with an intent to negatively impact

Plaintiff's business because she explicitly directed her followers to leave false reviews on Plaintiff's business websites. (Exhibit H).

In all, Defendant Boyce maliciously and intentionally defamed Plaintiff, and such conduct and speech is not protected under the First Amendment, which is why this claim was specifically brought against Defendant Boyce and not other posters. Her malicious conduct as an originator and perpetrator of harm and defamation is why she is being sued. This is therefore not a selectively filed lawsuit attempting to chill protected speech, and Plaintiff's defamation claims should not be struck.

**Trade Defamation**

"The cause of action for trade libel thus requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages." Art of Living Foundation v. Does, 39 Media L. Rep. 2520 (Northern California, 2011).

The same logic above applies to Plaintiff's claim of trade defamation, because Defendant Boyce clearly and falsely described Plaintiff's products as counterfeit. (Exhibit I, Compl. at Exhibit 1, M, 31, page 45). Further, Plaintiff clearly alleged business lost profits as a result. (Compl. at 18e, f, g). This satisfies her burden to survive the motion to strike for trade defamation.

**Intentional Interference with Business Relations**

Plaintiff's claim of intentional business interference also has a probability of prevailing on the merits. "[S]uch a claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference

itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." Top Service Body Shop v. Allstate Insurance Co., 283 Or. at 209–10, 582 P.2d 1365.

As shown above, Defendant Boyce acted to disrupt Plaintiff's business by telling the public to publish false reviews about the business and/or to file false reports with Plaintiff's storefront hosts with the sole intent of having her storefront removed. These acts were wrongful because they rallied the public to act based on fraudulent, defamatory claims. Plaintiff also alleged specific harm resulting from these acts. (Compl. at 18e, f, g). This satisfies her burden to survive the motion to strike for intentional interference with business relations.

**Civil Conspiracy**

Plaintiff's civil conspiracy claim also survives the motion to strike. "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." Osborne v. Fadden, 225 Or.App. 431 (Oregon, 2009).

Here, there is evidence to support that Defendant Boyce and Defendant Askew acted together in order to achieve their unlawful purpose of defaming Plaintiff and interfering with her business. Specifically, Defendant Askew explicitly posted that "@kiandria and I are strategizing." (Compl. Exhibit 1 at 63). Further, Defendant

Boyce stated that she "encouraged (Defendant Askew) to make a GoFundMe" that included defamatory statements about Plaintiff and her business. (Compl. Exhibit 1 at page 45). This evidence is sufficient for Plaintiff to meet her burden to survive a motion to strike her civil conspiracy claim.

**Intentional Infliction of Emotional Distress**

"In pleading a claim for intentional infliction of emotional distress, the plaintiff must allege facts showing that the defendant intended to cause the plaintiff severe emotional distress or knew that such distress was certain or substantially certain to result from the defendant's conduct, that the defendant did cause the plaintiff severe mental or emotional anguish and that the defendant's action was outrageous in the extreme and exceeded a reasonable limit of socially tolerable conduct." Richer v. Poisson, 137 Or. App. 157, 160, 903 P.2d 932, 934 (1995).

Under Oregon law, the fact that Defendant Boyce made a defamatory statement she knew to be false is conduct that is sufficiently outrageous to support an intentional infliction of emotional distress claim. "As we explained in *Checkley I,* "a defendant's publication of a defamatory or otherwise significantly stigmatizing statement, knowing the statement to be false, unfounded, or unsubstantiated, is conduct that, if found to be true by a factfinder, constitutes an extraordinary transgression of what is socially tolerable." Checkley v. Boyd, 198 Or. App. 110, 125, 107 P.3d 651, 661 (2005). Given Plaintiff has provided evidence that Defendant Boyce made a defamatory statement, knowing it was false or at the very least unsubstantiated, means Plaintiff should survive the motion to strike.

In Richer v. Poisson, the court determined that plaintiffs had made a claim for intentional infliction of emotional distress where "defendant, for the purpose of causing plaintiffs' emotional distress, painted graffiti on their windows, harassed them by telephone and harassed their customers by making obscene gestures." Defendant Boyce's conduct goes well beyond this.

Defendant Boyce stated in a podcast recorded prior to this dispute that she is known for "cyberbullying people off the internet." (Exhibit J). Here, she did just that to Plaintiff. She mobilized her followers to harass Plaintiff by leaving false negative reviews regarding her business and making reports against Plaintiff's business accounts. She further repeatedly and extensively continued to make disparaging and hostile content directed toward Plaintiff online despite Plaintiff explicitly asking for such conduct to cease, made Plaintiff's face public and family members in the context of disparaging her and her business, and posted content explicitly meant to instill fear and inflict emotional distress on Plaintiff, including posts telling Plaintiff to "come outside, we aint gonna jump you," referring to her as "fucking slow because she obviously is," turning her into a "skinhead vampire" in order to "give her a taste of her own medicine. In true colonizer fashion, she took a design, so I took her hair," (Exhibit C, Compl. Exhibit 1 at page 13, L).

