Exhibit BV

**In the United States District Court for the District of Oregon**

:

Kursten Owen (individually and : 

d/b/a Elegance & Geekery LLC), :

Plaintiff, :

v. : 

Breana Askew (individually and :

d/b/a Breromi), Kiandria Demone Boyce, 

and Does 1-100, :

Defendants. :

-------------------------------------------------

**Plaintiff's First Amended Complaint under FRCP 15(a)(1)(b) for Damages, Injunctive Relief, and Jury Demand**

**Case No.:  6:25-cv-01272-AA**

## Jurisdictional and Venue

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because the parties are citizens of different states (Plaintiff resides in Oregon, and the known Defendants reside in Georgia and Florida), and the amount in controversy exceeds $75,000, excluding interest and costs.

2. This Court is the proper venue under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this dispute happened in Oregon. The Defendants' online action individually and purposefully targeted an Oregon resident and Oregon business and were intended to affect both. All harm was also experienced in Oregon.

Exhibit BV

### **Parties**

3. Plaintiff: Kursten Owen is an individual who is the owner of Elegance & Geekery LLC, a business licensed in Oregon.

> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

4. Defendant Askew: Breana Askew is an individual doing business as Breromi.

5. Defendant ~~Demone~~Askew is known online by the following handle: Tiktok: @Brebreromii, @brebreromi (later changed to @Breromiofficial), @breromibre; Threads: @Brebreromi, @breromiofficial; Instagram: @Brebreromi, @Breromiofficial, X: @Breromiofficial, @brebreromi; YouTube: Breana Nicole, @brebreromi

> **Formatted:** Font color: Auto

~~5.~~6. Defendant Boyce: Kiandria Demone Boyce is ~~an individual~~a self proclaimed "radical black activist" and/or "civil rights activist" who resides in Georgia.

> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

> **Formatted:** Font color: Auto

7. Defendant Boyce is known online by the following handle: Tiktok: @kiandriaisback; Threads: @kiandria; Instagram: @kiandria

~~6.~~8. Doe Defendants are currently unknown but may become known given the online nature of the events.

> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

### **Facts**

> **Formatted:** Font: Bold, Underline

### **General Overview**

~~7.~~9. Plaintiff operates an online business, Elegance & Geekery LLC, which sells accessories ~~and the business~~. The business's gross sales were $190,310 ~~last year~~in 2024.

> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Exhibit BV

10. On July 14, 2025, Defendant Askew began a coordinated online smear campaign making false, defamatory statements: publicly accusing Plaintiff of design, and invention theft, racism, intellectual property theft, blackmail, and the illegal selling of counterfeit versions of goods Defendant Askew claimed she owned patents and trademarks intellectual property covering.

**Formatted:** Font color: Auto

11. Defendant Askew, and Boyce tied their defamatory statements to themes of oppression, racism, and colonization in order to intensify public engagement with their falsehoods and further incite public hatred and harassment against the Plaintiff.

**Formatted:** Font color: Auto

12. During this campaign, Defendants Askew and Boyce began encouraging the public to mass report Plaintiff's online shopping platforms on sites like Etsy, Shopify, and TikTok as fraudulent and/or engaged in illegal activity, including selling counterfeit goods, in order to: disrupt Plaintiff's business, cause her emotional distress, and have her online stores taken down by these ecommerce platforms.

**Formatted:** Font color: Auto

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

13. Defendant Askew lacks any enforceable intellectual property over her products.

14. Defendant Askew only has a pending, unpublished patent application (with a provided filing number of 19/253,840. (Exhibit AV).

15. Defendant Askew has a currently pending trademark application over the word mark "Hair Clique," and an abandoned application over the word mark "Magnetic Hair Clip." (Exhibit AW).

Exhibit BV

16. Defendant Askew has no registered trade dress.

17. Defendant Askew has not identified any unregistered trade dress to which she is owed common law property rights.

18. At the start of this dispute, Defendant Askew publicly presented her products as "patented." (Exhibit D, W).

19. As early as October 2024, Defendant Askew stated her products were patent pending. (Exhibit AX).

20. In her Cease and Desist email to Plaintiff, Defendant Askew stated she filed her patent in June 2025. (Exhibit A).

21. Defendant Askew therefore has a history of distorting the intellectual property status of her goods to the public.

22. On July 14th, 2025, Defendant Askew was tagged by a third party in the comments of a product marketing video made by Plaintiff showcasing her "Hair Hoop" products. (Exhibit D).

23. Defendant Askew saw Plaintiff's products, felt they were similar to her own merchandise, and assumed–without any evidence, having never spoken to Plaintiff, and despite knowingly having no enforceable intellectual property rights over the products–that Plaintiff had unlawfully copied Defendant Askew's work in an intentional act of intellectual property theft, an act Defendant Askew would later describe as "racist." (Exhibit B).

24. Defendant Askew's only evidence that Plaintiff even saw her work prior to creating her own product is the fact that Plaintiff entered the market after

Exhibit BV

Defendant Askew's successful Kickstarter campaign launching her Hair Clique 2.0 designs. Defendant Askew assumed, given the success of her Kickstarter, that Plaintiff must have seen the Kickstarter.

25. Believing no other individual could have independently conceptualized the idea of magnetic hair clips–despite the long-standing use of such clips in the cosplay community, prior similar products produced by companies like GoGirlUSA, and even prior published patent applications (Patent number: US20100078036A1) covering similar if not identical concepts–Defendant Askew assumed Plaintiff must have seen her product and intentionally "stole" it and "lied about never seeing (Defendant Askew's) invention before to have a racist attack (Defendant Askew's) brand." (Exhibit X, J).

26. In reality, Plaintiff has been 3D printing hair accessories for over 8 years, including many different attachment methods such as: barrettes, alligator clips, hair pins, elastic, twisted metal wire loops, bobby pins, and even printed pieces with small prongs for better hair grip (Exhibit AS). Plaintiff has also gone to comic-con events and expos with her business, Elegance & Geekery LLC, and has long seen these types of products (magnetic hair accessories) being crafted by individuals for their cosplay hair pieces. These events are where she first saw the application of embedded magnets with 3D printing in-person (Exhibits AS).

27. Plaintiff first bought magnets to test with this magnet embedding process that seemed very common across the community as early as 2020. (Exhibit AS).

Exhibit BV

Given this was during the early stage of the pandemic and Plaintiff had recently graduated college and was interviewing for engineering positions, Plaintiff did not have time to fully test with this concept and set aside her design ideas.

28. It wasn't until Plaintiff's recent furlough, and the free time it afforded her, that she decided to expand on her currently available hair accessories at Elegance & Geekery LLC. She then decided to look back at older ideas, including the magnetic hair accessories seen at conventions.

29. Plaintiff's Hair Hoops are not complex in design, and are fairly easy to 3D model even with little experience. Plaintiff started with simple sketches of the hoops, comb prongs, and prong slots (Exhibit AS). Plaintiff incorporated prongs into her Hair Hoops based on her prior use of prongs for this exact purpose of securing hair accessories in hair (Exhibit AS). Making the prongs removable seemed like an obvious design choice since not everyone has thin hair like Plaintiff and therefore may not need all prongs or any dependant on the style it is worn in.

30. Plaintiff's current models include a base design, often a simple shape (i.e: a doughnut, flower, gear, etc.), and multiple void models. These void models would be the hole that cuts out the center of the base model, the slots for the embedded comb prongs, and magnet slots (Exhibit AS). This way the base model can be adjusted and scaled, without the comb prong slots or magnet slots being affected for different model sizes. This means once the base void models

Exhibit BV

were tweaked and finalized, these same void models could be applied over nearly any base model as an efficient and optimized process (Exhibit AS). The great aspect to this process of modeling, is that the inner cutout can be changed from removable to embedded options, small prongs to large prongs, staggered prongs to non-staggered, very easily without having to completely regenerate a new STL file and without having to re-tune the model within the slicer software. This method allows for easy alterations while maintaining efficiency. Plaintiff entirely conceptualized this modeling process from scratch.

31. As Plaintiff has rather thin hair, she used a 1.25" inner diameter size as the first piece to model and test with. Notably, Defendant Askew's smallest size is 1.5" in diameter. With thin hair in mind, it made sense that weaving hair between the combs would be necessary to more easily hold the hair in place. This is why the first iteration of this design was made with the combs not only staggered side-to-side in the piece, but also staggered forward and backwards to help create tension in the small gap when placing the halves together. Although defendant Askew claimed Plaintiff "**replicated the concept of the hair teeth combs that (she) made in 2024,"** It should be noted that all of Defendant Askew's clips only have prongs directly across from each other, not staggered and, that Defendant Askew's 2.0 upgraded Kickstarter version includes embedded prongs only (Exhibit V).

32. These clear differences in functional design aspects and creation methodology reflect the original design process undertaken by Plaintiff.

Exhibit BV

33. Based on any reasonable review of Plaintiff's products revealing these differences, it would have been obvious to the Defendant that she did not "steal" from Defendant Askew.

