IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KURSTEN OWEN, individually
and dba Elegance & Geekery LLC,

              Plaintiff,

    v.

BREANA ASKEW, individually
and dba Breromi; KIANDRIA
DEMONE BOYCE; DOES 1-100,

              Defendants.

Civ. No. 6:25-cv-01272-AA

**OPINION & ORDER**

AIKEN, District Judge.

    This case comes before the Court on Motions to Dismiss filed by Defendants Breana Askew, ECF No. 78, and Kiandria Demone Boyce, ECF No.79. Defendant Boyce has also filed a motion in the alternative to transfer the case to the Northern District of Georgia. Defendant Boyce has also filed a Special Motion to Strike under Oregon's Anti-SLAPP statute. ECF No. 81. The Court concludes that these motions are suitable for resolution without oral argument. For the reasons set forth below, the motions are DENIED.

## BACKGROUND

    The following is drawn from Plaintiff's First Amended Complaint ("FAC"), ECF No. 97.

Plaintiff Kursten Owen is an Oregon resident and is the owner of Elegance & Geekery, LLC, an Oregon business. FAC ¶ 3. Elegance & Geekery sells accessories and had gross receipts of $190,310 in 2024. *Id.* ¶ 9. Relevant to the present case, Plaintiff makes and sells hair accessories through Elegance & Geekery and has done so for eight years. *Id.* ¶ 26.

Defendant Breana Askew, dba Breromi, FAC ¶ 4, is a resident of Georgia. Like Plaintiff, Ms. Askew makes and sells hair accessories. Ms. Askew also has a large social media following.

Defendant Kiandria Demone Boyce is a civil rights activist who resides in Georgia. FAC ¶ 6. Ms. Boyce also has a large social media following, which Plaintiff alleges Ms. Boyce "weaponizes" in order to engage in "cyberbullying." *Id.* ¶ 46. Ms. Boyce is alleged to have "previously engaged in online campaigns wherein she leverages her online following in order to orchestrate the filing of mass public complaints to third party sites such as GiveSendGo/Square in order to compel the companies to act in a certain way." *Id.* ¶ 57. Unlike Ms. Askew or Plaintiff, Ms. Boyce is not alleged to be involved in the hair accessory business.

On July 14, 2025, Ms. Askew saw a promotional video for Plaintiff's hair clips and came to believe that Plaintiff's hair clip designs were copied from those produced by Ms. Askew. FAC ¶¶ 22-25. Plaintiff alleges that the design and construction of her hair clips are materially different from those made and sold by Ms. Askew. *Id.* ¶¶ 29-33. Plaintiff asserts that she developed this design independently and from scratch. *Id.* ¶ 30.

Beginning on the evening of July 14, 2025, Ms. Askew began posting comments on Plaintiff's business's social media pages accusing Plaintiff of infringing on Ms. Askew's intellectual property. FAC ¶ 34. That same evening, Ms. Askew sent Plaintiff a "Cease & Desist" email accusing Plaintiff of infringing on Ms. Askew's intellectual property rights and threatening legal action. *Id.* ¶¶ 34-37. In addition to maintaining that her designs were independently developed and materially different from those sold by Ms. Askew, Plaintiff alleges that Ms. Askew lacks any enforceable intellectual property right over her products. *Id.* ¶ 13.

Less than an hour after sending the Cease & Desist email, Ms. Askew posted on social media accusing Plaintiff of stealing her designs and calling on her followers to report Plaintiff's business for selling "rip offs." FAC ¶¶ 40-43.

On the morning of July 15, 2025, Ms. Boyce contacted Ms. Askew via social media and requested Plaintiff's business account information, which Ms. Askew gave her. FAC ¶ 44. On the same day, Ms. Boyce commented that Plaintiff "has yet to meet a bully honestly. I've been busy today." *Id.* ¶ 47.

Also on July 15, 2025, Plaintiff publicly responded to Ms. Askew's accusations and denied that she had infringed on Ms. Askew's intellectual property rights. FAC ¶ 48. Shortly afterwards, Ms. Boyce posted a response on social media accusing Plaintiff of stealing Ms. Askew's designs, which garnered significant attention. *Id.* ¶¶ 49-50. Ms. Boyce made additional social media posts accusing Plaintiff of theft and instructing her followers to report Plaintiff's business and to post negative reviews for the business on Facebook. *Id.* ¶ 52.

