Kiandria Demone Boyce
2146 Roswell Rd. Suite 108
Marietta, GA 30062
Pro Se Defendant
Email: kboyce6977@gmail.com
Phone: 404 957 9984

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

**Kursten Owen (individually and d/b/a Elegance & Geekery LLC),**

Plaintiff,

v.

**Breana Askew (individually and d/b/a Breromi),**
**Kiandria Demone Boyce,**
**and Does 1–100,**

Defendant(s).

Case No.: 6:25-cv-01272-AA

**DEFENDANT KIANDRIA DEMONE BOYCE'S ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES**

**ANSWER**

Defendant Kiandria Demone Boyce ("Defendant" or "Boyce"), appearing self-represented, answers Plaintiff Kursten Owen's First Amended Complaint, ECF No. 97 ("FAC"), as follows.

Defendant responds only on her own behalf. Unless expressly admitted, Defendant denies each allegation against her. Where Defendant states that she lacks sufficient knowledge or information to form a belief as to the truth of an allegation, Defendant denies that allegation pursuant to Federal Rule of Civil Procedure 8(b)(5). Defendant's admission that she made a particular statement does not constitute an admission of Plaintiff's characterization, interpretation, legal conclusion, or inference concerning that statement.

**RESPONSES TO NUMBERED ALLEGATIONS**

**1.** Defendant acknowledges that the Court has determined that personal jurisdiction is proper and does not relitigate that ruling here. Defendant admits she is domiciled in Georgia. Defendant lacks sufficient knowledge concerning Plaintiff's state of citizenship and therefore denies that allegation. Defendant denies the remaining allegations and legal conclusions to the extent a response is required. Defendant preserves, and does not waive by answering, her prior objections to personal jurisdiction and venue, which the Court addressed in a previous ruling.

**2.** Defendant acknowledges that her prior venue challenge was denied. Defendant denies that she purposefully targeted Oregon or undertook the challenged conduct with the purpose of causing injury in Oregon.

**3.** Defendant lacks sufficient knowledge concerning Plaintiff's allegations regarding the legal status, ownership, licensing, organization, or operations of Elegance & Geekery LLC and therefore denies the allegations.

**4.** Defendant lacks sufficient knowledge concerning Defendant Askew's business status and therefore denies the allegations.

**5.** Defendant lacks sufficient knowledge concerning all accounts allegedly operated by Askew and therefore denies the allegations.

**6.** Defendant admits that she resides in Georgia and is a civil-rights activist and that she has, in certain contexts, described herself as "radical." Defendant denies Plaintiff's characterization or any implication that those descriptions establish unlawful intent.

**7.** Defendant admits operating or having operated social-media accounts including TikTok @kiandriaisback, Threads @kiandria, and Instagram @kiandria.

**8.** Defendant lacks sufficient knowledge concerning the identities or conduct of the Doe Defendants and therefore denies the allegations.

**9.** Defendant admits that Plaintiff operates an online business, Elegance & Geekery LLC, that sells accessories. Defendant lacks knowledge or information sufficient to form a belief

concerning the business's alleged 2024 gross sales of $190,310 and therefore denies that allegation.

**10.** Defendant lacks sufficient knowledge concerning Askew's conduct or state of mind before Defendant became aware of the controversy and therefore denies the allegations as to Defendant.

**11.** Defendant denies participating in a coordinated effort to incite hatred or harassment against Plaintiff. Defendant's commentary concerned what she believed were legitimate issues involving alleged copying, intellectual property and product development, the treatment of a Black creator, consumer accountability, and a public online controversy.

**12.** Defendant denies entering an agreement to disrupt Plaintiff's business, cause emotional distress, or engage in fraudulent reporting. To the extent Defendant discussed established platform-reporting mechanisms, Defendant denies agreeing with anyone to submit knowingly false reports or engage in unlawful harassment.

**13–20.** Defendant lacks sufficient knowledge concerning Askew's alleged intellectual-property rights, applications, private communications, development history, and state of mind and therefore denies the allegations to the extent directed at Defendant.

**21.** Defendant denies any legal conclusion concerning the precise scope or enforceability of Askew's intellectual-property rights and otherwise lacks sufficient knowledge to admit the allegations.

**22–23.** Defendant lacks sufficient knowledge concerning Askew's knowledge, assumptions, or state of mind and therefore denies the allegations as to Defendant.

**24.** Defendant admits that publicly available materials appeared to show that Askew's Kickstarter campaign and product-development activity predated Plaintiff's market entry. Defendant denies any allegation that this was the only information upon which Defendant relied.

**25.** Defendant lacks sufficient knowledge concerning Askew's state of mind or knowledge of prior products and denies that Defendant knew the concerns she expressed were false.

**26–32.** Defendant lacks sufficient knowledge concerning Plaintiff's private product-development process and therefore denies the allegations.

**33.** Denied. Based upon publicly available information, Defendant believed there were similarities, chronology, marketing representations, and other circumstances warranting scrutiny and public discussion.

**34–40.** Defendant lacks sufficient knowledge concerning Askew's independent statements, communications, intentions, and conduct and therefore denies the allegations as to Defendant.

**41–43.** Defendant lacks sufficient knowledge to admit Plaintiff's characterizations of Askew's statements and denies any implication that those allegations establish wrongdoing by Defendant.

**44.** Defendant does not presently recall the precise circumstances alleged. To the extent Defendant publicly sought or obtained identification of Plaintiff's publicly available business account, Defendant did so in connection with independent research into an existing public controversy. Defendant denies that her conduct constituted or evidenced any conspiracy, unlawful coordination, or agreement to harm Plaintiff.

Defendant's awareness of the controversy at this time arose from public posts and third-party discussion of the matter, not from any private coordination with Askew concerning Plaintiff specifically.

**45.** Defendant admits that she has described herself as a radical activist in certain contexts but denies that the description establishes wrongful intent.

**46.** Defendant admits that, before the events giving rise to this litigation, she appeared in a UATL podcast produced by The Atlanta Journal-Constitution titled **“Trolling for Good”** and used language similar to what Plaintiff quoted, including references to being “unhinged,” trolling, her influence, and her son's description of her as a “professional ragebaiter,” to the extent those statements are accurately quoted and authenticated. Defendant specifically denies Plaintiff's characterization that those statements establish or clarify an intent to engage in cyberbullying, harassment, or other harmful or unlawful conduct.

Plaintiff's characterization omits material context concerning both the title and substance of the podcast. UATL is The Atlanta Journal-Constitution's Black culture and community platform, and the podcast was titled **“Trolling for Good.”** The podcast was not a story about Defendant engaging in cyberbullying. Rather, the discussion concerned Defendant's use of technology, social media, online influence, and her public platform to advocate for good in the community, draw attention to perceived harm, promote accountability, and encourage positive community action.

Defendant's references to trolling, being “unhinged,” “ragebait,” or similar terminology described aspects of Defendant's online communication style and were made within that broader discussion about using online influence for advocacy and positive purposes. They were not admissions that Defendant uses her platform for the purpose of cyberbullying, harming, threatening, or unlawfully harassing others.

Defendant further denies that statements made during a podcast predating the controversy establish that Defendant subsequently acted with an intent to harm Plaintiff. Defendant contends that Plaintiff's reliance on isolated language from the podcast while omitting its title and broader subject matter creates a misleading characterization of Defendant's statements and their context. The complete context is consistent with Defendant's stated purpose of using technology and online influence as tools for advocacy, accountability, harm prevention, and positive action in the community.

**47.** Defendant admits making the quoted statement to the extent accurately authenticated but denies that it constituted a literal threat or admission of unlawful conduct.

**48.** Defendant lacks sufficient knowledge concerning all circumstances surrounding Plaintiff's response video. Defendant denies that Plaintiff's unilateral explanation placed Defendant on notice that Defendant's subsequent opinions or statements were necessarily false.