Defendant Boyce even stated, "Keep antagonizing this black woman. Keep on going back and forth with her. Keep gaslighting her and painting her out to be the aggressor. When you are the one who stole her design. Keep doing it. Just go ahead and keep engaging it. And **I promise you, going to court with Bre is going to**

**be the least of your worries.** Google me, google Kiandria Demone, and then keep on antagonizing this Black woman, and **you're going to find out who the fuck I am**."(Compl. Exhibit 1 at page 44)

Additionally Defendant Boyce stated "**Come argue with me, bitch**... Oh lawsuit this lawsuit that, **I don't give a fuck!**... My whole job is to take down corporations. This shit would be light work.... So I say, **let their asses have it**. You feel me? **No mercy, no grace**... **Let their asses have it. Drag the shit out of them** when they fuck with even one of us!" (Exhibit K)

Defendant Demone understands that she has "great influence" with an "audience (that) is relentless", refers to herself as "one of the biggest trolls" as well as "unhinged Kiandria" and states that her son "calls (her) a professional rage baiter" (Exhibit J). This displays intent and understanding of the cyber bullying caused by her and her weaponized audience.

The unending amount of vitriolic content made towards Plaintiff by Defendant Boyce was all produced over a matter of days and was in response to exactly three videos posted by Plaintiff. (Exhibit G). None of these videos did anything other than assert that Plaintiff did not believe she had stolen any intellectual property, and simply asked for the entire issue to stop. Defendant Boyce's response in producing this content was therefore extreme and outrageous, and Plaintiff has claimed significant emotional trauma and harm as a result. (Compl. at 18a, d). So much damage was caused to Plaintiff, that she pursued therapy and was diagnosed with Adjustment Disorder because of this harassment (Exhibit L).

In total, Defendant Boyce acted to intentionally cause Plaintiff enough emotional distress to result in Plaintiff leaving the internet and/or to remove her products. She weaponized emotional distress caused by online harassment and disparaging and ceaseless content creation in order to strong-arm Plaintiff into doing what Defendants wanted—removing her storefront or ceasing to sell products Plaintiff was legally entitled to sell. Such actions clearly constitute intentional infliction of emotional distress under Oregon law, and Plaintiff's claim should not be struck.

**False Advertising and Unfair Competition**

Plaintiff recognizes an error in her complaint. She intended to bring both claims 6 and 7 only against Defendant Askew because Defendant Boyce is not a competitor of Plaintiff's and Plaintiff recognizes she cannot bring a claim against Boyce for False Advertising or Unfair competition because of that—she made a mistake by not noting that for claim 6, even though she did for claim 7. Plaintiff intends to file an amended complaint to correct errors like this. Plaintiff therefore does not intend to pursue this claim against Defendant Boyce.

**Negligence**

Plaintiff brought her negligence claim in the alternative. Meaning, she only claimed Defendant Boyce was negligent if the Court does not see her as having acted intentionally. However, while researching for this response, Plaintiff learned that "the First Amendment does not allow for imposition of liability for speech or for protest organization based on a negligence standard." Cider Riot, LLC v. Patriot

Prayer USA, LLC, 330 Or. App. 354 (2024). Based on that, Plaintiff similarly plans to amend her complaint to drop this claim. In general, Plaintiff is not an attorney and has made some mistakes in her understanding of the law, as occurred with her understanding of what the definition of "harassment" was for the purposes of the preliminary injunction. These mistakes are not the result of malice on the part of the Plaintiff—she is simply trying to protect herself through the courts and is making every effort to do so in a good faith way. To the extent that I have brought some claims that may not have succeeded, that does not rightfully lead to the conclusion that all of my claims are invalid or that I did not bring those claims in good faith. I thought, based on all of the resources I had available, that those claims were valid and strongly supported at the time. Upon learning they are not, I am willing to admit so and drop those claims, as I am doing here. Similarly, with the preliminary injunction, I now understand its scope and will not bring any claims of harassment outside of that scope going forward.

**Conclusion**

Based on all of the above, Plaintiff believes that Defendant Boyce was not speaking on a matter of public concern, but rather simply making a private dispute public. And, even if Defendant Boyce was speaking on a matter of public concern, her motion to strike still fails because Plaintiff has established a strong probability of prevailing on her defamation, tortious interference, civil conspiracy, and intentional infliction of emotional distress claims. For those reasons, Plaintiff respectfully requests that the Court deny Defendant Boyce's special motion to strike.

**Declaration**

I, Kursten Owen, declare under penalty of perjury pursuant to that the above is true and correct to the best of my knowledge and belief, and that all of the attached exhibits are true and correct copies.

Dated: <u>September 29, 2025</u>

<u>*s/ Kursten Owen*</u>

Kursten Owen