**July 14, 2025**

> Formatted: Font: Bold, Font color: Auto

34. As early as 8:06 PM on July 14, 2025, Defendant Askew began spamming comments publicly on Plaintiff's business social media accounts, stating, "The functionality of the magnetic hair clique design **has been patented**. Down to the specifics of using N52 magnets to create the hair clips as a claim. Renaming my invention to make **your own design styles is still infringement. You can make you own styles with credit, but they cannot be sold. I will take action legally in the future (next few months) when my patent is finalized if this continues to be sold** on your storefront so fair warning." (Exhibit D).

> Formatted: Font color: Auto

35. On July 14, 2025 around 9:~~50 PM~~49 PM, and after already spam commenting the previously discussed comment on Plaintiff's social media accounts, Defendant Askew first sent Plaintiff a "Cease and Desist" email wherein she stated: "I am writing to formally notify you that I have **filed a patent application** with the United States Patent and Trademark Office (USPTO) **June 2025** relating to the Magnetic Hair Clique Invention...This letter serves as **formal notice of our intellectual property rights**...we urge you to immediately cease and desist from all activities that may infringe upon the claims of our application...if you continue any activities that may **infringe**

> Formatted: Font color: Auto

> Formatted: Font: Bold

> Formatted: Font: Bold

> Formatted: Font: Bold

> Formatted: Font: Bold

Exhibit BV

**upon our pending intellectual property rights**, we reserve the right to pursue all available legal remedies." ~~(Exhibit A).~~

~~9.~~36.    The ~~cease~~Cease and ~~desist therefore~~Desist essentially demanded Plaintiff immediately stop marketing, producing, or selling any products of hers that "infringe" a patent application that Defendant Askew did not disclose, making it impossible to even know what ~~she claimed she had property rights over~~potential intellectual property rights Defendant Askew may obtain based on the application, and what, if any, products of Plaintiff's would infringe those rights and therefore need to be removed from her storefront in order to avoid legal liability as threatened by Defendant Askew.

37. This was particularly concerning to Plaintiff given Defendant Askew made it clear she will "be suing anyone and everyone" if her patent is issued (Exhibit BE) and even told Plaintiff to "prepare for the lawsuit babes" (Exhibit B).

38. On July 14th, Defendant Askew commented on a post stating "**if the C&D doesn't work/is ignored, I plan to call them out on every social media outlet I have.**" (Exhibit E).

~~10.~~39.    Despite the "Cease and Desist" granting "ten (10) business days from receipt" to respond, Defendant Askew ~~almost immediately~~took to social media on July ~~15, 2025 to begin publicly defaming~~14th, less than an hour after sending the Cease and ~~harassing~~Desist email, to "call out" plaintiff and her business. (Exhibit C, D). Defendant Askew went as far as to state that Plaintiff

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

**Formatted:** Font color: Auto

**Formatted:** Font color: Auto

**Formatted:** Font color: Auto

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)

**Formatted:** Font color: Auto

**Formatted:** Font color: Auto

**Formatted:** Font color: Auto

Exhibit BV

in an attempt to shame her into compliance:"ignored (Defendant Askew's) cease and desist." (Exhibit J, R, BP).

    a. On multiple posts across Plaintiff's business Instagram account, Defendant Askew, writing from her own business Instagram account, repeated: "The functionality of the magnetic hair clique design **has been patented**. Down to the specific of using N52 magnets to create the hair clips as a claim. Remaining your invention to make **your own design styles is still infringement. You can make you own styles with credit, but they cannot be sold. I will take action legally in the future (next few months) when my patent is finalized** is this continues to be sold on your storefront so fair warning." (41, 42, 44)

40. At this time, Defendant Askew's variousAs of at least July 14th at 10:36 PM (less than an hour after sending the cease and desist), Defendant Askew posted a now-deleted video on her business TikTok account wherein she stated: "I think it's funny how this person **saw my invention and completely copied the concept down to the low tension style,** and just made it their own for their own hair type. Well, I made mine for all hair types. **Blatantly stealing from a black woman is just so, I, I think it's ironic. But prepare for the lawsuit babes** because this invention has a patent pending." (Exhibit B).

41. Notably in this video defendant Askew admits Plaintiff made her hair pieces "their own for their own hair type," which indicates Defendant Askew knew

Formatted: Font color: Auto

Exhibit BV

there was an obvious difference between Plaintiff and Defendant Askew's design. (Exhibit B).

42. On July 14th, Defendant Askew further posted on Threads stating "A white lady is trying to **steal and profit off my design**" and sharing screenshots of Plaintiff's business products. (Exhibit C).

43. Beginning on July 14th, Defendant Askew began to instruct her followers to "report" Plaintiff's business for selling "rip offs." (Exhibit F).

**July 15, 2025**

44. On July 15th at 5:40 AM PST, before any public response to the accusations by Plaintiff, Defendant Askew gave Defendant Boyce Plaintiff's business account information after Defendant Boyce requested it in a public comment. (Exhibit G).

45. Defendant Boyce is a self-proclaimed "radical Black activist" online.

46. In a podcast recorded prior to the events laid out in the complaint, Defendant Boyce referred to herself as "unhinged Kiandria" and "one of the biggest trolls" noting that she is known for "kind of cyberbullying people off the internet" and that her son refers to her as a "professional rage baiter." Defendant Boyce went on to assert that she has "great influence," and that her "audience is relentless. They will drag them… And we hold a lot of people accountable." (Exhibit BF). In this podcast, Defendant Boyce also states that she "average(s) 5 million views a week" which gives her "significant influence." (Exhibit BF). This displays Defendant Boyce's intent and understanding of the cyber bullying

Exhibit BV

caused by her and her weaponized audience, along with her understanding of the influence and reach she has online.

47. On July 15th, Defendant Boyce commented Plaintiff "has **yet to meet a bully** honestly. I've been busy today." (Exhibit N).

48. On July 15th, Plaintiff first responded to these accusations, stating in a video: "I recently made a new product called Hair Hoops that use embedded magnets, which is a **concept commonly used in the 3D printing community for over the past decade. I added prongs because it seemed obvious** and otherwise the product would fall right through my hair. It was less than 12 hours ago that a large creator was tagged, and I woke up to nearly 20 messages from this larger creator. Between comments, DMs and emails threatening to take a legal action against me for **infringing their patent**. They're currently **trying to get my account banned** by her audience, which is about 50 times larger than mine. And for some reason, she's trying to make it a race thing. Upon a deeper dive into this issue, the creator claimed to have a patent nearly a year ago, but in the email to me, she claims the patent was filed last month. I also found out that there was a product for sale nearly three years prior to the alleged invention that is extremely similar functionally. At this point, due to obviousness of the design and previously available similar products, **I'm not sure this is even patentable**. This creator seems to think it's some type of game with statements like, 'But prepare for the lawsuit babes' well, my business and livelihood isn't a game to me and **I'm happy to follow the law.**

Exhibit BV

**If this alleged invention patent is published by USPTO, I will happily take down all of my pieces if they are seen as infringing that patent.** Even in her own hate campaign against me, she stated she can't do anything legally until the patent is accepted and I completely agree. **Please do not continue to send your hate mob after me or contact me further about this, unless it is a link to your USPTO published patent.** This is the only statement I plan to make regarding this matter." (Exhibit K #1). Plaintiff's intention behind this video was to inform the harassment mob targeting her of her willingness to cooperate with IP rights, desire to reduce harassment, and attempt to help mitigate damages caused by defendant Askew's Claims.

49. Defendant Boyce made a response to this video in less than 2 hours of it being posted stating "A Black woman inventor designed a magnetic hair clip…and a white woman **immediately stole the design.**" She tagged Plaintiff in a comment on the post stating "@eleganceandgeekery **come outside. We not gonna jump you.**" Defendant Boyce additionally commented telling her followers to "**Go to TikTok**," presumably to comment and/or harass Plaintiff on the platform. (Exhibit H).

50. Just this single post by Defendant Boyce garnered over 107k views (Exhibit H). Because of posts like this and the many other posts made by the Defendants described in this document, Defendant Boyce and Askew were the cause of the virality of these defamatory claims.

Exhibit BV

51. In another response Defendant Boyce stated, "This **colonizer stole** from a Black inventor, and now she is gaslighting her and playing the victim. There are a bunch of white mean girls in the comments, defending this mess, and trying to drag the original creator. **We do NOT play that**." (Exhibit L).

52. Defendant Boyce further commented under this post linking to Plaintiff's TikTok account and telling her followers to "**call her out…Report her page and report those videos**." In another comment on the post, Defendant Boyce noted that Defendant Askew "has specifically asked that anybody who cares though **defend her in those comments** so it doesn't hurt her brand!" In the same post, Defendant Boyce posted a screenshot of Plaintiff's business Facebook account and noted that "If y'all want to **leave a review**…Facebook has that option." Further, Defendant Boyce instructed commenters to "**report** the videos where you see **the thief** selling it." (Exhibit L).