Ms. Boyce and Ms. Askew separately posted to social media that they were working together in their campaign against Plaintiff and Plaintiff's business. FAC ¶¶ 54 (Ms. Boyce posting "We're not just tussling in the comments. We have a plan."); 55 (Ms. Askew posting that she and Ms. Boyce "are strategizing" and again accusing Plaintiff of theft); 56 ("Defendant Boyce publicly proclaimed these actions were the result of 'a plan,' insinuating this was an organized and strategic conspiracy to defame Plaintiff and interfere with her lawful business.").

Both Ms. Askew and Ms. Boyce posted links and detailed instructions for their social media followers to contact Shopify, an online commerce platform utilized by Plaintiff's business, and to report that Plaintiff's business was illegally selling counterfeit products. FAC ¶¶ 54-55.

Also on July 15, 2025, Ms. Boyce posted a link to Plaintiff's personal social media account, "stating 'THIS is the person behind it' and 'don't hide behind your business page . . . Come outside' and including an image with the caption 'Come outside, we not gonna jump you.'" FAC ¶ 59. Ms. Boyce made additional posts accusing Plaintiff of stealing Ms. Askew's designs. *Id.* ¶¶ 60-61, 82.

Ms. Askew also made additional posts accusing Plaintiff of being a thief and stealing her designs. FAC ¶¶ 65-66, 72-73, 77.

On July 15, 2025, Plaintiff posted a video asking Defendants to "stop 'sending their hate mob after (her).'" FAC ¶ 68.

Also on July 15, 2025, Ms. Boyce posted photos of Plaintiff and her LinkedIn page showing that Plaintiff is located in Oregon. FAC ¶ 78.

On July 16, 2025, Ms. Boyce made additional social media posts on Facebook accusing Plaintiff of theft, FAC ¶ 105, and encouraging her followers to report Plaintiff's webpage and to leave negative reviews of Plaintiff's business. *Id.* ¶ 86.

Also on July 16, 2025, Plaintiff responded to Ms. Askew's Cease & Desist, denying that she had stolen Ms. Askew's intellectual property, stating that Ms. Askew possessed no enforceable intellectual property rights, and demanding that Ms. Askew delete her social media posts accusing Plaintiff of theft and patent infringement. FAC ¶ 87. Plaintiff asked Ms. Askew to "remove her defamatory posts and 'leave a comment responding to (any) third party poster(s) stating that this situation has been privately resolved and encouraging them to discontinue their efforts.'" *Id.* ¶ 92. Plaintiff later amended this request to ask that Ms. Askew remove her own social media videos and refrain from creating similar content in the future or engaging others to do so on her behalf. *Id.* ¶ 93. Ms. Askew responded that no resolution could be reached and accused Plaintiff of "blackmailing" her, before telling Plaintiff that she was filing a civil suit and would "see [her] in court." *Id.* ¶ 94.

These communications were evidently also shared with Ms. Boyce, who responded publicly to them on July 17, 2025, claiming that she had had her attorney review her social media comments and telling Plaintiff to "GO TO HELL," adding "This is a perfect example of 'they don't know who they're fucking with.'" FAC ¶ 91. Ms. Boyce subsequently published videos to social media accusing Plaintiff of attempting to blackmail Ms. Askew. *Id.* ¶¶ 95-96.

In social media posts on July 16 and 17, 2025, Ms. Askew again accused Plaintiff of theft and solicited GoFundMe donations from her social media followers to pay for Ms. Askew's legal fees. FAC ¶¶ 100-01. On July 17, 2025, Ms. Boyce again posted to social media accusing Plaintiff of theft and blackmail and encouraging her followers to donate to Ms. Askew's GoFundMe. *Id.* ¶ 102. Plaintiff alleges that this campaign succeeded in raising $13,179. *Id.* ¶ 104.