Defendant denies that she directed, instructed, or encouraged anyone to go to TikTok for the purpose of harassing Plaintiff. Defendant first became aware of the controversy after it was brought to her attention by another person who believed harm was occurring. The controversy did not originate with Defendant and did not come to Defendant's attention organically through her own feed. Rather, it was brought to Defendant's attention because it had already generated public attention and concern. To the extent Defendant subsequently informed members of her audience that additional videos or information could be found on TikTok, Defendant was providing context and directing interested viewers to publicly available information so that they could view the relevant content for themselves. Defendant did not instruct viewers to contact, threaten, or harass Plaintiff and denies Plaintiff's characterization of directing viewers to publicly available information as an instruction to harass.

**49.** Defendant admits making the post described in Paragraph of the First Amended Complaint on or about July 15, 2025, after the matter had been brought to her attention by another person, and subsequently publishing a video concerning the controversy on or about July 17, 2025.

Defendant admits using language quoted by Plaintiff to the extent accurately authenticated but denies that statements such as “come outside” or “we not gonna jump you” constituted literal threats, instructions to harass Plaintiff, or encouragement of violence. Defendant's statements were made in the context of commenting upon an already existing public controversy that Defendant believed involved harm warranting public attention.

Defendant denies Plaintiff's characterization that Defendant posted a direct response to Plaintiff's video or directly communicated with Plaintiff through or beneath that video. Defendant recalls that her statement was posted as a separate post addressing the broader controversy, not as a comment on Plaintiff's video. Additionally, the controversy was brought to

Defendant's attention by other individuals who represented to Defendant that a Black woman was being racially bullied. Defendant thereafter independently discussed and addressed the broader controversy and issues that Defendant believed involved harm warranting public attention.

**50.** Defendant denies any allegation or inference that she originated the controversy or was responsible for causing it to become viral. The controversy had already generated substantial public attention before Defendant became involved and was brought to Defendant's attention by another person because of concerns that Askew was being harmed. Defendant denies Plaintiff's characterization of the source or cause of subsequent increases in engagement. The controversy had already generated substantial public attention before Defendant became involved, and Defendant denies that subsequent third-party engagement establishes that Defendant originated the controversy, caused it to become viral, or directed others to harass Plaintiff.

Defendant believed had not been adequately considered in the existing public discussion. Defendant did not control the independent conduct or reactions of third parties.

**51.** Defendant admits publicly criticizing what she believed was copying or exploitation. Defendant denies knowingly publishing false information or inciting unlawful conduct.

**52.** To the extent authenticated, Defendant admits publicly discussing the controversy, reporting options, and consumer accountability. Defendant denies threatening Plaintiff, coordinating unlawful harassment, or instructing anyone to submit information known to be false.

**53.** Defendant lacks sufficient knowledge concerning independent third-party reviews and denies responsibility for reviews she did not create, request, authorize, or control.

**54.** Defendant admits, to the extent accurately reflected in authenticated materials, discussing Shopify's merchant-reporting mechanism and explaining options available to consumers who independently believed that fraudulent, harmful, counterfeit, unauthorized, or otherwise improper merchant conduct was occurring. Defendant denies directing, instructing, or requiring anyone to submit a report, and denies knowingly encouraging the submission of false or fraudulent reports.

Defendant's statements were made in the context of her experience as a consumer advocate and her practice of educating consumers about options available to them when they believe a company is profiting from harm or engaging in fraudulent or otherwise improper conduct. Defendant provided information concerning reporting mechanisms that consumers could choose to use if, based upon their own judgment, they believed conduct warranted review. Defendant did not purport to make that determination for individual consumers and did not

control whether any person submitted a report, what any person stated in a report, or what Shopify did in response.

Defendant does not recall personally submitting a Shopify report concerning Plaintiff or Elegance & Geekery LLC. Defendant specifically denies knowingly submitting, directing, coordinating, or encouraging the submission of false or fraudulent reports.

**55.** Denied. Defendant denies Plaintiff's allegation or characterization that Defendant and Askew agreed, planned, or strategized to defame Plaintiff, submit false or fraudulent reports, unlawfully interfere with Plaintiff's business, or otherwise engage in unlawful conduct. Defendant lacks sufficient knowledge concerning Askew's communications with third parties and therefore denies those allegations to the extent directed at Defendant.

**56.** Defendant admits using the word “plan” or similar language to the extent established by authenticated evidence but denies that such language referred to an agreement, conspiracy, or coordinated effort to engage in unlawful conduct. The term referred to Defendant's public advocacy concerning consumer options and lawful mechanisms available to persons who independently believed misconduct warranted review. Defendant denies coordinating false reports, harassment, threats, or other unlawful conduct and did not control the independent actions of consumers or platforms.

The term referred to Defendant's public advocacy concerning consumer options and lawful mechanisms available to persons who independently believed misconduct warranted review. Defendant denies coordinating false reports, harassment, threats, or other unlawful conduct and did not control the independent actions of consumers or platforms.

Defendant's reference to a “plan” concerned educating consumers about options available to them if they independently believed that harmful, fraudulent, counterfeit, unauthorized, or otherwise improper conduct was occurring and discussing lawful steps that could be taken to prevent, report, or stop the perceived harm. Defendant's purpose was consumer advocacy and harm prevention, not the coordination of false reports, harassment, threats, or other unlawful conduct. Defendant did not control whether any consumer chose to act upon the information provided or what any platform did in response.

**57.** Defendant admits that she has previously advocated public use of legitimate consumer, corporate-accountability, and platform-reporting mechanisms. Defendant denies that such advocacy establishes a practice of fraudulent reporting or unlawful interference.

**58.** Defendant denies that an unlawful reporting scheme originated with her and denies entering a conspiracy.

**59.** Defendant admits publicly identifying Plaintiff's public-facing account to the extent accurately alleged but denies threatening Plaintiff or directing violence or unlawful harassment.

**60.** Defendant admits commenting upon what she perceived as copying, appropriation, and exploitation. Defendant denies possessing definitive nonpublic knowledge concerning the legal scope of the parties' intellectual-property rights.

**61.** Defendant admits discussing the controversy in the context of historical and racial inequities affecting Black creators. Defendant denies that such commentary constituted incitement to unlawful conduct.

**62–67.** Defendant lacks sufficient knowledge concerning Askew's independent statements and conduct and therefore denies the allegations as to Defendant.

**68.** Defendant admits making the quoted statement, "Bre didn't send a mob after you…I DID," in response to Plaintiff's own characterization of the public reaction as a "hate mob," but specifically denies that the statement was a literal admission that Defendant organized, directed, controlled, or sent individuals to threaten or unlawfully harass Plaintiff.

Defendant used Plaintiff's own terminology in responding to Plaintiff's accusation so that the context and subject of Defendant's response would be clear to the audience. By adopting Plaintiff's terminology for purposes of that response, Defendant was not conceding that an actual "hate mob" existed or representing that she had organized, directed, or controlled the conduct of other individuals. Rather, Defendant was referring rhetorically to her participation in an already viral and existing public discourse. Defendant was not claiming that she originated the controversy, caused its existing public reach, organized or directed members of the public, or controlled their independent reactions or conduct.

On or about July 25, 2025, Defendant publicly clarified the meaning of the statement in a follow-up video. Defendant expressly stated, in substance, that she "didn't actually send a hate mob," that "nobody sent a hate mob," and that she had used Plaintiff's terminology sarcastically in responding to Plaintiff's accusation. Defendant explained that the earlier statement was not an admission that she had organized, directed, encouraged, or controlled individuals who subsequently commented on or otherwise participated in the public discourse.

Defendant further explained that she became involved after observing the controversy and forming the belief that Askew was being harmed and unfairly characterized as the aggressor. Defendant stated that she did not personally know Askew and that her involvement arose from her role as an activist and her perception that she had witnessed harm warranting public advocacy.

Defendant was not claiming that she originated the controversy, caused it to become viral in the first instance, or organized, directed, or controlled the independent conduct of members of the public.