53. The many reviews left because of this call to action emphasize the misinformation spread by the Defendants about Askew's patent status with statements like "Black creator who holds the patents for them," "She has the patent!," and "Black woman that has it patented" (Exhibit BR).

54. In another Threads post, Defendant Boyce stated "We're not just tussling in the comments. **We have a plan**." and then instructed her followers to report Plaintiff's Shopify account. She specifically directed followers to the Shopify legal reporting link as well as Plaintiff's Shopify storefront link, and noted that "Shopify has a policy against selling counterfeit items. Enough complaints will

Exhibit BV

flag the store and force her to prove the products are hers….or **take the whole store down**." She then instructed followers to "Select 'report a merchant' then choose 'illegal activity or fraud.' In the description," she instructed followers to "explain the **store is selling counterfeit items**." She followed up to say "Tip: You can **file a report for both counterfeits and IP theft**…Please take the time to do it!" Defendant Boyce commented again to state "Every report counts, if enough people speak up, Shopify will take action. **They've shut stores down for less**." In this post, Defendant Boyce responded to a commenter asking for information on "who owns the copyright" stating "Don't select copyright infringement. **Select illegal activity and say that she's selling counterfeit products, because she is**." (Exhibit I).

55. On July 15th, Defendant Askew posted a similar instruction, noting that she and Defendant Boyce "**are strategizing**" and "this is a sad case of a white woman **trying to steal** from a black woman for her own personal gain/profit…**I attempted a cease and desist but she ignored it**. The best thing we can do at the moment: **follow the link below to file a complaint to the merchant for illegal activity and state that she is selling counterfeit products.**" Defendant Askew then linked the Shopify legal reporting page in her comments as well as Plaintiff's Shopify business storefront. Comments on the post identify multiple third parties confirming they reported Plaintiff's business per Defendant Askew's request. (Exhibit J).

Exhibit BV

56. Defendant Boyce publicly proclaimed these actions were the result of "a plan," insinuating this was an organized and strategic conspiracy to defame Plaintiff and interfere with her lawful business. (Exhibit I).

57. Defendant Boyce has previously engaged in online campaigns wherein she leverages her online following in order to orchestrate the filing of mass public complaints to third party sites such as GiveSendGo/Square in order to compel the companies to act in a certain way. (Exhibit Y).

58. It is therefore likely that the idea to generate mass reporting of Plaintiff's storefronts for illegal activity in order to disrupt Plaintiff's business originated with Defendant Boyce and that she and Defendant Askew conspired to utilize this method as a means of harassing Plaintiff and interfering with her business.

59. On July 15th, Defendant Boyce made another post identifying Plaintiff's individual social media profiles represented her products as "patented" and with the ™ symbol indicating they were trademarked. (59, H, F). She publicly stated, "I said account, @saige.sauce, stating "THIS is the person behind it" and "don't hide behind your business page…Come outside" and including an image with the caption "Come outside, we not gonna jump you." (Exhibit M).

**Formatted:** Font color: Auto

60. On July 15th, Defendant Boyce reposted Plaintiff's first video and commented "**This company STOLE this idea from a Black inventor and whitewashed it.**" She noted in this post that Defendant Askew did not have enforceable intellectual property rights at that time but that "the court of

Exhibit BV

accountability is in session now." Defendant Boyce stated "this isn't just about **stealing an idea**…it's about **stealing generational wealth**." (Exhibit O).

61. Defendant Boyce further incited harassment by making inflammatory comments such as "**This is modern-day colonizing. Taking intellectual property**, gaslighting the creator, and profiting from their labor is a pattern deeply rooted in slavery. The only difference is **now they use legal loopholes instead of chains**." Such comments were meant to amplify public outrage against Plaintiff to encourage further harassment. (Exhibit O).

62. On July 15th, Defendant Askew, called on her followers to "defend me in the comments until I can make a proper video!" as well as another post requesting "If you have tiktok please defend me in the comments, I won't be able to make a video response until later today." In both these instances Defendant Askew linked directly to Plaintiff's tiktok response video and in one instance reposted Defendant Boyce's content (Exhibit P).

63. On July 15th, Defendant Askew replied to a comment stating "I trademarked my invention name and patented." (59) She updated some of these during the course of Later Askew would update her harassment campaignphrasing to indicate they were actually "patent pending." (40)  status on social media (Exhibit BP).

b.64.    This indicates that sheDefendant Askew, was aware of the legal difference between having a patent and a pending patent and was intending to use the leverage of purportedly having a patent in order to boost the image of

Exhibit BV

her product and scare potential competitors. ~~In reality, Defendant Askew's only claim to any intellectual property is her filing of an application (not yet reviewed) for a trademark over the phrase "Magnetic Hair Clip" and a filed patent application (not yet published). (Q, Z, 1) The content of that application has never been provided, so no one knows what she is even claiming she has rights to,~~ as well as to confuse consumers.

**Formatted:** Font color: Auto

~~11. Because Plaintiff not only woke up to the receipt of both the cease and desist email and the start of Defendants' social media harassment campaign, it is evident that~~ On July 15th, Defendant Askew ~~sent the cease and desist in the late, evening hours of~~ **~~July 14, 2025~~** ~~and began her social media campaign almost immediately.~~

**Formatted:** Font color: Auto

**Formatted:** Font: Bold, Font color: Auto

~~12.~~1.    ~~Between July 14-17, 2025, Defendant Askew and Defendant Demeny engaged in an online smear campaign, attempting to leverage public hate and harassment as a means of forcing Plaintiff to flee the market. This campaign is ongoing and will likely continue without court interference.~~

**Formatted:** Font color: Auto

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)

~~13.~~ Defendant Askew ~~defamed Plaintiff and/or her products and business when falsely accusing her of theft, lies, racism,~~ instructed her followers to "continue to **report this theif**, this is **disgusting**." She additionally ~~defamed her by stating she~~ commented that Plaintiff was ~~committing an illegal action, selling counterfeits, and defamed her products and business by calling the products counterfeits. She additionally called on the public to continue in the defamation and spread it, particularly through telling them to report her store~~

**Formatted:** Font color: Auto

**Formatted:** Font color: Auto

Exhibit BV

fronts, which was an explicit attempt to interfere with Plaintiff's business and business relationships/agreements with platforms like Shopify, Etsy, and TikTok. These acts are factually supported in the attached evidentiary documents, which include the following:

a. 65.    G: "This is a sad case of a white woman trying to steal "stealing from **a black woman** for her own personal gain/profit... I have a patent pending on my invention but can't sue until it is finalized. I attempted to Cease and Desist but she ignored it. She **stole my invention concept**, and is trying to claim it as her own. **Lied** about never seeing my invention before **to have a racist attack on my brand.**"and playing victim. Disgusting!" (Exhibit Q).

   b. G: "The best thing we can do at the moment is **file a complaint for illegal activity and claim she is selling counterfeits**" The post then instructs members of the public on how and where to file these false complaints.

   c. I: Includes steps to report Plaintiff's store. "**Counterfeit Storefront: eleganceandgeekery.com**"

   d. Q: post implying the Plaintiff "was plotting to **steal and tried to trademark "magnetic hair clip"**"

   e. 11, 12: "The person **who stole my invention** just posted a tiktok & reel claiming I didn't file a patent because she couldn't find the number." And "this is defamation right?" This statement is also inaccurate. Plaintiff simply stated she couldn't **find any evidence** that a patent

Exhibit BV

had been filed, which is true because the filing was not and is not published.

    f.   20, 21: "you are a **thief**"

    g.   13, 14, 18, 22, 24: Multiple posts directed towards defending and reasserting her false claims and calling on followers to do the same.

66. ~~15, 16 ("giving my~~ On July 15th, Defendant Askew posted an additional time, stating "A white lady is **trying to steal and profit from my design**...No credit either, just **blatant copying**." In the comments, she referred to her pending patent application and stated, "**I am aware I can't sue until it's approved**, but I can **call out counterfeits since my Cease and Desist was ignored.**" (Exhibit R).

67. Defendant Askew's Cease and Desist was not ignored–it was sent an hour before Defendant Askew began her online campaign and therefore gave Plaintiff no time to respond.

    h.   On July 15th, in response to Plaintiff's video exposure"): Posts using publicity garnered by unlawful conduct to self-promote and re-direct business from Plaintiff to herself.

    i.   16: "**She has been harassing my tiktok**" despite Plaintiff making no claims or posts at all on requesting that Defendants stop "sending their hate mob after (her)," (Exhibit K) Defendant Askew's TikTok. And instructing follows to help with "Defending me here."