On July 17, 2025, Ms. Boyce posted a video directed at Plaintiff in which she said "If you value that business and that website, I would think twice before you continue to play the game you're playing . . . the real bully has entered the chat. I promise you, you haven't seen anything yet . . . I'm the one who made the viral post about it." FAC ¶ 119. Ms. Boyce continued "Bre [Ms. Askew] didn't send a hate mob after you. I did . . . this was orchestrated because at this point, you fucking know that this was not an original idea. You know that it was stolen from a black creator, and you are still doing backflips to make excuses for that. So I'm going to say this and I promise you, I'm not going to say this again. Keep antagonizing this black woman. Keep going back and forth with her. Keep gaslighting her and painting her out to be the aggressor. When you are the one who stole her design. Keep doing it. Just go ahead and keep engaging it. And I promise you, going to court with Bre [Ms. Askew] is going to be the least of your worries. Google me, Google Kiandria Demone. And then keep on antagonizing this black woman. And you're going to find out exactly who the fuck I am." *Id.* ¶ 120. Ms. Boyce followed this video with a comment calling

on Shopify to stop selling Plaintiff's products, stating that the products are "counterfeit" and an "intellectual property violation." *Id.* ¶ 121.

In a post on July 17, 2025, Ms. Boyce posted instructions for her followers to report Plaintiff's website for "selling stolen designs." *Id.* ¶ 124.

Plaintiff alleges that, collectively, "content created by Defendant Askew repeating the defamatory statements have garnered over 1.8 million views, 118,000 likes, 2,100 comments, 12,700 reposts, and 980 sends." FAC ¶ 134. Content "created by Defendant Boyce repeating the defamatory statements have garnered over 2.3 million views, 198,000 likes, 3,600 comments, 6,900 reposts, and 4000 sends." *Id.* ¶ 135. Plaintiff alleges that "[a]ltogether, the defamatory statements Defendants conspired to spread were therefore heard by an audience of well over 14 million individuals." *Id.* ¶ 137. Defendants are alleged to have "actively tagged and directed people towards Plaintiff, and even went so far as displaying Plaintiff's full name, image, and State/City location in Defendant Boyce's case." *Id.* ¶ 142.

As a result of this campaign, Plaintiff alleges that she has suffered considerable personal harassment. FAC ¶¶ 143-44, 154. The reporting of Plaintiff's business to its online platforms is alleged to have resulted in lost profits, lost sales, lost future sales, and loss of customer goodwill. *Id.* ¶ 146. Plaintiff has had to decrease activity on her online business platform and has lost established business relationships with other online creators. *Id.* ¶¶ 158, 160. Plaintiff alleges that this has damaged her personal and business reputation, as well as causing her emotional harm. *Id.* ¶¶ 155-157.

**DISCUSSION**

Plaintiff brings claims for (1) defamation against both Defendants; (2) trade defamation (injurious falsehood/business disparagement) against both Defendants; (3) tortious interference with business relations and prospective economic advantage against both Defendants; (4) civil conspiracy to defame and interfere with business against both Defendants; (5) intentional infliction of emotional distress against both Defendants; and (6) false advertising (Lanham Act 15 U.S.C. § 1125(a)) and unfair competition against Ms. Askew.

## I.    Conferral

As a preliminary matter, the Court must once again address the issue of conferral. As the Court has previously advised the parties, litigants must make a good faith effort to confer prior to filing any motion other than a motion for a temporary restraining order. In that conferral, the parties must discuss "each claim, defense, or issue that is the subject of the proposed motion." Local Rule 7-1(a).

Neither Ms. Boyce nor Ms. Askew conferred with Plaintiff prior to filing their motions. "The Court may deny any motion that fails to meet this certification requirement." LR 7-1(a)(3). The Court has repeatedly emphasized that conferral is a requirement under Local Rule 7-1(a) and that requirement has not been waived. Defendants have been expressly warned that failure to confer will result in the summary denial of their motions. *See, e.g.,* ECF Nos. 44 (Ms. Boyce warned that failure to confer will result in the summary denial of motions); 51 (Ms. Askew warned

of the same).  The failure to confer supplies a complete and independent basis for the denial of Defendants' Motions.  LR 7-1(a)(3).