Defendant therefore denies Plaintiff's characterization of the quoted statement as an admission of an intent to send a "hate mob," encourage attacks or harassment, or cause unlawful harm to Plaintiff or Plaintiff's business.

**69.** Denied. Defendant specifically denies admitting that she intended to encourage the public to attack Plaintiff, harass Plaintiff, cause Plaintiff emotional harm, damage Plaintiff's business, pressure Plaintiff offline, or engage in unlawful conduct.

Plaintiff's characterization relies upon Defendant's use of Plaintiff's own "hate mob" terminology without the context in which Defendant adopted that terminology or Defendant's subsequent clarification of its meaning. Defendant used Plaintiff's terminology so the audience would understand the accusation to which Defendant was responding. Defendant was referring to her participation in the existing public discourse, not admitting that she organized, directed, controlled, or encouraged unlawful conduct by others.

Defendant subsequently publicly clarified that she had not actually sent a "hate mob," that nobody had sent a "hate mob," and that her earlier statement had sarcastically adopted Plaintiff's terminology.

Defendant denies directing, requesting, authorizing, coordinating, encouraging, or ratifying threats, violence, death threats, or other unlawful harassment.

**70–77.** Defendant lacks sufficient knowledge concerning Askew's independent conduct and statements and therefore denies the allegations as to Defendant.

**78.** Denied. Defendant's commentary reflected her contemporaneous understanding of publicly available materials concerning persons and roles associated with Plaintiff's business. Defendant denies knowingly misidentifying any individual or knowingly misstating any person's role. Public-facing materials appeared inconsistent concerning who invented, developed, or publicly represented the product, and Defendant's commentary reflected her good-faith interpretation of those materials.

Defendant further states that public-facing materials appeared inconsistent concerning who invented or developed the product. Public marketing and social-media materials appeared to Defendant to show one woman representing that she personally invented or developed the product while another publicly identified individual, Caleb, was described as a developer or technical developer. Those apparent inconsistencies contributed to Defendant's good-faith interpretation of the information available to her.

**79.** Defendant acknowledges that the title identified by Plaintiff is "Lead Technical Developer." Defendant denies knowingly or intentionally misrepresenting the title and incorporates her response to Paragraph 78 concerning the public-facing information available to her and her contemporaneous understanding of that information.

**80.** Defendant lacks sufficient knowledge concerning Askew's independent conduct and therefore denies the allegations.

**81.** Defendant admits expressing a theory or inference concerning a developer's possible role but denies presenting herself as possessing verified private knowledge. Defendant's language, including "my guess," expressly signaled speculation based upon public information and the apparent inconsistencies described above.

**82.** Defendant admits using a publicly available image associated with Plaintiff's business in commentary concerning the controversy, to the extent established by authenticated evidence, but denies Plaintiff's characterization of Defendant's conduct or intent. Defendant's commentary reflected her contemporaneous understanding of the publicly available information concerning Plaintiff and her business. Defendant did not knowingly use an image of a different person while falsely representing that person to be Plaintiff and denies any intent to impersonate, threaten, harass, or knowingly misrepresent Plaintiff or any third party.

**83.** Denied. Defendant admits that she accessed and reviewed Plaintiff's website and navigated portions of its online sales process for the purpose of observing the sales flow in connection with her research concerning the public controversy. Defendant does not recall placing or intentionally submitting any order, and after a reasonable review of her records, including email and payment records, Defendant has located no order confirmation, charge, or refund associated with any purchase from Plaintiff. On that basis, Defendant denies that she purchased any product from Plaintiff. To the extent any order record exists, Defendant denies that it was placed intentionally or for any harassing, retaliatory, or otherwise improper purpose. Defendant lacks sufficient knowledge concerning Plaintiff's internal decision to refund or decline any transaction and therefore denies those allegations.

**84.** Defendant lacks sufficient knowledge concerning the independent third-party video and therefore denies the allegations as to Defendant.

**85.** Defendant denies knowingly making false statements. Defendant's opinions concerning similarity and copying were based upon public materials, her observations, and her professional experience.

**86.** Defendant admits discussing consumer-accountability mechanisms and denies threatening Plaintiff or directing false reviews.

**87.** Defendant lacks sufficient knowledge concerning the complete contents, context, and legal accuracy of Plaintiff's alleged cease-and-desist communications to Askew and therefore denies Plaintiff's characterization of those communications to the extent directed at Defendant.

**88.** Defendant lacks sufficient knowledge concerning Askew's patent filing and therefore denies the allegations.

**89.** Defendant denies the legal conclusion and denies that she possessed the knowledge Plaintiff attributes to her.

**90.** Defendant denies Plaintiff's characterization that she was provided information establishing that her statements were false or that she thereafter knowingly continued publishing false information. Defendant lacks sufficient knowledge concerning the complete contents, context, or substance of Plaintiff's communications with Askew and denies that Plaintiff's characterization of those communications establishes Defendant's knowledge of falsity or reckless disregard.

**91.** Denied. Defendant lacks sufficient knowledge concerning the complete contents, context, or substance of Plaintiff's communications with Askew and therefore denies Plaintiff's characterization of those communications to the extent a response from Defendant is required. Defendant further denies that Plaintiff provided Defendant with evidence establishing that Defendant's statements were false or that Defendant knowingly continued publishing information after learning it was false.

Defendant never received any pre-suit communication from Plaintiff identifying a particular statement Plaintiff contended was false, providing Defendant with evidence demonstrating that a statement was false, or requesting that Defendant retract, correct, or remove her content. Defendant is unaware of any attempted communication from Plaintiff that Defendant did not receive.

Had Defendant been presented with reliable evidence establishing that a material factual statement she made was false, Defendant would have reviewed that evidence and corrected, retracted, or removed the inaccurate statement as appropriate. Defendant did not knowingly continue publishing information after being presented with evidence establishing its falsity.

**92.** Defendant lacks sufficient knowledge concerning the complete communications between Plaintiff and Askew and therefore denies Plaintiff's characterization of those communications to the extent a response from Defendant is required. Defendant further denies that Plaintiff provided Defendant with evidence establishing that Defendant's statements were false or that Defendant knowingly continued publishing information after learning it was false.

**93.** Defendant lacks sufficient knowledge concerning portions of Plaintiff's communications with Askew that Defendant did not see. Defendant did not possess or review the complete email chain and therefore cannot admit Plaintiff's characterization of the complete communications between Plaintiff and Askew.

Defendant further denies that the limited portion she recalls seeing established, in Defendant's mind, that any material statement Defendant had made was false. Defendant lacks sufficient knowledge concerning the complete communications between Plaintiff and Askew and therefore denies Plaintiff's characterization of them. Defendant further denies that she possessed information establishing that any material statement she made was false.

**94.** Defendant lacks sufficient knowledge concerning the entirety of Plaintiff's communications, demands, or negotiations with Askew and therefore denies Plaintiff's characterization to the extent directed at Defendant.

**95.** To the extent authenticated evidence establishes that Defendant used the quoted terminology, Defendant acknowledges the statement but denies Plaintiff's characterization or any inference that Defendant was asserting as an established fact that Plaintiff had committed a criminal offense. The terminology reflected Defendant's contemporaneous opinion and interpretation of the publicly discussed circumstances.

**96.** Defendant's statements reflected her interpretation of the circumstances based upon the information available to her at the time. Defendant continued to believe that the substance of the concerns she had discussed was true or supported and did not understand the circumstances alleged by Plaintiff as information demonstrating that Defendant's statements were false.

**97.** Denied. Defendant denies that information available to her caused her to know, believe, or seriously doubt that her prior statements were true. Defendant did not understand the circumstances alleged by Plaintiff as establishing that Defendant's statements were false, and Defendant's contemporaneous public statements reflected her continued belief that the substance of her concerns was true or supported by the information available to her.

**98–101.** Defendant lacks sufficient knowledge concerning Askew's patent filings, fundraising details, and independent conduct and therefore denies the allegations as to Defendant.