Exhibit BV

  j. 19: "she has people on tiktok calling me a bully" despite Plaintiff directing no one to address any comments towards Defendant Askew.

  k. 17: posts directing followers to make false claims defaming Plaintiff's goods as counterfeit.

  l. 19: Instructing followers to "repost on tiktok for more traction, she has a bunch of racists trying to defend her"

14. Defendant Demone, to an audience of 102,000 followers (26), did the same as Defendant Askew:

  a. A: "A Black woman inventor designed a magnetic hair clip…and a white lady immediately stole her design."

  b. B, K: Posted faces and names of the Plaintiff and her family member online in an act of doxing.

  c. J: "Keep reporting Boyce admitted in a post that thief."

  d. L: "@eleganceandgeekery stole a Black woman inventor's design."

  e. Posts containing content solely intended to cause Plaintiff emotional distress and anguish: L, 32, 34, 38, 39, 47, 48, 56 (also inviting another large creator to add onto the defamatory dog pile), 57, 58

  f. M: "the white woman stealing @brebreomi's design" and "I broke down the code on her checkout page and found she uses Shopify. And Shopify has a policy against selling counterfeit items. Enough complaints will flag the store and force her to prove the products are hers…or take the whole store down."

Formatted: Font: Not Bold, Font color: Auto

Exhibit BV

   g. N, 30: "this ~~colonizer stole~~ from a Black inventor" and linking to Plaintiff's TikTok page in order to direct the public there to further harass and bully the Plaintiff.

68. ~~O, 29:~~ "@eleganceandgeekery~~"~~ Bre didn't send a mob after you…I DID." ~~And,~~ and "**Stop stealing** from Black women." (Exhibit S).

~~h.~~69. Defendant Boyce therefore acknowledges and publicly (and repeatedly, as she also said the same thing in a later video) admits that she intended to, and did, encourage the public to attack the Plaintiff, harass her, and cause her emotional harm as well as damage her business in order to pressure her offline or to cease selling products she was legally entitled to.

   i. P, 27m: "This company **STOLE this idea from a Black inventor**."

70. ~~49~~On July 15th, Defendant Askew reposted a third-party video wherein the individual referred to videos of Plaintiff's products and stated "what you have just seen is an example of a **white woman stealing a black woman's idea**." In this repost Defendant Askew also stated in support "this is very well said, it is a race thing" and requested viewers to "repost on tiktok for exposure." (Exhibit T).

71. On July 15th, Defendant Askew further incited her audience against Plaintiff by posting and stating that Plaintiff "has people harassing my TikTok account trying to claim I didn't invent My Invention. **Defending me here** as well and **giving my video more exposure** will help immensely!" (Exhibit U).

**Formatted:** Font color: Auto
**Formatted:** Font: Not Bold, Font color: Auto
**Formatted:** Font color: Auto
**Formatted:** Font: Bold, Font color: Auto
**Formatted:** Font color: Auto
**Formatted:** Font: Not Bold, Font color: Auto
**Formatted:** Font color: Auto
**Formatted:** Font color: Auto
**Formatted:** Font color: Auto
**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"
**Formatted:** Font color: Auto

Exhibit BV

72. On July 15th, Defendant Askew posted again on Threads and TikTok, sharing a response video and commenting "you are not a small creator **you are a theif**." (Exhibit V). In a comment under the Threads post, Defendant Askew also shares a link to her response video posted to Tiktok.

73. In this response video, Defendant Askew states "**Yes, I am making it a race thing. You are a white woman trying to claim my invention as your own**." She also initiates a narrative that implies Plaintiff "was trying to apply for the Magnetic Hair clip trademark" and emphasized "**I wonder who applied for that trademark**." (Exhibit V).

74. The evidence shown for the trademark statement was a text screenshot claimed to be from USPTO to Defendant Askew. It should be noted that with very minimal research it is easy to gather USPTO does not send texts and this was likely a phishing scam or potentially fabricated by the Defendant, especially given the manner in which she cropped the screenshot so as to not show the sender (Exhibit V). This implication did however work in Defendant Askew's favor as third party messages/comments towards Plaintiff now included accusations of Plaintiff stealing Defendant Askew's trademarks and patents. (Exhibit BG).

75. Defendant Askew then states "**This person is saying her design is based off a picture she saw in 2021.**" The actual statement made by Plaintiff in reference to the 2021 picture was "I also found out that there was a product for sale nearly three years prior to the alleged invention that is extremely similar

Exhibit BV

functionally." The claim that this 2021 image was Plaintiff's inspiration was solely created by Defendant Askew's video and also repeated by other third parties after. (Exhibit K, V).

76. Defendant Askew reposted her same video to Threads amplifying its reach while stating "Repost on tiktok for more traction, she has a bunch of racist trying to defend her" and providing a link to her Tiktok video (Exhibit V).

77. Defendant Askew further confuses the public with the "trademark theft" narrative by implying Plaintiff "was **plotting to steal and tried to trademark 'magnetic hair clip'"** through a threads post (Exhibit BP). This insinuation is false as Plaintiff has not applied for any trademark or patent related to any type of magnetic hair accessories. Defendant Askew further had no evidence to support this claim other than the text message purportedly from USPTO.

78. Defendants also concocted a narrative after identifying Plaintiff's brother, Caleb Owen, via LinkedIn as a developer associated with Elegance & Geekery LLC. In this narrative, Defendant Boyce first stated: "Plot twist! Clip Gate just got even weirder. The woman in my profile pic (which I'm about to update)👀…👀Turns out she's likely just an influencer or affiliate. One of my followers did some digging and 👀**the real owner of @elegangeandgeekery is Kursten Owens**, and the 'lead product developer' is Caleb. So **the REAL thief is, unsurprisingly, a white man.** My guess? **He stole the idea and spoonfed it to her without telling her.** Now she's stuck cleaning up the

Exhibit BV

mess while he plays puppet master." In this same post, Defendant Boyce posted photos of both Plaintiff and her brother, as well as their LinkedIn pages with their full names and their location in Oregon. This post is also the first time Defendants publicly identify Plaintiff by her full name and tied that name and face to the defamatory accusations. Defendant Boyce additionally had a photo of one of Plaintiff's employees as her profile picture, a practice Defendant Boyce engages in in order to publicly shame those she is targeting online and to invite negative commentary on the individual's appearance. (Exhibit Z).

79. There is no evidence to support this "white man" narrative other than Caleb Owen's LinkedIn profile describing his role at Elegance & Geekery LLC as the "Lead Technical Developer," which in fact is not the "Lead Product Developer" as Defendant Boyce frequently mischaracterized it as in multiple posts and videos to further her narrative. (Exhibit Z, AF, AT).

80. Defendant Askew encouraged this narrative by posting: "Update guys! Turns out it was actually this random white dude who stole it and she was hired to promote it. He's basically the puppet master." (Exhibit AA).

81. Defendant Boyce summarized and expanded upon this white man puppet master theory in multiple videos on July 17th. (Exhibit AF, AT).

82. Regarding her profile picture, Defendant Boyce later posted: "Do not be alarmed by my profile picture. I did not become a skin head vampire overnight. **@eleganceandgeekery stole a Black inventor's design**, played the victim, and tried to gaslight her like we haven't seen this colonizer playbook a

Exhibit BV

thousand times. So I gave her a taste of her own medicine. **In true colonizer fashion, she took a design… So I took her hair**." (Exhibit AD).

83. Defendant Boyce purchased one of Plaintiff's products for an unknown purpose. Plaintiff refunded and declined to fulfill the order based on ongoing harassment from Defendant Boyce. (Exhibit AB).

84. A third party, identified as Melissa Brewer, made a number of videos discussing this issue. In one, Brewer seemingly alleged similarities between the marketing style of Plaintiff and Defendant's products. These similarities at best solely include: the use of low-fi music in the background, use of the term "space buns," and use of the term "low tension." (Exhibit T).

85. Since the posting of this video, Defendants have reposted and perpetuated the claim that Plaintiff not only stole Defendant Askew's design, but also her marketing style. (Exhibit A, AE, AF, AT).

**July 16-18, 2025**

86. On July 16, 2025, Defendant Boyce reposted her claims on Facebook, calling on her followers there to "report (Plaintiff's) page and leave a comment or review. **Stop letting them steal from us and profit from it**!" (Exhibit AJ).

87. On July 16, 2025, Plaintiff responded to Defendant Askew's initial cease and desist email. In her response, she stated: "There is no such published patent application for any of (Defendant Askew's) products…there is, however, a single trademark application registered under the name Breana Askew for the trademark "Magnetic Hair Clip"…there is therefore no evidence that you have

Exhibit BV

obtained any of the intellectual property that you represent you have…Given you have no currently published patent applications or registered trademarks, you have no right to assert infringement of any purported intellectual property." Plaintiff demanded that Defendant Askew "remove any posts on social media regarding alleged patent infringement or theft of invention." (Exhibit A).

88. Defendant Askew then responded with her patent filing number–a number which does not lead to any publicly available USPTO filings upon search, given it is not linked to a published patent application. (Exhibit A).

89. Plaintiff was clear in her response to this email that Defendant Askew had no enforceable intellectual property rights and there therefore were no counterfeit products on the market. Plaintiff therefore put Defendant Askew on notice that her accusations of illegal conduct against Plaintiff were false. (Exhibit A). Despite this clear notice, Defendant Askew has continued to wilfully and maliciously defame Plaintiff.