## II.    Hallucinated Citations

In the course of briefing her motion to dismiss and in response to Plaintiff's filings, Ms. Askew acknowledged that she relied on a false citation, "*Young v. Maciorca*, 69 F.4th 1099, 1106 (9th Cir. 2023)."  ECF No. 92.  Ms. Askew subsequently withdrew her references to "*Young v. Maciorca*," which is not a Ninth Circuit decision.  The Court notes, however, that "*Young v. Maciorca*" is not the only false citation in Ms. Askew's briefing.

Ms. Askew also cited to "*IGI Cybersecurity Services v. [Defendant]*, Case No. 3:23-cv-01277 (D. Or. July 11, 2024)," in which Ms. Askew claims that "the court found no personal jurisdiction even though the defendant engaged in videoconferences and communications with Oregon parties.  The court explained that such incidental or attenuated contacts, absent purposeful targeting, do not satisfy due process."  Askew Mot. at 6.  As might be guessed from its incomplete caption, this is not the case cited.  The docket number, 3:23-cv-1277, is for *Cohen v. Infinite Group, Inc. et al.* and, while that case did discuss personal jurisdiction and final judgment was entered on July 11, 2024, the case was subsequently reversed by the Ninth Circuit, which found errors in the district court's analysis of personal jurisdiction.

The Court understands that the parties in this case are self-represented and that there is a significant temptation to rely on artificial intelligence in the drafting of legal papers.  The Court therefore advises the parties that it will not accept false

Page 9 –OPINION & ORDER

or "hallucinated" citations and will view their inclusion in legal filings as an attempt to deceive or mislead the Court. All parties are warned that the inclusion of false or hallucinated citations in future briefs may result in the imposition of sanctions on the filing party.

### III.    Personal Jurisdiction Motions

Defendants renew their previous arguments that this Court lacks personal jurisdiction over them in connection with Plaintiff's claims. After the motions to dismiss were filed, Plaintiff filed a First Amended Complaint and voluminous supporting exhibits. Defendants have opted not to update their motions, but, as Defendants are self-represented, the Court will consider the motions with reference to the operative pleading, which is the FAC.

A court may dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzeneggar v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In addition, when the court considers a motion challenging personal jurisdiction before discovery has commenced, and in the absence of an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) (internal quotation marks and citations omitted). "In determining whether the plaintiff has met that burden, a court must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all

disputed facts in favor of the plaintiff." *Id.* Here, because discovery has not yet taken place, Plaintiff need only make a prima facie showing and the Court must accept the uncontroverted allegations of the FAC as true and resolve all disputed facts in Plaintiff's favor.

"An exercise of personal jurisdiction in federal court must comport with both the applicable state's long-arm statute and the federal Due Process Clause." *Burri Law*, 35 F.4th at 1212. Oregon's long-arm statute "authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Accordingly, the Court must examine whether its exercise of jurisdiction over Defendants would comport with the limits imposed by federal due process.

There are two types of personal jurisdiction that a court may exercise over a defendant: general and specific personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). General personal jurisdiction is not at issue here.

"Federal due process permits a court to exercise personal jurisdiction over a non-resident defendant if that defendant has at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106, (9th Cir. 2020) (internal quotation marks and citation omitted). The Ninth Circuit uses a three-prong test to analyze whether a party's minimum contacts meet the due process standard for the

exercise of specific personal jurisdiction. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022).

"First, the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Glob. Commodities*, 972 F.3d at 1107 (internal quotation marks and citations omitted, alterations normalized). Second, the plaintiff's "claim must arise out of or relate to the defendant's forum-related activities." *Id.* Third, the district court's exercise of personal jurisdiction over the defendant must be reasonable. *Id.*

"All three prongs must be satisfied [for a court] to assert personal jurisdiction." *LNS Enters.*, 22 F.4th at 859. However, the Ninth Circuit has held that "in [the court's] consideration of the first two prongs, a strong showing on one axis will permit a lesser showing on the other." *Id.* (internal quotation marks and citation omitted, alterations normalized). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Glob. Commodities*, 972 F.3d at 1107 (internal quotation marks and citation omitted).

### A. Purposeful Direction

Under the first prong of the specific jurisdiction inquiry, "purposeful availment" and "purposeful direction" are "distinct concepts." *Glob. Commodities*, 972 F.3d at 1107. Purposeful availment generally provides a more useful frame of

analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort, but "[a]t bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (internal quotation marks and citation omitted).