**102.** Defendant admits promoting or discussing a fundraiser for legal resources. Defendant denies that doing so constituted conspiracy or unlawful conduct.

**103.** Defendant denies Plaintiff's characterization that Defendant originated, directed, or instructed Askew's decision to crowdfund legal expenses. To the extent Defendant expressed a view concerning GoFundMe or crowdfunding, Defendant's statement concerned the suitability of

a commonly used crowdfunding platform for legal expenses and did not constitute an instruction to create a fundraiser or an agreement to engage in unlawful conduct. Defendant denies that her conduct constituted or furthered any conspiracy, unlawful agreement, or plan to harm Plaintiff.

**104.** Defendant lacks sufficient knowledge concerning the precise amount raised and therefore denies the allegation.

**105.** Defendant admits that she genuinely believed Askew's work had been copied or improperly appropriated and expressed that belief. Defendant denies knowing that the belief was false or acting with actual malice.

**106.** Defendant admits placing the controversy within broader historical and systemic commentary concerning Black creators. Defendant denies that such commentary was a knowingly false factual assertion concerning Plaintiff.

**107.** Defendant admits discussing patents and other potential forms of intellectual-property or business protection. Those statements reflected Defendant's understanding and opinions at the time. Defendant denies knowingly fabricating legal facts.

**108.** Defendant denies that her discussion of trade dress or related concepts was knowingly fabricated after the fact to conceal knowledge of falsity.

**109–115.** Defendant lacks knowledge or information sufficient to form a belief concerning Askew's trade dress, product packaging, logos, product designs, or intellectual-property registrations and therefore denies the allegations of Paragraphs 109 through 114 to the extent a response from Defendant is required. Defendant denies the allegations and characterizations of Paragraph 115 concerning Defendant's knowledge, reasoning, and intent.

**116.** Defendant admits making commentary concerning Plaintiff's TikTok comment filtering but denies that the statement was fabricated or made without an observational basis. Defendant had substantial practical experience using TikTok and other social-media platforms and based her statement upon her personal experience with the platform and what she observed on Plaintiff's account.

Defendant observed what she understood to be a discrepancy between the number of comments TikTok displayed and the comments Defendant was actually able to view. Based upon Defendant's experience with filtered, hidden, and moderated comments, Defendant believed at the time that the discrepancy indicated moderation or withholding from public display and that Plaintiff was exercising control over which comments remained publicly visible.

Defendant also observed publicly visible comments that she perceived as containing racial hostility, microaggressions, and disrespect toward Black women. Those observations

contributed to Defendant's criticism of the environment she perceived was being permitted in Plaintiff's comment section.

Defendant does not contend that she had access to Plaintiff's private TikTok settings. Her statement reflected an inference drawn from her observations and experience. To the extent Plaintiff establishes that some or all of the discrepancy resulted from automated filtering rather than manual moderation, Defendant denies that an incorrect inference establishes knowing fabrication or deliberate disregard of known falsity.

**117.** Defendant lacks sufficient knowledge to admit Plaintiff's allegation concerning the precise TikTok filtering or moderation settings enabled on Plaintiff's account and therefore denies it to that extent.

Defendant acknowledges that TikTok provides automated comment-filtering features. Defendant's contemporaneous understanding, based upon her own experience, was that automatically filtered comments could under circumstances she had encountered remain accessible or discoverable, while other moderation actions could prevent public display. Defendant denies knowing at the time that the discrepancy she observed was caused solely by TikTok's automated filtering.

**118.** Defendant admits responding to the third-party commentary to the extent accurately authenticated but specifically denies Plaintiff's characterization or any inference that Defendant's response constituted agreement that Plaintiff was a Nazi, attributed Nazi or white-supremacist beliefs to Plaintiff, expressed hatred toward Plaintiff, or encouraged harmful or unlawful conduct against Plaintiff.

Defendant understood the third party's reference to the “Nazi woman GoFundMe” as a reference to the widely publicized Shiloh Hendrix controversy, a matter in which Defendant had previously engaged in public advocacy. Hendrix had been recorded using a racial slur toward a Black child, subsequently received substantial financial support through an online fundraiser, and was later convicted of one count of disorderly conduct arising from the underlying playground incident. The fundraiser also became associated with racist, antisemitic, and white-supremacist commentary and support.

Defendant understood the third party's comment as a reference to that prior controversy. Defendant denies that her response constituted agreement that Plaintiff was a Nazi, agreement that Plaintiff held Nazi or white-supremacist beliefs, or an attribution of Nazi ideology to Plaintiff.

The Hendrix reference is also consistent with Defendant's contemporaneous state of mind and the advocacy context in which Defendant understood her conduct. Defendant is a civil-rights activist and had previously participated in public advocacy concerning the Hendrix controversy

based upon concerns that individuals or companies were profiting from or financially rewarding conduct Defendant perceived as harmful. Defendant similarly understood her discussion of Plaintiff, consumer-reporting mechanisms, and public accountability as advocacy intended to identify, prevent, or stop perceived harm, rather than as harassment or an effort to inflict harm upon Plaintiff.

Defendant therefore denies Plaintiff's characterization of the exchange as evidence of hateful intent, malicious conduct, or an agreement to harm Plaintiff and denies inciting or encouraging unlawful conduct in response to the third-party commentary.

**119.** Defendant admits making statements concerning public scrutiny and potential business consequences to the extent accurately quoted. References such as “Google me” referred to Defendant's public advocacy record and were not threats of violence or unlawful action. Defendant denies Plaintiff's characterization regarding motive or any implication that those statements were made out of malice or intended as threats. Defendant's statements provided context concerning her public advocacy and reflected her perspective based upon her professional experience. Defendant denies that the statements constituted threats or admissions of unlawful intent.

**120.** Defendant admits making statements substantially similar to those quoted, if accurately authenticated, but denies Plaintiff's interpretation.

Defendant's repeated statement that “Bre didn't send a hate mob after you. I did” sarcastically adopted Plaintiff's characterization of public criticism as a “hate mob.” Defendant was referring to public attention generated by her commentary, not admitting that she organized, controlled, or instructed anyone to threaten or unlawfully harass Plaintiff.

Defendant subsequently publicly clarified on or about July 25, 2025 that the “hate mob” statement was sarcastic and was not an admission that Defendant had sent or organized a hate mob.

Defendant denies that references such as “Google me” constituted threats of violence, technological attacks, or other illegal conduct.

**121.** Defendant admits tagging or referencing Shopify to the extent accurately alleged and discussing an established merchant-reporting mechanism as part of consumer advocacy. Defendant denies knowingly submitting, directing, coordinating, or encouraging false or fraudulent reports or unlawful interference. Defendant does not recall personally submitting a Shopify report and did not control Shopify's investigation or decision-making.

**122.** Denied. To the extent Defendant publicly referenced or brought the controversy to the attention of another creator, Defendant denies requesting, directing, or encouraging harassment, threats, false statements, fraudulent reporting, or other unlawful conduct.

**123.** Defendant admits responding to an audience comment concerning patents but specifically denies that the exchange establishes that Defendant independently knew no relevant intellectual-property or other rights existed. Defendant's position was that, even assuming no issued patent existed, the absence of an issued patent did not necessarily resolve the broader ethical, copying, imitation, marketing, or other concerns Defendant was discussing.

**124.** Defendant admits discussing broader systemic concerns, fundraising, and legitimate reporting mechanisms. Defendant denies knowing that her underlying concerns were false or intending unlawful harassment.

**125.** Denied. Defendant possessed no private or nonpublic intellectual-property records establishing the legal scope of Askew's rights. Defendant's public and hypothetical discussion did not constitute an admission that she knew no potentially relevant rights or interests existed.

**126.** Defendant admits discussing fundraising and platform-reporting options but denies directing fraudulent reports or harassment. Defendant's discussion informed consumers of options they could independently choose to use if they believed misconduct warranted platform review.

**127.** Defendant lacks sufficient knowledge concerning Askew's independent repost and therefore denies the allegation as to Defendant.