90. Defendant Boyce noted in a video made on July 18th, 2025, "I saw the email." (Exhibit AE).

91. On July 17th, Defendant Boyce posted, "Funny @eleganceandgeekery never responded to me or any of my posts, yet they sent a link to @brebreromi and threatened to sue her for it. I do not speak on her behalf, and there's a reason y'all chose to threaten her and not me. Picking on her because you think she's an easier target. Try that with someone who doesn't have 15+ years' experience

Exhibit BV

in marketing and product development. **You can send those Karen-ass emails till that pink face is cherry red. It's not slander or libel if it's TRUE…**Bold of you to think I didn't run that by my attorney before getting involved…GIRL **GO TO HELL!**…you really think that punk ass email is going to shake me and force me to delete something? Bitch, please…It's actually kind of crazy and very delusional to think you can stop me with an AI written email…This is a perfect example of '**they don't know who they're fucking with**.'" (Exhibit AP). This confirms that Defendant Boyce saw the emails with Defendant Askew and was also on notice about the falsity of intellectual property theft claims.

92. In order to remedy this situation without court involvement, Plaintiff requested that Defendant Askew remove her defamatory posts and "leave a comment responding to (any) third party poster(s) **stating that this situation has been privately resolved and encouraging them to discontinue their efforts**." In no way, shape or form, did Plaintiff request Defendant Askew to comment saying the third parties were incorrect or that the posts involved lies. (Exhibit A).

93. Plaintiff then removed the request for third party commenting and reduced the request to "It is sufficient for me that you **remove your own videos and refrain from creating similar content in the future or engaging others to** create that content on your behalf going forward." (exhibit A).

Exhibit BV

94. Defendant Askew responded that no resolution could be reached, that Plaintiff was "**blackmailing**" her, and with "**I am filing a civil suit. See you in court.**" (Exhibit A).

95. Relying on these emails, Defendants began additionally accusing Plaintiff of illegally blackmailing Defendant Askew. For example, in a video on July 18th, 2025, Defendant Boyce stated: "@eleganceandgeekery is now essentially **blackmailing** a Black woman inventor." A…trying to pressure her into saying **my viral post about it was a lie.**" (Exhibit AF).

96. In a video published on the 17th, Defendant Boyce stated; Plaintiff is ~~also part of this post that contains deeply troubling,~~ "threatening ~~language, continues to spread~~ (Defendant Askew), **trying to blackmail her,** saying that if she doesn't go in the comments and flip the narrative in their favor, they're going to take her to court for it." (Exhibit AU).

97. In these videos, Defendant Boyce admits that her defamatory posts went "viral" and, despite admitting to having read the emails between Defendant Askew and Plaintiff, maliciously misrepresents Plaintiff's request for commentary "stating that this situation has been privately resolved and encouraging them to discontinue their efforts," (Exhibit A) as blackmailing Defendant Askew to "flip the narrative in (Plaintiff's) favor" and say the posts were "a lie." (Exhibit AF, AG, AU).

98. On July 16th, Defendant Askew posted a screenshot of her USPTO Patent Center dashboard showing her patent filing number and called on her followers

Exhibit BV

to "share this screenshot in the comments" of Plaintiff's video (Exhibit K #3) noting she could not find a published patent application. This post misled the public into believing Defendant Askew had a patent and/or enforceable intellectual property over her products. (Exhibit AK).

99. Defendant Askew's calls on her supporters to harass Plaintiff by flooding her inbox with the filling number were effective (Exhibit AY).

100.    Defendant Askew then went online on July 16th and asked, "Would you guys support a gofundme for my legal fees? The person **who stole my invention** has just threatened a civil suit against me because I am defending myself!" (Exhibit AH).

101.    On July 17th, Defendant Askew published the GoFundMe. In it, she repeated defamatory statements including: "**This company has a history of stealing products and rebranding them to avoid infringement**"; "**They are counterfeit thieves**"; "This company is not only copying my product but also is **mimicking me as a creator**. They've adopted my marketing campaign, the language I use, and the content I produce." ~~that are demonstrably false and at the very least negligently informed, threatens harassment and unknown harm against Plaintiff, and confirms that absent court intervention Defendant Demone intends Plaintiff, her business, and possibly her family, harm. The transcript of Defendant Demone's statements in this video is attached with the evidence in the complaint.~~ The GoFundMe

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Formatted: Font color: Auto

Formatted: Font color: Auto

Exhibit BV

further described Plaintiff as engaged in "a deliberate act of **stealing my creative identity** and the essence of my business." (Exhibit AO).

102.    Regarding the GoFundMe, Defendant Boyce posted on July 17th, "A Black woman inventor **called out a company for stealing her design**. The white woman behind that brand played victim, accused her of bullying, and now the Black creator is being harassed with racism and threats. To make it worse, **the white woman is trying to blackmail her into changing the story publicly, or face legal action.** The Black creator is now raising funds to protect herself legally. Let's rally behind her. Please **share and donate if you can!**...Silence is complicity." (Exhibit AR).

103.    Defendant Boyce publicly noted that she "advised" Defendant Askew ~~and Demone were engaged in an active and coordinated effort to harass and defame~~to make the GoFundMe. (Exhibit AF).

104.    The GoFundMe has raised at least $13,179 on the basis of these false claims, representing how much Defendant Askew has been unjustly enriched by her unlawful claims. (Exhibit AI).

105.    On July 16th, Defendant Boyce posted "A Black woman had her invention **stolen BLATANTLY**...You don't need the full backstory when the receipts are public. **She stole it.** Then played the victim. Then doubled down...Not everyone deserves the benefit of the doubt, and that includes white women who steal from Black inventors...Speak the fuck up. Loudly. Because neutrality is a choice...Your 'maybe it was a coincidence' response is exactly

Exhibit BV

why people like her feel bold enough to steal and spin the narrative." (Exhibit AL).

106. Aware of Plaintiff's position (from her email exchange with Defendant Askew) that it was impossible for Plaintiff G: "@kiandria and I are strategizing," I: "@kiandria and @brebrcomi to have committed theft or counterfeiting given no enforceable intellectual property covering these items exist, Defendant Boyce commented on July 16th, "Black inventors have had their ideas stolen for years because the legal system makes it nearly impossible for them to successfully protect themselves. They face discrimination in the courts and exorbitant fees that many don't have due to the wealth gap in this country. So... **Her entire argument hinges upon systemic racism.**" Tying Plaintiff's position once again to racism and systematic oppression was a further means of inflaming the public against Plaintiff. (Exhibit AM).

107. On July 17, 2025, Defendant Boyce posted on threads in a manner meant to confuse the public about the defendants' position and spread misinformation about intellectual property. She stated, "Just because a patent is pending does not mean you can steal the design. Copyright and intellectual property protections still apply. If she brought the product to market first and can prove it, she has the right to sue ... and she'll likely win...Even outside of patent law, if she can prove she developed and marketed the product first (and she can, it's all over the internet) the rights legally belong to her. Courts do recognize prior use and trade dress...IP law didn't stop existing just because a

Formatted: Font color: Auto

Exhibit BV

white woman decided to 'Pinterest' her way into theft…Bringing a product to market isn't just about patents. It's about originality, branding, and how the product is presented to the public. That's where trade dress comes in. If someone copies the look, feel, and presentation of your product (especially if it causes confusion) that's grounds for legal action. Period…Trade dress protects the vibe of your product. The shape, color scheme, packaging, and even how it's marketed. If a customer could see it and think it came from you, that's YOUR intellectual property. You don't need a granted patent to fight that kind of theft." (Exhibit AN).

108.    This post seems to be the origination of the Defendants' final shift to trade dress theft as a theory of intellectual property justifying their allegations against Plaintiff. Defendant Askew took up this theory in her GoFundMe, alleging that "Trade Dress Infringement: This company is not only **copying my product** but is also **mimicking me as a creator**. They've adopted my marketing campaign, the language I use, and the content I produce….Their attempt to replicate my brand's look, feel and messaging goes beyond product imitation. It's a **deliberate act of stealing my creative identity** and the essence of my business." (Exhibit AO).

109.    Defendant Askew has no registered trade dress, no finalized product packaging, and no distinctive logo or design on her products.

110.    Defendant Askew has not identified what elements of her products Plaintiff has copied for purposes of trade dress infringement.

Exhibit BV

111.    Defendant Askew, at best, has noted that Plaintiff used terms such as "space buns" and "low tension styles" in her marketing videos, as well as used low-fi music in the background of her marketing videos. These elements cannot legally constitute elements that distinguish the source of the content or products as solely hers and therefore cannot be protected trade dress.

112.    The only non-functional elements of Defendant Askew's products are her star, heart, circle and bow shapes, shapes that are not unique enough to distinguish the source of the products as hers and therefore cannot be protected trade dress.

113.    Defendant Askew cannot claim trade dress infringement for the magnetic aspects of the hair accessory design as this element is functional.

114.    There are also no design similarities between these products—Defendant Askew does not even currently sell (but has published a kickstarter for) clips shaped like hearts, circles, stars, and bows. Plaintiff's designs include donuts, gears, flowers, bat wings, etc—none are hearts, circles, stars, or bows.