Because the claims in this case sound in tort, the Court will begin with the purposeful direction analysis. To determine whether a defendant "purposefully directed" its activities toward the forum, courts apply the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). "That test focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred in the forum," and asks "whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands, Inc. v. Photoplaza*, 72 F.4th 1085, 1091 (9th Cir. 2023) (internal quotation marks and citations omitted). Under the second prong of the "effects" test, a plaintiff must demonstrate that the defendant expressly aimed its actions at the forum state and "'something more' than mere foreseeability is required in order to justify the assertion of personal jurisdiction, and that 'something more' means conduct expressly aimed at the forum." *Fatnani v. JPMorgan Chase Bank, N.A.,* 743 F. Supp.3d 1253, 1268-69 (D. Or. Aug. 1, 2024) (internal quotation marks and citation omitted, alterations normalized). "Jurisdiction may be constitutionally maintained in such a scenario even if the

defendant never set foot in the forum state, if the defendant's contacts with the forum state are out-of-state acts that had an effect in the forum." *Burri Law*, 35 F.4th at 1213.

Here, there is no question that the FAC alleges intentional acts by Defendants in the form of defamation, tortious interference, intentional infliction of emotional distress, civil conspiracy, and unfair competition. Defendants challenge the second and third prongs of the *Calder* analysis, which require that the act be expressly aimed at the forum state and that the act cause harm the defendant knows is likely to be suffered in the forum state.

Turning to the second *Calder* prong, the analysis focuses "on the relationship between the defendants, the forum, and the litigation, examining the various contacts the defendants had created with [the forum state] (and not just with the plaintiff), including . . . circulating false statements in [the forum state.]" *Burri Law*, 35 F.4th at 1214 (internal quotation marks and citation omitted, alterations normalized).

As alleged on the FAC, Defendants repeatedly accused Plaintiff of stealing Ms. Askew's intellectual property and selling counterfeit goods. They directed these accusations at Plaintiff, tagging Plaintiff's social media accounts, and published them to their large social media followings, which caused Defendants' statements to circulate to millions of people, both in Oregon and elsewhere. Notably, Defendants also directed their accusations at Plaintiff's brother, who is also located in Oregon. FAC Ex. Z. These communications had an "Oregon focus" because they concerned Plaintiff's activities in Oregon. *See Burri Law*, 35 F.4th at 1214 ("Moreover, these

false statements had a 'California focus' because they concerned 'the plaintiff's activities in California,'" and "[t]he effect those out-of-state actions had in California justified exercising jurisdiction over the *Calder* defendants." (quoting *Walden v. Fiore*, 571 U.S. 277, 286-88 (2014), distinguishing *Calder*)).

The Ninth Circuit has held that "if the purpose of an act is to cause harm in the forum state, the act has targeted the forum state." *Burri Law*, 35 F.4th at 1215 (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989)).

Here, the FAC alleges that Defendants' accusations were accompanied by links to Plaintiff and her business's social media pages or, in some instances, by links to Plaintiff's website along with entreaties for Defendants' social media followers to report Plaintiff and her business to their online sales platforms. *See, e.g.,* FAC Exs. I, J. The alleged purpose of these posts was to have Plaintiff removed from her online vendor platforms and to destroy her business. "[W]here acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor." *Brainerd*, 873 F.2d at 1259-60; *see also Burri Law*, 35 F.4th at 1215 (holding same).

Here, the Court concludes that Plaintiff has made a sufficient prima facie showing that Defendants expressly aimed their conduct, both the defamatory statements and the efforts to interfere with Plaintiff's ongoing business relationships, at Oregon.