**128.** Defendant admits expressing support for public accountability and discussing legitimate reporting mechanisms but denies threats or knowingly submitting, directing, coordinating, or encouraging fraudulent reporting. Defendant did not control whether any independent consumer chose to report or what any platform did in response.

**129.** Defendant admits reposting or commenting upon third-party content to the extent accurately authenticated but denies unlawful harassment or knowing defamation.

**130.** Defendant lacks sufficient knowledge concerning independent third-party conduct and denies responsibility for content she did not create, direct, authorize, or control.

**131.** Defendant admits making statements substantially similar to those quoted to the extent accurately authenticated but denies Plaintiff's characterization and inferences.

Defendant's statement that she was not afraid of threatened litigation and could be taken to court expressed Defendant's lack of fear concerning litigation and confidence that she was not knowingly engaging in unlawful conduct. Defendant did not mean that she knew her statements

were false or unlawful but intended to publish them regardless. Defendant believed her statements and opinions were true, substantially true, protected opinion, or otherwise lawful commentary based upon the information then available to her.

Defendant therefore denies that expressions of confidence, defiance, or willingness to defend herself establish knowledge of falsity, reckless disregard, malicious intent, or conscious disregard of the law.

Defendant's statements concerning experience with patent, product, intellectual-property, marketing, and creator issues referred to practical professional experience developed over more than fifteen years as an entrepreneur, marketer, content creator, former marketing-agency owner, and professional involved with branding and product development. Defendant did not claim to be an attorney, patent attorney, or licensed legal professional.

**132.** Defendant acknowledges making statements substantially similar to those quoted to the extent accurately authenticated but denies Plaintiff's characterization or inference concerning their meaning or intent.

The statements reflected Defendant's unwillingness to be intimidated into silence by threatened litigation and her belief that she had a lawful right to continue speaking about a matter she considered important.

Defendant likewise denies that rhetorical references to “taking down corporations,” “no mercy,” or “dragging” constituted literal threats or admissions of unlawful conduct. Defendant used such language rhetorically in describing public criticism, advocacy, consumer accountability, and public pressure.

**133.** Defendant admits referring to herself as a “menace” but denies Plaintiff’s characterization or any implication that the statement constitutes an admission of threatening, harassing, unlawful, or criminal conduct.

Defendant’s use of the term “menace” was humorous, vague, and made in the context of social-media commentary and commonly used, trendy online language that was not intended to be understood literally. The statement did not identify any particular act, threat, crime, victim, or unlawful conduct.

Moreover, even if the term were interpreted literally rather than as humorous or rhetorical social-media language, describing oneself generally as a “menace” does not establish or constitute an admission that Defendant threatened Plaintiff, harassed Plaintiff, directed or encouraged threats against Plaintiff, committed a crime, or engaged in any other specific wrongful conduct alleged in the First Amended Complaint.

Defendant therefore denies any allegation or inference that her use of the term “menace,” standing alone, constitutes evidence or an admission of the conduct Plaintiff attributes to Defendant.

**134–137.** Defendant lacks sufficient knowledge to verify Plaintiff's calculations concerning views, likes, comments, reposts, sends, third-party content, or aggregate audience size and therefore denies the allegations. Defendant further denies that any content was created, repeated, or spread pursuant to a conspiracy or agreement, and denies responsibility for content independently created by third parties.

**138.** Defendant denies that her speech constituted incessant, obsessive, extreme, or outrageous conduct within the meaning of applicable law.

**139.** Defendant lacks sufficient knowledge concerning the complete scope of Plaintiff's posting activity and denies any implication that Plaintiff's characterization establishes Defendant's liability.

**140.** Defendant denies Plaintiff's characterization that her own content was necessarily nondefamatory, nondisparaging, or wholly mitigating. Defendant further alleges that Plaintiff's own continued publication and amplification of the controversy, including content and materials that continued drawing attention to the dispute, are relevant to causation and mitigation of claimed damages.

**141.** Defendant lacks sufficient knowledge concerning Plaintiff's treatment of Askew's identity and therefore denies the allegations as to Defendant.

**142.** Defendant admits discussing publicly available information and public-facing accounts but denies publishing private information for purposes of harassment, threatening Plaintiff, or directing unlawful conduct.

**143.** Defendant lacks sufficient knowledge concerning the number, source, identity, or authorship of the alleged third-party messages and threats. Defendant unequivocally denies instructing, requesting, encouraging, authorizing, coordinating, or ratifying death threats, threats of violence, sexual abuse, threats against Plaintiff's family, or abusive communications.

Defendant further incorporates the Court's September 15, 2025 ruling denying Plaintiff's request for an order to show cause, in which the Court concluded that the materials presented did not show that Defendant had harassed Plaintiff and did not establish, beyond Plaintiff's speculation, that Defendant encouraged others to do so.

**144.** Defendant lacks sufficient knowledge to verify the alleged number or nature of filtered comments and therefore denies the allegation.

**145.** Defendant denies directing followers to make knowingly false reports or reviews. Defendant admits discussing legitimate reporting mechanisms and explaining options consumers could independently choose to use if they believed misconduct warranted review. Defendant denies knowingly submitting, directing, coordinating, or encouraging false or fraudulent reports, threats, or unlawful harassment.

**146.** Defendant lacks sufficient knowledge concerning Plaintiff's alleged financial losses and denies that Defendant proximately caused the claimed losses.

**147.** Defendant lacks sufficient knowledge concerning the authorship and circumstances of the Facebook reviews and denies responsibility for independent reviews she did not write, direct, authorize, or control.

**148.** Denied. Defendant denies that she and Askew entered into any agreement or shared any goal of having Plaintiff's storefronts taken down through false reports, fraudulent complaints, or other unlawful means. Defendant admits that she publicly expressed the view that Plaintiff's store should be reviewed and, if it was selling counterfeit or infringing products, removed. Defendant denies any collaboration with Askew to accomplish that end through unlawful conduct.

**149.** Denied. Defendant denies participating in an unlawful smear campaign or attempting to force Plaintiff from the market through hate or harassment.

**150.** Defendant lacks sufficient knowledge concerning Plaintiff's alleged diagnosis of adjustment disorder, the timing or circumstances of that diagnosis, Plaintiff's prior mental-health history, the symptoms or conditions for which Plaintiff sought treatment, or the medical basis for attributing any alleged condition to Defendant's conduct, and therefore denies the allegation to the extent it attributes Plaintiff's alleged emotional or psychological injuries to Defendant. Defendant specifically denies that her conduct proximately caused Plaintiff's alleged adjustment disorder or other claimed mental-health injuries. Defendant further preserves all issues concerning causation, the timing and onset of Plaintiff's alleged symptoms, preexisting or independently existing conditions or stressors, alternative causes, and the extent to which any claimed emotional distress is attributable to Defendant rather than other circumstances, persons, events, or Plaintiff's own participation in and continued amplification of the underlying public controversy.

**151.** Defendant denies conducting a defamatory hate campaign, intending to destroy Plaintiff's business, directing threats or unlawful harassment, or causing the entirety of the public confusion and negative reaction Plaintiff attributes to Defendant and Askew.

Defendant specifically denies that any public confusion concerning Plaintiff or Elegance & Geekery LLC was created solely, or necessarily primarily, by Defendant's commentary.

Defendant observed public-facing inconsistencies concerning the identity and roles of persons associated with Plaintiff's company and product. Those materials included the use of a different woman as a public-facing representative whom Defendant initially believed to be Plaintiff, the public identification of Caleb in a development-related role, and other representations that Defendant perceived as inconsistent concerning who had invented, developed, or represented the product and company. Those apparent inconsistencies contributed to Defendant's own confusion and, in Defendant's view, were independently capable of contributing to confusion among members of the public.

Defendant further contends that Plaintiff herself publicly included race into aspects of the controversy. To the extent subsequent public discussion included criticism concerning race or accusations of racism, Defendant denies that all such reactions can properly be attributed to Defendant where Plaintiff's own public statements and participation in the controversy independently contributed to that discussion.