115.    Defendants' shift to trade dress as a theory of IP enforcement is an after the fact rationalization for their defamatory lies that does not render their claims true.

116.    On July 17th, Defendant Boyce further posted: "What most people probably don't realize is that @eleganceandgeekery has a comment filter on. **That means every insult toward the Black inventor, every microaggression, and every piece of blatant racism was manually**

Exhibit BV

**approved before it showed up publicly.** There are people proudly commenting that they're placing orders because the Black inventor 'made it a race thing.' **They are intentionally curating a space filled with bigotry and harm toward Black women so they can profit off it.**" (Exhibit AQ). These inflammatory comments made without evidence further incited harassment against Plaintiff.

117.    In reality, TikTok's standard comment filter was enabled and filtering was automated by the platform (Exhibit BD).

118.    In a comment underneath this same post, Defendant Boyce further incites hatred towards Plaintiff by responding in agreement to a third party comment comparing Plaintiff's situation to the "**Nazi woman gofundme**" (Exhibit AQ).

119.    On the 17th, Defendant Boyce posted a video wherein she stated: "If you keep antagonizing that Black woman, you're gonna get real familiar with who I am. **If you value that business and that website, I would think twice** before you continue to play the game you're playing…**the real bully has entered the chat**. I promise you, **you haven't seen anything yet…I'm the one who made the viral post about it.**" Defendant Boyce therefore admits her posts went viral and that she intended harm to Plaintiff's website and business. (Exhibit AF).

120.    In that same video, Defendant Boyce stated, "**Bre didn't send a hate mob after you. I did…this was orchestrated because at this point, you**

Exhibit BV

**fucking know that this was not an original idea. You know that it was stolen from a black creator, and you are still doing backflips to make excuses for that.** So I'm going to say this, and I promise you, **I'm not going to say this again. Keep antagonizing this black woman. Keep on going back and forth with her. Keep gaslighting her and painting her out to be the aggressor. When you are the one who stole her design. Keep doing it. Just go ahead and keep engaging it. And I promise you, going to court with Bre is going to be the least of your worries. Google me, Google Kiandria Demone. And then keep on antagonizing this black woman. And you're going to find out exactly who the fuck I am."** **(Exhibit AF).**

121.     In comments underneath this video, Defendant Boyce made statements including: "@Shopify where are y'all on this one since **your policy prevents selling counterfeit products or intellectual property violation**?" (Exhibit AF).

122.     In another comment Defendant Boyce attempts to increase the social reach of this content by requesting another creator to make a video stating "@shadesofdianne wya?! We need you on this! you do the best explainer videos." (Exhibit AF).

123.     Responding to the comment "She has a patent sis" Defendant Boyce replies "**She applied for it and it hasn't been completed yet**. That doesn't

Exhibit BV

give someone the right or legal grounds to steal her product. Patent or no patent…. It's wrong." (Exhibit AF).

124.     On July 17th, Defendant Boyce posted an additional video with the caption: "This is deeper than hair clips. It's the systematic erasure of Black people from their own creativity and their own narrative. It's demonizing Black women for standing up for themselves after someone has wronged them. All of it needs to stop. This white woman's entire defense hinges on the fact that **the original inventor didn't yet have the means to protect her design.** That's not a loophole. **That's theft of intellectual property** due to systemic racism. I'm dropping the link to her GoFundMe in my story and saving it in my highlights so you can find it anytime. I'll also add the **steps to report the site that's selling stolen designs**." (Exhibit AU).

125.     Defendant Boyce therefore knew at the time of making her statements that Defendant Askew lacked any legally protected designs.

126.     The video previously referenced included the following statements: "So there's a couple things you can do in this situation…She has a GoFundMe to cover her legal fees because they're threatening her with legal action. Not if she stopped selling, **not if she doesn't take her post down**…they are threatening her, **trying to blackmail her**, saying that if she doesn't go in the comments and flip the narrative in their favor, they're going to take her to court for it…But what we also want to do is **report that shop**…you want to go to Shopify and you want to select what you want to go to their legal

Exhibit BV

department to report somebody. So report a merchant and then **report this store for selling counterfeit products…I encouraged her to make a GoFundMe**." (Exhibit AU).

127.     On Tiktok Defendant Askew reposted content from a third party which stated "A white lady stole this design and is now threatening to give Breana legal troubles over it. Breana tried to send her a cease and desist. This lady is claiming that it's public domain. I guess the original patent was too broad. So this lady, this white lady is getting away with essentially stealing Breana's design. And this is ridiculous." (Exhibit BH).

15. 128.     In a Threads post, Defendant Boyce amplified "Keep reporting that thief. Protect Black women" while reposting a different video by Melissa Brewer, in which Brewer stated "Did you know you can report a merchant on Shopify? @Kiandria and @brebreromi have the info on their pages" for how to falsely report Plaintiff's products and shop, M, 31: "we aren't just tussling in the comments. **We have a plan.**"." (Exhibit BQ).

**Formatted:** Left, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)

**Formatted:** Font color: Auto

129.     Along with megaphoning Brewer's content, Defendant Boyce reposted another piece of third party content in which Defendant Boyce stated "White people calling out other white people is my favorite genre… Shout out to this creator for breaking it down in a language that maybe she can understand. 😘Chefs kiss… No notes!" She also commented further underneath "Language that she can understand = talking to her like she's fucking slow because obviously she is." (Exhibit BG).

Exhibit BV

130.     The third party content reposted by Defendant Boyce stated "You stole the product from another creator…It should be banned (with respect to Plaintiff's accounts)…You are a thief…She can't sue for infringement until the patent is granted." This video also continued statements made by Defendant Askew that alluded to Plaintiff trying to obtain a patent or trademark before Askew (Exhibit BG).

131.     On the 18th, Defendant Boyce posted an additional video wherein she stated: "**I ain't scared of shit. Especially not some fakeish ChatGPT email.** So one of the things that I use my platform to do is to call out people who are profiting from racism and profiting from harm, which is how I got involved here…**I have extensive experience with patent law and product law…Therefore, I'm well versed in the law surrounding all of this, including content creation as well…**the way she has mimicked this **woman's trade dress is illegal**…**the way they emulated her is illegal, and there are creator laws that protect people from that.** I don't care who had a patent first if she brought it to the market and popularized it. That is her intellectual property…**And mind you, I saw the email…I'm not going to keep being quiet about shit like that. And they can take me to court…**And also, one thing I'm tired of people floating around is the defamation of character, defamation of character. I**t is not defamation of character. It is not slander or libel, if it's true**. She has no legal grounds to sue for defamation of character. If she actually did this

Exhibit BV

shit and we all saw the shit happen, **she doesn't have grounds for a lawsuit.** She's just blowing smoke trying to intimidate people like they always do. *Golly gee, how dare you slander my character by telling people all the horrible things I did.* If you didn't want people to think poorly of you, you should have exercised some better character then." (Exhibit AE).

132.    On the 18th, Defendant Boyce posted an additional video wherein she stated, "**Come argue with me, bitch**… Oh lawsuit this lawsuit that, **I don't give a fuck!**... My whole job is to take down corporations. This shit would be light work…. So I say, **let their asses have it**. You feel me? **No mercy, no grace**… Let their asses have it. **Drag the shit out of them** when they fuck with even one of us!" (Exhibit AG).

133.    In Defendant Boyce's own words, Boyce is "**a MENACE on this internet**" (Exhibit AP).

**Harm**

134.    Collectively, content created by Defendant Askew repeating the defamatory statements have garnered over 1.8 million views, 118,000 likes, 2,100 comments, 12,700 reposts, and 980 sends (Exhibit BT).

135.    Collectively, content created by Defendant Boyce repeating the defamatory statements have garnered over 2.3 million views, 198,000 likes, 3,600 comments, 6,900 reposts, and 4000 sends (Exhibit BT).

136.    Additionally, third party content creators have created content repeating the defamatory statement. This content includes at least 140 videos

Exhibit BV

or posts garnering over 9.9 million views, 1.4 million likes, 22,000 comments, 41,400 reposts, and 129,700 sends (Exhibit BT).

137.    Altogether, the defamatory statements Defendants conspired to spread were therefore heard by an audience of well over 14 million individuals.

138.    The volume of content created by Defendants in a matter of mere days disparaging and defaming Plaintiff is staggering. Such incessant and obsessive explicitly unwanted content creation constitutes extreme and outrageous conduct.

139.    In contrast Plaintiff only posted 3 videos regarding this matter (Exhibit K), wherein she requested for the harassment to stop, and clarified she did not infringe any intellectual property of defendant Askew.

140.    The content of Plaintiff's videos are not defamatory or disparaging in any way and served as Plaintiff's attempt to mitigate harm caused by Defendants (Exhibit K).

141.    In Plaintiff's first video, defendant Askew's username and picture were blurred to hide Askew's identity, but Defendant Askew revealed herself by appearing in the comments through multiple accounts replying to many third parties. (exhibit K Response #1). When Plaintiff displayed searching for Defendant Askew's patent, Defendant Askew's last name was blurred to help conceal her private information. (exhibit K Response #3).