The final prong of the *Calder* analysis asks whether Defendants "knew or should have known that their actions were likely to cause [the plaintiff] harm in the

forum state." *Burri Law*, 35 F.4th at 1215. Here, the FAC alleges that Ms. Boyce and Ms. Askew were coordinating their activities. *See* FAC ¶¶ 54 ("Defendant Boyce stated 'We're not just tussling in the comments. We have a plan.' and then instructed her followers to report Plaintiff's Shopify account."); 55 ("On July 15th, Defendant Askew posted a similar instruction, noting that she and Defendant Boyce 'are strategizing,'"). On the same day, July 15, 2025, Ms. Boyce posted Plaintiff's name and face, identifying her as the "real owner" of Elegance & Geekery. FAC Ex. Z. The post also included a screenshot of Plaintiff's LinkedIn profile showing that she was the owner of Elegance & Geekery and that she was located in "Albany, Oregon." FAC Ex. Z. Plaintiff has sufficiently demonstrated the Defendants knew, or should have known, that Plaintiff was located in Oregon and, as noted, their actions are alleged to have been for the very purpose of causing harm to Plaintiff. The Court concludes that Plaintiff has sufficiently demonstrated that Defendants knew or should have known that their actions were likely to cause harm in Oregon.

Defendants also argue that, because their conduct was confined to the internet, it cannot suffice to establish purposeful direction. This is not, however, a case where Defendants are alleged to have passively operated a website or engaged in fleeting online contact with residents of the forum. As discussed above, the FAC alleges a sustained and targeted campaign for the purpose of causing Plaintiff to suffer harm in Oregon. Defendants also assert that they cannot be liable for the acts of third parties, but the FAC alleges Defendants' own conduct as the basis for its claims. The Court concludes that the purposeful direction prong has been satisfied.

**B. Arising Out of or Related to Defendants' Forum-Related Activities**

The second requirement for specific personal jurisdiction is that the plaintiff's claims "must arise out of or relate to the defendants contacts" with the forum state such that there is "an affiliation between the forum and the underlying controversy." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 359-60 (2021). For an injury to "arise out of" a defendant's forum contacts, a plaintiff must show "a direct nexus . . . between a defendant's contacts with the forum state and the cause of action." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023) (internal quotation marks and citations omitted, alterations normalized). For an injury to "relate to" the defendant's forum contacts, there must be a "close connection between contacts and injury." *Id.* at 506. Here, there is a direct and close nexus between Defendants' Oregon-related activities, in the form of defamatory statements and efforts to disrupt Plaintiff's ongoing business relationships as set forth above, and the claims advanced by Plaintiff. There can be no reasonable dispute that Plaintiff's claims arise from Defendants' forum-related contacts. The Court concludes that Plaintiff has sufficiently demonstrated that her claims arise out of Defendants' forum-related activities.

**C. Reasonableness of the Exercise of Jurisdiction**

Because Plaintiff has satisfied the first two prongs of the "minimum contacts" analysis, the burden now shifts to Defendants to set forth a compelling case that the exercise of jurisdiction would not be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). To evaluate reasonableness, courts use a

seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 607 (9th Cir. 2018). Defendants, who are self-represented, do not address each of the factors, but the Court will examine each in turn.

### 1. Extent of Purposeful Interjection

Here, the Court has already concluded that Defendants' conduct presents a "purposeful interjection" into Oregon. "Actions directed at a forum resident expected to cause harm in the forum constitute purposeful interjection." *CollegeSource Inc.*, 653 F.3d at 1080. Weighed in the balance, the Court concludes that this factor weighs in favor of jurisdiction.

### 2. Burden on Defendants of Defending in the Forum

Defendants emphasize that they face a significant burden if they are required to litigate in Oregon, including the difficulty of locating counsel to represent them. However, "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past." *CollegeSource, Inc.*, 653 F.3d

Page 18 –OPINION & ORDER

at 1080 (internal quotation marks and citation omitted). The Court concludes that this factor weighs slightly in Defendants' favor.

### 3. Extent of Conflict with the Sovereignty of Defendants' State

Defendants are residents of Georgia and there is no meaningful conflict with the sovereignty of Georgia. This factor weighs in favor of jurisdiction.

### 4. Forum State's Interest in Adjudicating the Dispute

"The Ninth Circuit assumes that a forum state maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Adidas America, Inc. v. Cougar Sport, Inc.*, 169 F. Supp.3d 1079, 1094 (D. Or. Mar. 14, 2016) (internal quotation marks and citation omitted). This factor weighs in favor of jurisdiction.