Defendant therefore denies that Plaintiff may attribute all public confusion, criticism, reputational consequences, or negative public reaction to Defendant's conduct and preserves all issues concerning Plaintiff's own public representations, statements, conduct, causation, and contribution to the development and amplification of the controversy.

**152.** Defendant lacks sufficient knowledge concerning benefits allegedly received by Askew or losses allegedly sustained by Plaintiff or Elegance & Geekery LLC and denies causation.

**153.** Denied. Defendant specifically denies coordinating “mass fraudulent reports.” Defendant distinguishes fraudulent reporting from good-faith discussion of reporting systems established by platforms to receive concerns about suspected merchant misconduct. Defendant did not control whether independent consumers chose to use those mechanisms or what platforms did in response.

**154.** Defendant lacks sufficient knowledge concerning the sources and causes of alleged messages, threats, commercial penalties, hate speech, customer loss, or reviews and denies that Defendant proximately caused such alleged harm.

**155.** Defendant lacks sufficient knowledge concerning the extent of Plaintiff's alleged personal reputational injury and denies causation.

**156.** Defendant lacks sufficient knowledge concerning alleged injury to Elegance & Geekery LLC's business reputation and denies causation. To the extent Plaintiff individually seeks damages sustained by a separate LLC, including lost business sales, profits, customers, relationships, goodwill, or platform losses, Defendant preserves her objection under Federal Rule of Civil Procedure 17 concerning the real party in interest.

**157.** Defendant lacks sufficient knowledge concerning Plaintiff's private emotional condition or therapy and denies directing the alleged threats or proximately causing the claimed injuries.

**158.** Defendant lacks sufficient knowledge concerning Plaintiff's platform changes and denies causation. Defendant further alleges that Plaintiff's own decisions concerning continued publication, amplification, moderation, or restriction of content may be relevant to causation and mitigation.

**159.** Defendant lacks sufficient knowledge concerning the identities of persons who sent the alleged emails or Etsy messages and denies sending or directing them.

**160.** Defendant lacks sufficient knowledge concerning Plaintiff's alleged loss of collaborators and denies causation. Defendant preserves her Rule 17 objection to the extent claimed losses belong to Elegance & Geekery LLC.

**161.** Defendant lacks sufficient knowledge concerning the total number or sources of reports against Plaintiff's accounts. Defendant does not recall personally submitting a Shopify report and denies knowingly submitting, directing, coordinating, or encouraging false or fraudulent reports. Defendant further denies controlling the independent decisions of consumers or the investigations and decisions of Shopify or other platforms.

**Claim One: Defamation**

**162.** Defendant admits publicly expressing opinions and beliefs concerning copying, product development, business conduct, threatened litigation, and consumer accountability but denies knowingly publishing false and actionable defamatory statements.

**163.** Denied. Defendant did not possess independent or private knowledge establishing the complete scope of Askew's intellectual-property rights and did not understand the absence of an issued patent to make every allegation or opinion concerning copying, imitation, appropriation, or other misconduct a “legal impossibility.”

**164.** Denied. Defendant denies actual malice, knowledge of falsity, reckless disregard, or intent to unlawfully injure Plaintiff.

**165.** Denied. Plaintiff is not entitled to punitive damages from Defendant.

**166.** Defendant lacks sufficient knowledge concerning the claimed damages exceeding $275,000 and denies liability and causation.

**Claim Two: Trade Defamation / Injurious Falsehood / Business Disparagement**

**167.** Defendant denies knowingly disseminating false statements concerning Elegance & Geekery LLC's goods or services. To the extent Defendant discussed suspected counterfeit or improper merchandise, she did so based upon concerns she genuinely held and in the context of consumer advocacy and platform reporting.

**168.** Denied. Defendant denies having full awareness that the absence of an issued patent made every use of the term "counterfeit" or every concern concerning copying legally or factually impossible.

**169.** Denied. Defendant denies actual malice, knowing falsity, reckless disregard, or intent to unlawfully injure Elegance & Geekery LLC.

**170.** Denied. Plaintiff is not entitled to punitive damages from Defendant.

**171.** Defendant lacks sufficient knowledge concerning the alleged damages exceeding $25,000, denies causation, and preserves her Rule 17 objection concerning damages belonging to the LLC.

**Claim Three: Tortious Interference**

**172.** Denied. Defendant denies tortiously interfering with Plaintiff's business relations or prospective economic advantage.

**173.** Defendant denies directing or submitting knowingly false complaints or reviews. Defendant's discussion of established reporting procedures reflected her belief that consumers who independently perceived misconduct could choose to seek platform review. Defendant does not recall personally submitting a Shopify report and denies knowingly submitting, directing, coordinating, or encouraging false or fraudulent reports.

**174.** Defendant denies any agreement or plan with Askew to unlawfully interfere with Plaintiff's business.

**175.** Defendant denies possessing the knowledge or intent attributed to her.

**176.** Defendant denies malice or an improper unlawful purpose.

**177.** Defendant denies that punitive damages are recoverable against her.

**178.** Defendant denies coordinating harassment, fraudulent reporting, or other wrongful means and denies proximate causation of Plaintiff's alleged losses.

**Claim Four: Civil Conspiracy**

**179.** Denied. Defendant unequivocally denies entering an agreement or conspiracy with Askew or anyone else to defame, harass, fraudulently report, or unlawfully injure Plaintiff. Defendant formed and expressed her own views based upon information available to her.

**180.** Defendant denies coordinated unlawful planning and denies liability for Plaintiff's alleged damages.

**Claim Five: Intentional Infliction of Emotional Distress**

**181.** Denied. Defendant denies engaging in extreme or outrageous conduct, intentionally or recklessly causing severe emotional distress, directing threats, or inciting unlawful harassment.

**182.** Defendant admits publicly discussing and criticizing Plaintiff and the controversy but denies that lawful public criticism, advocacy, sarcasm, hyperbole, or good-faith reporting constitutes unlawful harassment.

**183.** Defendant denies the alleged intent, recklessness, causation, and damages.

**Claim Six**

**184.** Defendant admits that Claim Six is asserted only against Defendant Askew and therefore requires no substantive response from Defendant Boyce.

**185–189.** These allegations concern a claim asserted only against Askew. No response is required from Defendant Boyce. To the extent a response is deemed required, Defendant lacks sufficient knowledge and denies the allegations.

**Claim Nine: Injunctive Relief**

**190.** Denied. Defendant denies that Plaintiff is entitled to the requested injunction and preserves all constitutional, statutory, and other objections to restrictions on protected speech.

**Claim Ten: Declaratory Relief**

**191.** This allegation concerns the intellectual-property rights of Askew. Defendant lacks sufficient knowledge to admit the requested declaration and denies that relief is properly entered against Defendant Boyce.

**192.** Denied.

**193.** Denied.

**Jury Demand and Prayer**

**194.** Defendant admits that Plaintiff demands a jury trial. Defendant likewise demands trial by jury on all issues so triable.

**195.** Denied.

**196.** Denied. Defendant further preserves her Rule 17 objection concerning damages belonging to Elegance & Geekery LLC.

**197.** Denied.

**198.** Denied.

**199.** Denied except to the extent costs or fees are independently authorized by applicable law.

**200.** Denied.

**201.** Denied.

**202.** Denied to the extent Plaintiff seeks relief against Defendant.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant pleads the following defenses without assuming any burden that applicable law places upon Plaintiff. Defendant reserves the right to amend these defenses as permitted by the Federal Rules of Civil Procedure and any scheduling order.

### First Defense: Failure to State a Claim and Failure to Establish Required Elements

Plaintiff bears the burden of establishing every required element of each claim, including actionable falsity, requisite fault, improper purpose or means where required, causation, damages, and any heightened showing required for punitive relief. Defendant denies that Plaintiff can establish those elements against Defendant.