142.    In contrast, the Defendants actively tagged and directed people towards Plaintiff, and even went as far as displaying Plaintiff's full name, image, and

Exhibit BV

State/City location in Defendant Boyce's case. (Exhibit F, H, I, J, L, M, O, P, Q, S, V, Z, AD, AE, AF, AJ, AK, AL, AM, AN, AO, AP, AQ, AT, AO, BG, BQ).

143.     Plaintiff estimates that as a result of Defendants' harassment campaign and its wide reach, she has received tens of thousands of hateful and or harassing comments disparaging her personally. For example, some of these statements are as severe as "I hope you get gutted and drained of all your fluids until you're a dehydrated piece of flesh" and "I hope you choke and die for being the racist piece of white trash you are" and "Kursten Owen is a gaping crusty pussied cum dumpster! Just like her whole family of trash! You racist pig that just steals cuz she's too stupid to come up with anything creative herself cuz she like her dad is a failure at life! The whole world wishes you weren't in it. Take a hint! Can't wait for you and your family to get the karma they deserve and I hope you never feel safe again. You pathetic fat ugly piece of trash! We all wish you would jump off a cliff!!!" (Exhibit BB), or as mundane as a sequence of tomato emojis (Exhibit BC).

144.     Over 7,800 comments were filtered and deemed to be spam, offensive, and/or profane under Tiktok's own filter system (Exhibit BD).

145.     Collectively, Defendants Askew and Boyce directed followers to nearly all platforms Plaintiff and her business are active on and instructed them on how to make false reports and false negative reviews regarding Plaintiff and her business, as well as directing them to make commentary in support of Defendant Askew on social media.

146.    As a direct result of Defendants' actions, Plaintiff has suffered financial loss in the form of lost profits, lost sales, lost future sales, and loss of customer backing, potential customers, and customer goodwill. (Exhibit AZ, BA, BB, BC, BS).

147.    As a direct result of Defendants' actions, Plaintiff went from having two five-star reviews for her business on Facebook to having 30 reviews, with 28 new 1-star reviews telling potential customers to beware of Plaintiff and her products and insinuating they were stolen. This represents a 1400% increase in reviews as a result of Defendants' defamation. (Exhibit BR).

148.    Defendants Askew and Boyce collaborated with the shared goal of having Plaintiff's storefronts taken down, as evidenced by the timing and explicit collaboration in their posts.

149.    Between July 14-18, 2025, Defendant Askew and Defendant Boyce initiated and actively engaged in an online smear campaign, attempting to leverage public hate and harassment as a means of forcing Plaintiff to flee the market. This campaign is ongoing and will likely continue without court interference.

150.    As a direct result of Defendants' conduct, Plaintiff has experienced dramatic alterations in her emotional well-being, including an increase in symptoms such as panic attacks, anxiety, and reclusion. Her family members and friends have all noticed this change in her behavior, and she even had to

> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)
>
> **Formatted:** Font color: Auto

Exhibit BV

seek out therapy, wherein she was diagnosed with Adjustment Disorder. (Exhibit BI, BJ, BK, BL, BM, BN, BO).

16.151.   Their defamation has caused the public expressedto express confusion, believing the Defendants' defamatory statements, and  (propelled by Defendants' instructions to do so, engaged to) engage in an a hate campaign that is currently unending and involves threats, repeating of the defamatory statement, and mass reporting of Plaintiff and her business as engaging in illegal conduct via selling purported "counterfeit" goods. PlaintiffsPlaintiffs' accounts were flooded by tens of thousands of individuals calling her a "racist" and "thief," because they were led to believe she was those things by the Defendants. This was intended by Defendants to be acts of public shaming to force Plaintiff into submission and destroy her business.

a.  Public confusion and hate directed to Plaintiff and business, accusing Plaintiff of defamation for stating she was unable to find any public patent filing and didn't think she could infringe because of that, with encouragement to continue to falsely report Plaintiff's business to platforms like Shopify: C, D, E, S, T, V, W, 2 (also showing how Defendant Askew's actions gave her online publicity as reflected via google search amplification), 4, 5, 6, 7, 45, 46, 50, 51, 52, 53, 54, 55.

b.  Public confirmation that they had made false counterfeit claims based on defamation by Defendants and encouraging others to do so: J

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.5"

Formatted: Font color: Auto

Exhibit BV

17. Defendant Askew is now soliciting donations to support a legal campaign against Plaintiff. In her public funding campaign, she continues to recklessly defame Plaintiff without evidence and with no regard for the truth.

    a.  "This company has a history of stealing products and rebranding them to avoid infringement."

    b.  "They are counterfeit thieves."

    c.  "The owner of the company has taken to social media to play the victim to their followers." In reality, Plaintiff has posted a total of (3) videos in response to the onslaught of hatred that was undeniably first initiated by Defendant Askew. This is in comparison to many, many messages on social media that the Defendants have posted. The attached evidence documentation of screenshots alone is over 80 pages long.

    d.  "On July 15, I received a notification" and subsequently sent a cease and desist to Plaintiff. The email is time stamped as received by Plaintiff the evening of July 14.

    e.  "This company is not only copying my product but also is mimicking me as a creator. They've adopted my marketing campaign, the language I use, and the content I produce." There are no real similarities between the design of these products (Plaintiff's look like donuts, while Defendant Askew's are stars), or advertising/language, other than generic references to "low tension" hair styles and "space buns."

**Formatted:** Font color: Auto

Exhibit BV

f. ~~Describing Plaintiff as engaged in "a deliberate act of stealing my creative identity and the essence of my business."~~

152. Defendant Askew benefited from this unlawful conduct and caused Plaintiff to lose customers and customer goodwill as evidenced by comments directing the public to "support @Breromi" and direct their sales to the "original" creator (Exhibit AZ).

153. Defendants were successful in coordinating mass fraudulent reports against plaintiffs ecommerce platforms (Exhibit BA).

~~18.~~As a result of this ongoing conduct, Plaintiff ~~has:~~

~~a.~~154. ~~Suffered~~suffered an overnight, confrontation with a sudden surge of coordinated messages, threats, and commercial penalties from online platforms, as well as an overwhelming volume of hate speech, customer loss, and unfounded negative reviews.

~~b.~~155. ~~Suffered~~Plaintiff has suffered, and will continue to suffer, irreparable injury to her personal reputation.

~~c.~~156. ~~Suffered~~Plaintiff has suffered, and will continue to suffer, irreparable injury to her business reputation.

~~d.~~157. ~~Suffered~~Plaintiff has suffered severe emotional anguish, and suffered threats (including death) to herself and her family, requiring ~~acute~~ therapy. (Exhibit BB, BI).

~~e.~~158. ~~Had~~Due to the harassment, Plaintiff has had to decrease activity on her business platforms (i.e., through actions like restricting comments and, in

Exhibit BV

~~some~~many, instances, entirely disabling/privating her business accounts and ecommerce Platforms). (Exhibit BU).

> f.  ~~Suffered financial loss in the form of lost profits, lost sales, lost future sales, and loss of customer support/backing.~~

159.    ~~Suffered~~This led to people harassing Plaintiff through the limited forums they could, including her email notification forum on Shopify (Leaving emails like "youaretrash@whiteprivilege.com" and "eatshitkursten@youthievingscum.com") or going to other third party selling platforms like Etsy, where harassing messages were left. (Exhibit BU).

160.    Because of the expansive reach of the Defendants' defamatory campaign, Plaintiff has lost many creators she had collaborated with through social media, relationships that took Plaintiff years to build. (Exhibit BS).

~~g.~~161.    Plaintiff has suffered overwhelming numbers of false reports against her social media platforms and business accounts/shops as a result of direct filings by Defendants and or the filings they incited others to make. (Exhibit BA).

Exhibit BV

**Claims for Relief**

The following claims are brought against both Defendant Askew and Defendant

~~Demone~~Boyce, and any appropriate Doe Defendants discovered through litigation,

unless the claim is specifically noted as only brought against Defendant Askew. All

allegations above (1-18), apply equally to all of the following claims.

**Claim 1: Defamation (Libel and Slander)**

~~19.~~162.   Defendants Askew and ~~Demone~~Boyce published and distributed

numerous false statements to third parties, both in written (libel) and

spoken/video (slander) forms, accusing Plaintiff of: intellectual property theft,

~~racism~~design theft, general theft/stealing, blackmail, and the illegal sale of

counterfeit products.

163.   These statements were made with full knowledge of Defendant Askew's

lack of any enforceable intellectual property rights, making any claims of theft

a legal impossibility.

~~20.~~164.   The claims were therefore made with actual malice (knowing falsity) or

at minimum, reckless disregard for the truth, intending to harm Plaintiff's

reputation and business.

~~21.~~165.   Plaintiff seeks punitive damages due to Defendants' malicious and

despicable conduct.