### 5. Most Efficient Judicial Resolution of the Controversy

"This factor focuses on the location of the evidence and witnesses" and, as with the factor considering the burden on the defendant, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *Adidas America*, 169 F. Supp.3d at 1094 (internal quotation marks and citation omitted). Defendants point out that the evidence in this case is largely likely to be digital and the Court notes that the witnesses are likely to be located in both Georgia and Oregon. The Court concludes that this factor is neutral.

### 6. Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief

The sixth factor is the convenience and effectiveness of relief for the plaintiff. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir. 1995). If Oregon is not a proper forum, then Plaintiff would be required to litigate this case in Georgia. Although litigating the case in Georgia would likely be inconvenient for Plaintiff, the Ninth Circuit does not give much weight to the plaintiff's inconvenience. *Id.* This factor only slightly favors jurisdiction.

### 7. Existence of an Alternative Forum

To be sure, Georgia exists as an alternative forum for Plaintiff's claims, however, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource, Inc.*, 653 F.3d at 1080 (internal quotation marks and citation omitted). Defendants have not made that showing. This factor is either neutral or very slightly favors Defendants.

The Court concludes that Defendants have not made a "compelling case" that the exercise of jurisdiction would be unreasonable.

Defendants' motions to dismiss for lack of personal jurisdiction are DENIED.

## IV. Motion to Transfer Venue

Ms. Boyce moves in the alternative to transfer the case to the Northern District of Georgia. 28 U.S.C. § 1404 governs motions to transfer venue "[f]or the convenience of parties and witnesses," and "in the interest of justice" to "any other district or

division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

District courts have discretion to grant or deny motions to transfer based on an "individual, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks and citation omitted). In assessing a motion to transfer venue, courts weigh multiple factors, including (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Id.* at 499-500. "[T]he relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.*

Here, there are no relevant agreements and so that factor is irrelevant. Plaintiff's state law claims are brought under Oregon law, and so Oregon would have a greater familiarity with the governing law, which weighs against transfer.

In a motion to transfer, a plaintiff's choice of forum generally receives "great weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Here, Plaintiff, an Oregon resident, has chosen Oregon. This factor weighs against transfer.

The parties' contacts with the forum and contacts relating to the cause of action have been discussed at length in the preceding sections, but neither Defendant lives

in Oregon.  Plaintiff's contacts with Georgia, where Defendants reside and where Ms. Boyce seeks to transfer the case, are limited.  These factors are neutral.  No party has presented any discussion of witnesses, but the ability to subpoena third parties is generally available in both forums.

The cost of litigation and ease of access to proof are connected to the convenience of witnesses, which is "often cited as the most significant factor in ruling on a motion for transfer."  *Westrock CP, LLC v. Ming's Resource Corp.¸* Case No. 3:21-cv-00929-MO, 2022 WL 93891, at *3 (D. Or. Jan. 7, 2022).  No argument or evidence has been presented concerning witnesses.  This factor is neutral.

After weighing the factors, the Court DENIES the motion to transfer the case to the Northern District of Georgia.

## V.    Anti-SLAPP Motion

Ms. Boyce has also filed a special motion to strike under Oregon's Anti-SLAPP[1] statute.  Oregon's anti-SLAPP statute, ORS 31.150, provides "an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage."  *Neumann v. Liles*, 358 Or. 706, 723 (2016).  Under the statute, a defendant may bring a special motion to strike a claim that arises out of, in relevant part, "[a]ny oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest," or "[a]ny other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom

---

[1] "Strategic lawsuit against public participation."

of the press in connection with a public issue or an issue of public interest." ORS 31.150(1), (2)(a)(C)-(D).

A court considers a special anti-SLAPP motion to strike using a two-step burden-shifting process. *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in the anti-SLAPP statute. *Id.* If the defendant satisfies its burden, the burden then shifts to the plaintiff "to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.* (quoting ORS 31.150(3)).