Defendant denies that Plaintiff can establish those elements against Defendant. Claims Nine and Ten seek injunctive and declaratory relief, which are remedies rather than independent causes of action and which cannot stand if the underlying claims fail.

### Second Defense: Truth and Substantial Truth

To the extent challenged statements constituted factual assertions, Defendant asserts truth and substantial truth to the extent supported by the evidence. Minor inaccuracies that do not materially alter the substance or effect of an otherwise true statement do not establish the liability Plaintiff alleges.

**Third Defense: Opinion, Commentary, Rhetorical Hyperbole, Satire, and Speculation**

Many challenged statements were expressions of opinion, interpretation, rhetorical hyperbole, satire, sarcasm, speculation, or advocacy made in the context of a public online controversy.

Defendant expressly signaled uncertainty or opinion in relevant instances through language including “my guess” and “in my opinion.” Other statements, including “come outside,” “hate mob,” “menace,” “drag,” and similar provocative language, were used rhetorically rather than as literal admissions or threats.

Defendant asserts all constitutional and common-law protections applicable to protected opinion, fair comment and criticism, rhetorical hyperbole, satire, and speech concerning matters of public or consumer concern.

Defendant further asserts that her challenged statements addressed a matter of public concern and are protected under the First Amendment to the U.S. Constitution and Article I, Section 8 of the Oregon Constitution. Plaintiff bears the burden of proving actual falsity and, to the extent Plaintiff is a public or limited-purpose public figure, actual malice by clear and convincing evidence.

To the extent the evidence establishes that Plaintiff qualifies as a limited-purpose public figure with respect to the controversy at issue, Defendant asserts that the applicable actual-malice standard governs claims subject to that standard.

**Fourth Defense: Good Faith, Reasonable Grounds, Absence of Requisite Fault, and Lack of Pre-Suit Notice**

Defendant denies knowledge of falsity, reckless disregard for truth or falsity, or an intent to defame Plaintiff.

Defendant's commentary arose from publicly available information, social-media content, product and marketing materials, crowdfunding and product-development chronology, business representations, and Defendant's own observations and professional experience.

Public-facing materials appeared inconsistent to Defendant concerning who had invented or developed Plaintiff's product. Those apparent inconsistencies, together with the similarities and chronology Defendant perceived, contributed to Defendant's good-faith interpretation of the controversy.

Defendant's contemporaneous statements demonstrate that she believed she was acting lawfully and that she believed another person was being harmed. Her July 25 clarification further expressly rejected the interpretation that she had literally organized or sent a “hate mob.”

Defendant never received any pre-suit communication from Plaintiff identifying a particular statement Plaintiff contended was false, providing Defendant with evidence demonstrating that a statement was false, or requesting that Defendant retract, correct, or remove her content. Defendant is unaware of any attempted communication from Plaintiff that Defendant did not receive.

Had Defendant been presented with reliable evidence establishing that a material factual statement she made was false, Defendant would have reviewed that evidence and corrected, retracted, or removed the inaccurate statement as appropriate. Defendant did not knowingly continue publishing information after being presented with evidence establishing its falsity.

**Fifth Defense: Good-Faith Consumer Reporting and Qualified Privilege**

To the extent Plaintiff's defamation theory relies upon a communication Defendant herself made to a platform responsible for evaluating merchant conduct, Defendant asserts qualified or conditional privilege only to the extent applicable under Oregon law.

Oregon recognizes a qualified privilege for certain communications made to protect legitimate interests or on subjects of mutual concern between the speaker and recipient. Wallulis v. Dymowski, 323 Or. 337, 348–50 (1996). A qualified privilege is not categorical immunity and may be lost through abuse of the privileged occasion.

Defendant does not recall personally submitting a Shopify report concerning Plaintiff or Elegance & Geekery LLC. Defendant discussed Shopify's merchant-reporting mechanism and explained options available to consumers who independently believed merchant conduct warranted platform review. Defendant did not control whether any consumer submitted a report, what any consumer stated, or Shopify's independent investigation and decision-making.

To the extent Oregon's qualified-privilege doctrine applies to any good-faith communication Defendant herself made to a platform responsible for evaluating merchant conduct, Defendant asserts that privilege and denies abusing any privileged occasion through knowing falsity or an improper purpose unrelated to the privilege.

**Sixth Defense: Lack of Knowledge or Reckless Disregard**

Defendant did not believe that her material factual statements were false and did not act with reckless disregard as to their truth or falsity.

Defendant's statements concerning TikTok moderation illustrate the distinction. Defendant drew an inference based upon her own substantial experience using the platform and what she personally observed. Even if discovery establishes that a particular inference was technically mistaken, an erroneous good-faith inference does not by itself establish that

Defendant knowingly fabricated the statement or consciously disregarded information demonstrating its falsity.

The same principle applies to Defendant's interpretation of public product, marketing, development, and business information. Defendant denies manufacturing facts she knew to be false.

**Seventh Defense: Legitimate Consumer Reporting and Lack of Wrongful Interference**

Defendant denies that good-faith discussion of an established merchant-reporting system, including explaining options consumers could independently choose to use if they believed misconduct warranted review, constitutes wrongful interference.

Defendant did not control Shopify, Plaintiff's other platforms, their investigations, or their ultimate decisions. Defendant did not possess authority to suspend Plaintiff's store, remove products, terminate accounts, withhold funds, or impose commercial sanctions.

Defendant does not recall personally submitting a Shopify report. Defendant denies instructing anyone to fabricate facts, impersonate customers, submit knowingly false reports, or otherwise misuse reporting systems. To the extent independent third parties submitted reports, Defendant denies responsibility for false or unlawful conduct independently undertaken by them.

**Eighth Defense: No Unlawful Agreement or Civil Conspiracy**

Defendant independently investigated and commented upon a public controversy.

Defendant denies entering any agreement with Askew or another person to commit a tort, fraudulently report Plaintiff, harass Plaintiff, or unlawfully damage Plaintiff's business.

Parallel or overlapping public commentary does not establish an unlawful agreement.

Civil conspiracy is not an independent tort under Oregon law but a theory by which liability for underlying tortious conduct may, under appropriate circumstances, be attributed to persons acting in concert. Accordingly, Defendant asserts that Plaintiff cannot establish liability against Defendant under Claim Four in the absence of an actionable underlying tort and the additional facts necessary to establish joint liability for that tort.

**Ninth Defense: No Intentional Infliction of Emotional Distress**

Defendant denies intending to cause Plaintiff severe emotional distress and denies engaging in conduct meeting the applicable standard for intentional infliction of emotional distress.

Defendant's contemporaneous explanation was that she became involved because she believed she had witnessed another person being harmed and unfairly portrayed as an aggressor. Defendant's purpose was advocacy and accountability, not the infliction of emotional injury.

**Tenth Defense: Independent Third-Party Conduct and Lack of Causation**

Defendant denies liability for independent threats, abusive messages, reviews, posts, reports, or other conduct by persons whom Defendant did not direct, request, authorize, control, or ratify.

Plaintiff previously sought an order to show cause based upon allegations concerning Defendant's online activity. In ECF No. 77, the Court denied the request and concluded that the submitted materials did not show Defendant had harassed Plaintiff and did not establish, beyond Plaintiff's speculation, that Defendant encouraged others to do so.

Defendant denies that the independent actions of unidentified third parties may be attributed to Defendant merely because those persons viewed, agreed with, commented upon, or reacted to Defendant's speech.

Defendant further asserts that any damages properly attributable to independent third parties or others must be apportioned accordingly, and that Plaintiff may not recover duplicative damages from Defendant for harm caused by another person's independent conduct.

**Eleventh Defense: Failure of Causation and Proof of Damages**

Defendant denies that Plaintiff can establish that Defendant proximately caused the personal, reputational, emotional, commercial, or economic injuries alleged.

The controversy involved numerous creators, viewers, platforms, posts, independent actors, and preexisting public content. Plaintiff must establish the source and causation of claimed damages rather than attributing all public reaction to Defendant.