~~22.~~166.   As a direct and proximate result, Plaintiff suffered reputational harm,

emotional distress, and loss of ~~business~~personal economic opportunities in

excess of $~~30~~275,000.00.

Exhibit BV

**Claim 2: Trade Defamation (Injurious Falsehood/Business Disparagement)**

~~23.~~167. Defendants Askew and ~~Demone~~Boyce knowingly made and disseminated false, disparaging statements specifically about the quality, authenticity, and legality of ~~Plaintiff's~~Elegance & Geekery LLC's goods and services, including that the products were counterfeits.

~~24. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.~~

168.    These counterfeit claims were made with full awareness by both Defendants that no enforceable intellectual property covering Defendant Askew's products exist and it was therefore impossible for counterfeits to exist.

169.    The claims were therefore made with actual malice (knowing falsity) or, at minimum, reckless disregard for the truth, intending to harm Elegance & Geekery LLC's business reputation.

170.    Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

~~25.~~171.  Such statements wrongfully imputed a lack of integrity to ~~Plaintiff's~~Elegance & Geekery LLC's business and resulted in actual and consequential damage, including economic and reputational losses in excess of $~~20~~25,000.00.

**Claim 3: Tortious Interference with Business Relations and Prospective Economic Advantage**

Exhibit BV

26.172.   Defendants Askew and ~~Demone~~Boyce intentionally and improperly interfered with ~~Plaintiff's~~Elegance & Geekery LLC's existing and prospective contractual~~,~~ and business relationships, including with platforms such as Shopify, Etsy, Facebook and TikTok, as well as with existing and potential customers.

> **Formatted:** Font color: Auto
>
> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

173.   This tortious interference was accomplished via coordination of mass public filing of false complaints and false negative reviews against Elegance & Geekery LLC based on the defamatory statements Defendants originated.

174.   Defendants coordinated these mass complaints to be filed with the legal departments of companies like Shopify, asserting illegal conduct by Elegance & Geekery LLC: selling counterfeit goods and/or violating the platform's intellectual property regulations.

175.   These complaints were encouraged despite Defendants' knowledge that the complaints were false given they knew no enforceable intellectual property existed covering Defendant Askew's products.

176.   The tortious interference was therefore conducted with actual malice (knowing falsity), or, at minimum, reckless disregard.

27.177.   Plaintiff therefore seeks punitive damages due to Defendants' malicious and despicable conduct.

> **Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

28.178.   This interference was accomplished through public campaigns encouraging false reports, coordinated harassment, and disparagement,

Exhibit BV

resulting in disrupted business operations and monetary losses in excess of $~~10~~25,000.00.

Exhibit BV

**Claim 4: Civil Conspiracy (to Defame and to Interfere with Business)**

~~29.~~179.   Defendants Askew and ~~Demone~~Boyce knowingly acted in concert and agreement, with the shared purpose of defaming Plaintiff and interfering with her business.

~~30. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.~~

~~31.~~180.   Through coordinated planning and repeated joint actions, Defendants furthered their unlawful objectives, amplifying the harm to Plaintiff, which is in excess of $~~10~~350,000.00.

**Claim 5: Intentional Infliction of Emotional Distress**

~~32.~~181.   Defendants Askew and ~~Demone~~Boyce engaged in extreme and outrageous conduct, including mass publication of defamatory content, ~~doxing~~inciting public hatred against Plaintiff, solicitation of online harassment, and incitement of threats against Plaintiff and her family.

~~33.1.    Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.~~

182.   Defendants' repeated harassment of Plaintiff online was achieved by making repeated, unending content regarding Plaintiff and her business even after Plaintiff publicly asked for Defendants to stop, noting the conduct was unwelcome.

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Formatted: Space After: 0 pt, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)

Exhibit BV

~~34.~~183.    Such conduct was intended to cause, and did cause, Plaintiff severe emotional distress, necessitating acute therapy, resulting in new mental health diagnoses including adjustment disorder, reclusion from online and public life, and ~~affecting~~affects to her personal well-being, resulting in excess of $~~20~~25,000.00 of harm.

**Claim 6: False Advertising (Lanham Act, 15 U.S.C. § 1125(a)) and Unfair Competition**

184.        ~~Defendants~~Claim 6 is only brought as to Defendant Askew ~~and Demone~~.

~~35.~~185.    Defendant Askew made false and misleading statements about ~~Plaintiff's~~Elegance and Geekery LLC's products and business, misrepresenting ~~them~~its products as counterfeit, infringing, and illegal, in commercial advertising and public communications intended to mislead consumers.

186.        Defendant Askew falsely presented her own products as patented despite only having an unpublished patent application purportedly covering her products filed as of June 2025.

187.        Defendant Askew monetized her malicious defamatory statements regarding Elegance & Geekery LLC, including in her GoFundMe, representing unjust enrichment based on Unfair Competition and False Advertising.

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

**Formatted:** Font: Bold

**Formatted:** Font color: Auto

**Formatted:** Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Exhibit BV

36.188.  Such conduct constitutes false advertising and unfair competition, causing confusion in the marketplace and substantial commercial harm to Plaintiff.

37.189.  As a result of this conduct, Plaintiff is entitled to actual damages in excess of $25,000.00, disgorgement of Defendant Askew's profits, and treble damages due to the willfulness of Defendants' conduct.

### Claim 7: Unfair and Deceptive Trade Practices (State Law) against Defendant Askew

38. Defendant Askew's actions constitute unfair, deceptive, and unlawful practices under Oregon's Unlawful Trade Practices Act (ORS § 646.608), based on her dissemination of false information and unfair competition.

39. As a result of this conduct, Plaintiff is entitled to actual damages in excess of $2,000.00, disgorgement of Defendant Askew's profits, and any other statutorily permitted remedies and damages.

### Claim 8: Negligence

38. In the alternative, if Defendants Askew and Demone did not act intentionally, they acted with negligence by failing to ascertain the truth or falsity of their statements and campaigns, foreseeably causing injury to Plaintiff's business and reputation.

39. Plaintiff seeks punitive damages due to Defendants' malicious and despicable conduct.

Exhibit BV

40.As a direct and proximate result, Plaintiff suffered reputational harm, emotional distress, and loss of business opportunities in excess of $30,000.00.

Exhibit BV

**Claim 9: Request for Immediate Injunctive Relief**

~~34.~~190.    Plaintiff will suffer immediate and irreparable injury if Defendants Askew and ~~Demone~~Boyce are not immediately enjoined from publishing or disseminating further false and defamatory statements and from inciting third parties to take punitive action against Plaintiff and her business. Plaintiff's reputation, business relations, and safety are in immediate jeopardy, and monetary damages alone cannot compensate for the ongoing harm as described above. Plaintiff therefore respectfully requests the Court issue a temporary restraining order, followed by a preliminary injunction, prohibiting Defendants from making further defamatory statements, engaging in harassing or misleading conduct or encouraging others to do so, as well as prohibiting them from keeping their current defamatory posts up and circulating, or allowing current defamatory posts to continue to be engaged with or viewed by the public.

**Claim 10: Declaratory Relief**

~~35.~~191.    Plaintiff seeks a declaration that she has not infringed upon any valid intellectual property rights of Defendant Askew ~~and that Defendant Askew and Defendant Demone's claims and conduct are unsupported and wrongful~~.

192.        Plaintiff seeks a declaration that Defendant Askew and Defendant Boyce unlawfully defamed her.

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)

Formatted: Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5", Border: Top: (No border), Bottom: (No border), Left: (No border), Right: (No border), Between : (No border)

Exhibit BV

193.    Plaintiff seeks a declaration that Defendant Askew and Defendant

Boyce unlawfully and intentionally caused her emotional distress.

Exhibit BV

**Jury Demand**

~~36.~~194.    Plaintiff demands a trial by jury on all claims.

**Prayer for Relief**

**WHEREFORE, Plaintiff respectfully requests:**

~~37.~~195.    Judgment in her favor as to all claims for relief;

~~38.~~196.    Compensatory, and consequential, and punitive damages not less than $~~124~~350,000;

197.    Punitive damages as provided by law for Defendants' malicious and despicable acts;

~~39.~~198.    Statutory damages as provided by law, including any available treble damages;

~~40.~~199.    Costs and reasonable attorneys' fees;

~~41.~~200.    Immediate Injunctive relief;

~~42.~~201.    Declaratory relief; and

~~43.~~202.    All such further relief as the Court deems just and proper.

Exhibit BV

**<u>Affidavit in Support of Immediate Injunctive Relief/Restraining Order</u>**

I, Kursten Owen, declare under penalty of perjury that all factual allegations above and in attached exhibits are true and correct to the best of my knowledge. The overnight shift from legal threat to mass, ongoing harassment has caused me and continues to cause me immediate and irreparable business, reputational, and emotional damage. Allowing these individuals to continue to assert these illogical, harassing, damaging, and unfounded claims will result in irreparable continued harm to my reputation and business and place my mental and physical health, as well as that of my family, whose information is actively being disclosed, in immediate danger.

Signed,

/s Kursten Owen

~~July 17~~Kursten Owen

October 6, 2025