The analysis at the second step differs in federal court. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018). In federal court, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, the Rule 56 standard will apply and "discovery must be allowed . . . before any decision is made by the court." *Id.* at 834. However, if the motion challenges the legal sufficiency of the claim, the motion is treated in the same manner as a motion under Rule 12(b)(6), except that the attorney fee provisions of the anti-SLAPP statute will apply. *Id.* If a defendant challenges only the legal sufficiency of pleadings, "then the plaintiff can properly respond merely by showing the sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants." *Id.*

Here, Ms. Boyce presents challenges to both the legal and factual sufficiency of the claim. With respect to the factual challenges, Ms. Boyce claims there is no

evidence of true threats or harassment; that Plaintiff failed to mitigate the harm; that third parties were the true cause of the harm; that Plaintiff has mischaracterized the evidence; that Ms. Boyce's actions were directed at protecting consumers and encouraging transparency in online commerce; and that Ms. Boyce's statements were not literal threats but "rhetorical hyperbole and activist expression." Boyce Mot. to Strike 4-7. As noted, under the federal rules, a factual challenge is premature before discovery has been undertaken. *Planned Parenthood*, 890 F.3d at 833-35 (holding that "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply," and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court."). Here, no discovery has taken place and it would be improper to allow a challenge to the factual sufficiency of the claims to proceed at the pleading stage. The Court will therefore DENY the motion to the extent that it challenges the factual sufficiency of the claims with leave to refile after the close of discovery.

Ms. Boyce also appears, at least in part, to challenge the legal sufficiency of the claims. The Court must therefore address the standards for a motion to dismiss under Rule 12(b)(6). To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pleading does not require

Page 24 –OPINION & ORDER

"detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id*. "A plaintiff opposing an anti-SLAPP motion in federal court must overcome substantive defenses that would prevent the plaintiff from properly stating a claim under Rule 12(b)(6). *Cagle v. Sattler*, 761 F. Supp.3d 1357, 1364 (D. Or. 2025).

Ms. Boyce's specific arguments concerning the sufficiency of the claim are scattered and do not directly address all of Plaintiff's claims. The Court has endeavored to separate what appear to be Ms. Boyce's challenges to the legal sufficiency of Plaintiff's claims, which can be addressed at the pleading stage, from her challenges to the factual sufficiency of the claims, which cannot.

Ms. Boyce argues that Plaintiff's "selective targeting" of her "undermines credibility" and "reveals a retaliatory motive." Questions of credibility are generally reserved for the finder of fact (i.e., the jury or, in the case of a bench trial, the Court) and cannot sustain a challenge to the pleadings. Ms. Boyce argues that "[s]elective litigation aimed at retaliation contravenes constitutional principles," for which she cites *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 530 (2002). The cited authority concerns the National Labor Relations Board's imposition of liability on an employer

for filing a losing retaliatory lawsuit. *Id.* at 524. *BE & K Construction* has no applicability to the present case. Nor do Ms. Boyce's arguments concerning Plaintiff's motive in filing the case suffice to undermine Plaintiff's claims. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 69 (1993) (Stevens, J., concurring in judgment) ("We may presume that every litigant intends to harm his adversary.").

Ms. Boyce also argues that her statements were prefaced with "my guess" and "I think" and were therefore non-actionable expressions of opinion. However, the FAC alleges numerous defamatory statements by Ms. Boyce that were not so qualified. *See, e.g.,* FAC ¶¶ 49, 51, 52, 54.

Ms. Boyce also argues that she cannot be held liable for the actions of third parties, citing 47 U.S.C. § 230(c)(1). Leaving aside whether § 230 applies to Ms. Boyce, the FAC seeks to hold Ms. Boyce liable for her own alleged conduct, notably defamation and tortious interference, rather than for the acts of third parties.

For the reasons set forth above, Ms. Boyce's Special Motion to Strike is DENIED.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, ECF Nos. 78, 79, are DENIED both for failure to confer and on the merits. Defendant Boyce's Motion to Transfer is DENIED both for failure to confer and on the merits. Defendant Boyce's Special Motion to Strike, ECF No. 81, is DENIED both for failure to confer and on the merits. Defendants are again warned

that failure to confer prior to filing a motion will result in the summary denial of their motions.  Defendants are ordered to respond to the First Amended Complaint, ECF No. 97, within thirty (30) days of the date of this Order.

It is so ORDERED and DATED this ____28th____ day of July 2026.

 /s/Ann Aiken
ANN AIKEN
United States District Judge