**Twelfth Defense: Plaintiff's Own Publication, Amplification, and Failure to Mitigate**

Defendant asserts that Plaintiff's own conduct is relevant to causation and mitigation to the extent established through discovery.

Defendant contends that Plaintiff continued publishing content concerning the controversy, retained or permitted public engagement that further circulated the dispute, and publicly amplified litigation and related materials while simultaneously attributing the continuing reach of the controversy exclusively to Defendant.

Defendant does not contend that Plaintiff was required to surrender lawful speech or business activity. Defendant asserts only that damages may not be attributed to Defendant to the extent they resulted from Plaintiff's own independent publication, amplification, or unreasonable failure to mitigate avoidable harm.

**Thirteenth Defense: Real Party in Interest and LLC Damages**

Plaintiff cannot recover individually for injuries belonging to Elegance & Geekery LLC, including lost sales, profits, customers, goodwill, and business relationships. The LLC is not a party and may appear only through licensed counsel. Fed. R. Civ. P. 17(a).

Defendant does not apply this defense to personal injuries or damages legally belonging to Owen individually.

**Fourteenth Defense: No Basis for Punitive Damages**

Defendant denies acting with malice or reckless and outrageous indifference to a highly unreasonable risk of harm.

Oregon law provides that punitive damages are not recoverable absent clear and convincing evidence of malice or reckless and outrageous indifference to a highly unreasonable risk of harm coupled with conscious indifference to the health, safety, and welfare of others. ORS 31.730(1).

Defendant's good-faith beliefs, contemporaneous explanation of her purpose, subsequent clarification of ambiguous rhetoric, observational bases for her conclusions, and use of established reporting procedures are inconsistent with Plaintiff's characterization of Defendant as knowingly manufacturing falsehoods solely to inflict unlawful harm.

**Fifteenth Defense: Limitations on Injunctive Relief Affecting Speech**

Plaintiff's requested injunction would restrict future speech and continued availability of existing speech. Defendant preserves all constitutional and other objections to prior restraints, overbreadth, vagueness, and restrictions upon protected opinion, criticism, advocacy, satire, and lawful discussion of public judicial proceedings.

Defendant further incorporates the Court's prior ruling declining to impose the broader speech restrictions previously requested by Plaintiff.

Defendant further asserts that Plaintiff has an adequate remedy at law, has not shown irreparable harm justifying a prior restraint on speech, and that any injunctive relief restraining future speech would constitute an unconstitutional prior restraint absent a final adjudication of falsity.

**Sixteenth Defense: Oregon Anti-SLAPP Protections and Preserved Factual Challenge**

Defendant incorporates her special motion to strike, ECF No. 81, and the Court's July 28, 2026 ruling, ECF No. 109.

Defendant acknowledges that the Court denied the legal-sufficiency portions of the anti-SLAPP motion. Defendant specifically preserves only the factual-sufficiency challenge that the Court determined was premature because discovery had not occurred and denied with leave to renew after the close of discovery.

That preserved challenge includes factual disputes concerning alleged true threats or harassment, causation of independent third-party conduct, Plaintiff's characterization of Defendant's statements, Defendant's consumer and public-interest concerns, and the contextual nature of Defendant's rhetorical hyperbole, opinion, advocacy, and protected expression.

**Seventeenth Defense: Protected Public Commentary and Prior Contempt Proceedings**

Plaintiff has repeatedly sought to characterize Defendant's public commentary concerning this litigation and the underlying controversy as harassment or prohibited conduct.

Plaintiff previously sought contempt or show-cause relief concerning Defendant's social-media activity. The Court denied the earlier request in ECF No. 19 on procedural grounds and subsequently denied Plaintiff's show-cause request in ECF No. 77. In ECF No. 77, the Court found the submitted evidence did not show Defendant had harassed Plaintiff and did not establish, beyond Plaintiff's speculation, that Defendant had encouraged others to do so.

Defendant denies that criticism of Plaintiff, commentary concerning public litigation, mockery, expressions of confidence concerning the outcome, or other lawful public speech establishes that Defendant directed unlawful harassment.

**Eighteenth Defense: Selective Targeting and Defendant's Contemporaneous Understanding**

Defendant contends that numerous independent creators publicly discussed the controversy, including creators who were not Black and creators over whom Defendant exercised no control.

Defendant contemporaneously questioned why Plaintiff was directing legal pressure toward Askew and involving Defendant while numerous other creators had also discussed or responded to the controversy.

Defendant does not plead discriminatory or retaliatory motive as an established fact. Defendant preserves the factual issue as relevant to Plaintiff's characterization of Defendant's

purpose, the broader context of the controversy, causation, and any anti-SLAPP factual challenge supported by discovery.

**Nineteenth Defense: No Entitlement to Claimed Relief**

Plaintiff is not entitled to compensatory, consequential, punitive, statutory, treble, declaratory, injunctive, attorney-fee, or other relief against Defendant except to the extent independently established and authorized by applicable law.

Defendant reserves the right to seek leave to amend to assert any counterclaim supported by facts obtained through discovery and applicable law, including any claim that accrues only upon the occurrence of a legally required future event.

**Twentieth Defense: Immunity Under 47 U.S.C. § 230(c)(1)**

To the extent any claim is based on Defendant's republication, reposting, or sharing of statements, reviews, or content originally created by Askew or other third parties, Defendant asserts immunity under 47 U.S.C. § 230(c)(1) as a user of an interactive computer service who is not the information content provider of that third-party content.

**TWENTY FIRST DEFENSE: Individualized Causation, Allocation of Damages, and No Duplicative Recovery**

Plaintiff may recover from Defendant only those damages, if any, that Plaintiff proves were legally and proximately caused by conduct attributable to Defendant. Defendant denies that the alleged conduct of Defendant and Askew was identical, occurred at identical times, reached identical audiences, produced identical effects, or caused identical damages.

To the extent Plaintiff seeks to aggregate alleged harm arising from the separate statements, publications, communications, or conduct of Defendant, Askew, independent third parties, or Plaintiff herself, Defendant denies that all such alleged damages may be attributed to Defendant without proof establishing the causal relationship between Defendant's own conduct and each category of damages claimed.

Defendant further denies that Plaintiff is entitled to obtain duplicative recovery for the same injury or loss by attributing the same alleged damages in full to multiple defendants or through multiple overlapping theories of recovery. Any award against Defendant must be limited to damages legally attributable to Defendant's own actionable conduct and must account for any applicable allocation, apportionment, reduction, credit, or other limitation necessary to prevent duplicative recovery.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Kiandria Demone Boyce respectfully requests that the Court:

A. Enter judgment in Defendant's favor on Plaintiff's claims against her and dismiss those claims with prejudice;

B. Deny Plaintiff's requests for compensatory, consequential, punitive, statutory, treble, declaratory, and additional injunctive relief against Defendant;

C. Determine, pursuant to Fed. R. Civ. P. 17(a), the proper real party in interest for damages allegedly sustained by Elegance & Geekery LLC;

D. Preserve Defendant's right, consistent with ECF No. 109, to renew the factual-sufficiency portion of her Oregon anti-SLAPP challenge following discovery;

E. Award Defendant any costs recoverable under applicable law; and

F. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Defendant demands trial by jury on all issues so triable.

Dated: September 28, 2026.

Respectfully submitted,

/s/ Kiandria Demone Boyce
Kiandria Demone Boyce
Defendant, Self-Represented
2146 Roswell Rd, Suite 108
Marietta, GA 30062
Telephone: 404-957-9984
Email: kboyce6977@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 28, 2026, I electronically filed the foregoing Defendant Kiandria Demone Boyce's Answer to First Amended Complaint and Affirmative and Other Defenses using the Court's CM/ECF system, which provides electronic notice to Plaintiff Kursten Owen and Defendant Breana Askew, the other self-represented parties in this action.

/s/ Kiandria Demone Boyce
Kiandria Demone Boyce