Breana Askew
Email: breanaaskew2@gmail.com
Defendant, Self-Represented

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| KURSTEN OWEN, individually and d/b/a Elegance & Geekery LLC,<br><br>Plaintiff,<br><br>v.<br><br>BREANA ASKEW, individually and d/b/a Breromi; KIANDRIA DEMONE BOYCE; and DOES 1-100,<br><br>Defendants. | Case No. 6:25-cv-01272-AA<br><br>**DEFENDANT BREANA ASKEW'S ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** |

**ANSWER**

Defendant Breana Askew ("Askew"), self-represented, answers Plaintiff's First Amended Complaint ("FAC"). Each numbered paragraph below responds to the same-numbered paragraph of the FAC. Any allegation not expressly admitted, including in headings, unnumbered text, and legal conclusions, is denied. Where Askew states that she "lacks knowledge," she lacks knowledge or information sufficient to form a belief about the truth of the allegation, and it is therefore denied. Askew denies that the statements or conduct of Boyce or any other third party are attributable to her. Elegance & Geekery LLC is a separate legal entity and is not separately named as a plaintiff. Askew's cease-and-desist was directed to Elegance & Geekery's business. Askew denies that alleged injuries belonging to the LLC are recoverable by Plaintiff individually.

**1.** Admit that the parties are citizens of different states: Askew is a citizen of Georgia and, on information and belief, Plaintiff is a citizen of Oregon and Boyce is a citizen of Georgia. Deny that Plaintiff is entitled to any recovery.

**2.** Deny. Askew preserves her objection to personal jurisdiction.

**3.** Admit that Elegance & Geekery LLC is a business licensed in Oregon. Askew lacks knowledge of the remaining allegations and therefore denies them.

**4.** Admit that Askew is an individual and that, at all times relevant to the FAC, she did business as Breromi as a sole proprietor. Deny the remaining allegations.

**5.** Admit that the listed handles are Askew's, except TikTok @Brebreromii, which Askew denies is hers.

**6.** Admit, on information and belief, that Boyce resides in Georgia. Askew lacks knowledge of the remaining allegations and therefore denies them.

**7.** Admit that Boyce's Threads handle is @kiandria. Askew and Boyce do not follow each other on TikTok or Instagram, and Askew lacks knowledge of the remaining allegations and therefore denies them.

**8.** Askew lacks knowledge of these allegations and therefore denies them.

**9.** Admit that Elegance & Geekery LLC operates an online business selling accessories. Askew lacks knowledge of the remaining allegations and therefore denies them.

**10.** Admit that Askew publicly stated her belief that Hair Hoop copied her product. Deny the remaining allegations.

**11.** Deny.

**12.** Admit that for approximately two days in July 2025 Askew encouraged members of the public to file complaints with Shopify reporting the Elegance & Geekery storefront as selling counterfeit products, and encouraged followers to report social-media accounts spreading misinformation. Askew did not personally submit a Shopify report. Deny the remaining allegations.

**13.** Admit that no patent has issued to Askew. Deny the remaining allegations.

**14.** Admit that the referenced application is unpublished. Deny the remaining allegations.

**15.** Admit.

**16.** Admit that Askew has no federal trade-dress registration. Deny the remaining allegations.

**17.** Deny.

**18.** Admit that Askew described her product as "patented" in certain early communications. As a first-time inventor, she used the word imprecisely to refer to her pending application and corrected it to "patent pending." Deny the remaining allegations.

**19.** Admit that, beginning in or around October 2024, Askew stated in replies to social-media comments that her product was "patent pending." At the time, Askew believed in good faith that "patent pending" was the term used while preparing a patent application. Deny that Askew intended to deceive anyone, and deny the remaining allegations.

**20.** Admit that Askew's July 2025 cease-and-desist to Elegance & Geekery stated that a patent application had been filed in June 2025. Deny the remaining allegations.

**21.** Deny. Askew's use of "patented" was a good-faith error that she corrected after learning the proper terminology. Elegance & Geekery's own July 16, 2025 email demanded that Askew remove her ™ symbols, although the ™ symbol may lawfully be used with any claimed mark, which shows that intellectual-property terminology is commonly misunderstood.

**22.** Admit that on or about July 14, 2025, Askew was tagged in content showing Hair Hoop. Deny the remaining allegations.

**23.** Admit that Askew believed Hair Hoop copied Hair Clique. Deny the remaining allegations.

**24.** Deny.

**25.** Deny. Elegance & Geekery's first Hair Hoop, a common 3D-printed donut design rather than a cosplay piece, was marketed as a low-tension hair accessory using hair-gripping prongs set into insertion slots, features Hair Clique already used.

**26–27.** Askew lacks knowledge of these allegations and therefore denies them.

**28.** Admit that Plaintiff has publicly stated that she was furloughed or laid off. Askew lacks knowledge of the remaining allegations and therefore denies them.

**29–31.** Askew lacks knowledge of the alleged private design, modeling, and testing and therefore denies those allegations. Deny the remaining allegations.

**32–33.** Deny.

**34.** Admit that Askew posted comments substantially similar to those quoted. Deny the remaining allegations.

**35.** Admit that on July 14, 2025, at approximately 9:49 p.m. Pacific Time (12:49 a.m. Eastern Time on July 15), Askew emailed a cease-and-desist addressed to "Elegance and Geekery" at support@eleganceandgeekery.com, containing language substantially similar to that quoted. Deny the remaining allegations.

**36.** Admit that the cease-and-desist did not attach Askew's unpublished patent application. Deny the remaining allegations.

**37–38.** Admit that Askew made statements substantially similar to those quoted. Deny the remaining allegations.

**39.** Admit that Askew publicly discussed the dispute beginning July 14, 2025, and stated that her cease-and-desist had been ignored because there was no initial response to it. Deny the remaining allegations.

**40.** Admit that Askew posted a video containing language substantially similar to that quoted. Deny the remaining allegations.

**41.** Admit that Askew made the quoted statement. Deny that it acknowledged any obvious difference between the designs. In the same sentence, Askew stated, "I made mine for all hair type" (FAC Ex. B); Hair Hoop applied the same concept to one hair type. Deny the remaining allegations.

**42.** Admit that Askew made a Threads post substantially similar to that quoted. Deny the remaining allegations.

**43.** Admit that on or about July 14, 2025, Askew posted language substantially similar to that quoted encouraging followers to report Elegance & Geekery's Instagram account. Deny the remaining allegations.

**44.** Admit that, in response to Boyce's public request, Askew identified Elegance & Geekery's public account handle. Deny the remaining allegations.

**45–47.** Askew lacks knowledge of these allegations and therefore denies them.

**48.** Admit that a video was published on Elegance & Geekery's account on July 15, 2025, containing language substantially similar to that quoted. Deny the remaining allegations.

**49.** Askew lacks knowledge of these allegations and therefore denies them.

**50.** Askew lacks knowledge of the view count of Boyce's post and therefore denies it. Deny that Askew caused the dispute's virality. Askew's own response videos initially received far fewer views than Elegance & Geekery's July 15, 2025 video, and much of the dispute's reach came from third-party commentary (see FAC ¶ 136). Deny the remaining allegations.

**51.** Askew lacks knowledge of these allegations and therefore denies them.

**52.** Askew lacks knowledge of Boyce's comments and therefore denies those allegations. Admit that Askew asked supporters to defend her in public comments, because she was receiving a large volume of hateful comments. Deny the remaining allegations.

**53–54.** Askew lacks knowledge of these allegations and therefore denies them.

**55.** Admit that on July 15, 2025, Askew posted language substantially similar to that quoted, including links to Shopify's reporting page and the Elegance & Geekery storefront. Deny the remaining allegations.

**56–57.** Askew lacks knowledge of these allegations and therefore denies them.

**58.** Deny.

**59–61.** Askew lacks knowledge of these allegations and therefore denies them.

**62.** Admit that Askew asked followers to defend her in comments and linked public content. Deny the remaining allegations.

**63.** Admit that Askew replied to a comment with language substantially similar to that quoted and later changed her wording to "patent pending." Deny the remaining allegations.

**64.** Deny.

**65.** Admit that Askew made statements substantially similar to those quoted. Deny the remaining allegations.

**66.** Admit that Askew made a post substantially similar to that quoted. Deny the remaining allegations.

**67.** Admit that Askew emailed her cease-and-desist at approximately 9:49 p.m. Pacific Time on July 14, 2025, requesting a written response within ten business days. Deny the remaining allegations.

**68.** Admit that Boyce made the quoted statement. Deny that Askew sent or directed any mob. Askew lacks knowledge of the remaining allegations and therefore denies them.

**69.** Askew lacks knowledge of these allegations and therefore denies them.

**70.** Admit that Askew reposted third-party content about the controversy, stated that race was relevant, and asked others to repost it. Deny the remaining allegations.

**71.** Admit that Askew posted language substantially similar to that quoted and asked supporters to defend her and share her video. Deny the remaining allegations.

**72.** Admit that Askew made a post substantially similar to "you are not a small creator you are a thief." Deny the remaining allegations.

**73.** Admit that Askew stated that race was relevant and that the woman who was the public face of the brand, whom Askew then believed to be the creator, was a white woman attempting to claim her invention. Askew stated that view because of her belief in the history of more privileged people claiming the inventions of minorities. Admit that Askew discussed a trademark application. Deny the remaining allegations.

**74.** Admit that Askew displayed a communication she understood to concern a trademark matter. Deny the remaining allegations.

**75.** Admit that Askew stated in substance that the person in Elegance & Geekery's video was saying the design was based on a picture from 2021. Deny the remaining allegations.

**76.** Admit that Askew reposted a response, requested exposure, and discussed racist comments. Deny the remaining allegations.

**77.** Admit that, after receiving communications indicating that someone was attempting to file for the "Magnetic Hair Clip" mark from her abandoned application, Askew publicly questioned who was doing so. Deny the remaining allegations.

**78.** Askew lacks knowledge of the allegations concerning Boyce and therefore denies them. Deny the remaining allegations.

**79.** Askew lacks knowledge of these allegations and therefore denies them.

**80.** Admit that Askew posted language substantially similar to that quoted. Deny the remaining allegations.

**81–83.** Askew lacks knowledge of these allegations and therefore denies them.

**84.** Admit that a third party posted videos discussing similarities between the parties' products and marketing. Deny that the similarities were limited to those listed. Askew lacks knowledge of the remaining allegations and therefore denies them.

**85.** Admit that Askew discussed perceived similarities in marketing and presentation. Deny the remaining allegations.

**86.** Askew lacks knowledge of these allegations and therefore denies them.

**87.** Admit that on July 16, 2025, correspondence signed "Kursten Owen, CEO" was sent to Askew from Elegance & Geekery's support email address, containing language substantially similar to that quoted. Deny the remaining allegations.

**88.** Admit that Askew emailed her patent application number to Elegance & Geekery's support address and that the application was unpublished. Deny the remaining allegations.

**89.** Deny. Elegance & Geekery's own email of July 16, 2025 stated that "it seems that you indeed have filed a patent application."

**90–91.** Askew lacks knowledge of these allegations and therefore denies them.

**92.** Admit that Elegance & Geekery's correspondence proposed mutual removal of content and that the parties discussed a private resolution. Deny the remaining allegations.

**93.** Admit that on July 16, 2025, an email from Elegance & Geekery's support address contained the quoted language, sent after Askew stated that she was not responsible for third parties' statements and would not comment under their posts. The same email also stated that Askew would be sued absent that resolution. Deny the remaining allegations.

**94.** Admit that, in a private email to Elegance & Geekery, Askew rejected the proposed resolution, stated that she intended to pursue legal action, and characterized aspects of Elegance & Geekery's demands as blackmail. Deny that Askew publicly accused Plaintiff of blackmail. Deny the remaining allegations.

**95.** Deny that Askew publicly accused Plaintiff of blackmail. Askew lacks knowledge of the remaining allegations and therefore denies them.

**96–97.** Askew lacks knowledge of these allegations and therefore denies them.

**98.** Admit that on July 16, 2025, Askew posted a screenshot from USPTO Patent Center showing her filed application and asked supporters to share it in the comments. Askew posted it in response to Elegance & Geekery's video of the same day stating that no evidence of a patent or patent application had been found (FAC Ex. K, Response #3). The screenshot was accurate: Elegance & Geekery confirmed by email that evening that Askew had filed a patent application (FAC Ex. A). Deny that the post misled the public. Deny the remaining allegations.

**99.** Deny.

**100.** Admit that Askew requested GoFundMe support for legal expenses and stated her belief that her invention had been copied. Deny the remaining allegations.

**101.** Admit that Askew created the GoFundMe and made statements substantially similar to those quoted. Deny the remaining allegations.

**102.** Admit that Boyce posted language substantially similar to that quoted, encouraging support for Askew's legal representation. Boyce's descriptions and interpretations were her own. Deny the remaining allegations.

**103.** Deny that Boyce directed Askew to create the GoFundMe. The decision to create the GoFundMe was Askew's own, made after Elegance & Geekery threatened a lawsuit, to fund legal counsel, including for her patent and trademark filings and her defense against that threatened lawsuit. Deny the remaining allegations.

**104.** Admit that the GoFundMe has raised more than $13,179 and that Askew has used the funds for legal costs. Deny the remaining allegations.

**105.** Askew lacks knowledge of these allegations and therefore denies them.

**106.** Deny. Askew did not make or direct the quoted comment. In the public discussion, words such as "stolen" and "theft" expressed opinions about the fairness of copying another creator's product; they were not literal accusations of a crime. Askew's cease-and-desist letter stated that she reserved the right to pursue legal remedies upon issuance of her patent (FAC Ex. A).

**107.** Askew lacks knowledge of these allegations and therefore denies them.

**108.** Admit that the GoFundMe discussed potential trade-dress infringement and similarities in product presentation and marketing. Deny the remaining allegations.

**109.** Admit that Askew has no federal trade-dress registration. Deny the remaining allegations.

**110–111.** Deny.

**112.** Deny.

**113.** Deny that Askew claimed trade dress in the magnetic aspects of her products. At the time, Askew believed trade dress might be relevant to the dispute; she has not asserted any trade-dress claim. The remaining allegations are legal conclusions to which no response is required; to the extent a response is required, deny.

**114–115.** Deny.

**116–119.** Askew lacks knowledge of these allegations and therefore denies them.

**120.** Admit that Boyce made the quoted statement. Deny that Askew sent or directed any mob. Askew lacks knowledge of the remaining allegations and therefore denies them.

**121–126.** Askew lacks knowledge of these allegations and therefore denies them.

**127.** Admit that Askew reposted third-party content about the controversy. Deny the remaining allegations.

**128–133.** Askew lacks knowledge of these allegations and therefore denies them.

**134.** After reasonable inquiry, Askew lacks knowledge of the aggregate figures alleged, which combine multiple posts, some of which were deleted, and therefore denies them. Deny the remaining allegations.

**135–136.** Askew lacks knowledge of these allegations and therefore denies them.

**137–138.** Deny.

**139.** Askew lacks knowledge of the number of videos alleged and therefore denies it. Deny the remaining allegations.

**140.** Deny.

**141.** Admit that, after viewers had already tagged Askew in the comments on Elegance & Geekery's videos, Askew commented and then quickly blocked the account. Deny that this revealed a concealed identity; Askew's brand was already publicly known. Askew lacks knowledge of how the videos were edited and therefore denies those allegations. Deny the remaining allegations.

**142.** Admit that Askew directed viewers to public content. Deny the remaining allegations.

**143.** Askew lacks knowledge of these allegations and therefore denies them. Deny that Askew directed or encouraged any threats.

**144.** Askew lacks knowledge of these allegations and therefore denies them.

**145.** Admit that Askew encouraged Shopify complaints as stated in response to Paragraph 12. Deny the remaining allegations.

**146.** Deny.

**147.** Askew lacks knowledge of the Facebook review statistics and therefore denies them. Deny the remaining allegations.

**148.** Admit that Askew encouraged Shopify complaints as stated in response to Paragraph 12. Deny the remaining allegations.

**149–151.** Deny.

**152.** Admit that some members of the public supported Breromi. Deny the remaining allegations.

**153.** Admit that Askew encouraged Shopify complaints as stated in response to Paragraph 12. Askew did not encourage reports to Etsy. Elegance & Geekery's Shopify store remained open until Elegance & Geekery itself stopped processing orders and posted a notice citing this litigation, and its Etsy shop remained open. Deny the remaining allegations.

**154.** Askew lacks knowledge of the alleged volume of platform, customer, and review activity and therefore denies it. Deny the remaining allegations.

**155–156.** Deny.

**157.** Askew lacks knowledge of Plaintiff's alleged anguish, therapy, and threats and therefore denies those allegations. Deny the remaining allegations.

**158.** Askew lacks knowledge of the account settings alleged and therefore denies those allegations. Deny the remaining allegations.

**159.** Askew lacks knowledge of these allegations and therefore denies them. Deny that Askew sent, directed, or authorized any such emails or messages.

**160.** Askew lacks knowledge of the alleged lost collaborations and therefore denies those allegations. Deny the remaining allegations.

**161.** Admit that Askew encouraged Shopify complaints as stated in response to Paragraph 12. Deny the remaining allegations.

**162.** Deny.

**163.** Admit that no patent has issued. Deny that the absence of an issued patent makes copying impossible as a matter of fact, and deny the remaining allegations.

**164–167.** Deny.

**168.** Admit that no patent has issued. Deny that the absence of an issued patent makes copying impossible as a matter of fact, and deny the remaining allegations.

**169–172.** Deny.

**173–174.** Admit that Askew encouraged Shopify complaints as stated in response to Paragraph 12. Deny the remaining allegations.

**175.** Admit that no patent has issued. Deny that the absence of an issued patent makes copying impossible as a matter of fact, and deny the remaining allegations.

**176–182.** Deny.

**183.** Askew lacks knowledge of Plaintiff's diagnoses and treatment and therefore denies those allegations. Deny the remaining allegations.

**184.** Admit that Plaintiff asserts Claim Six against Askew only. Deny the remaining allegations.

**185.** Deny.

**186.** Admit that Askew at times described her product as "patented" before correcting it to "patent pending." Deny the remaining allegations.

**187.** Admit that Askew raised funds through GoFundMe for legal expenses. Deny the remaining allegations.

**188–189.** Deny.

**Claims 7 and 8**

Plaintiff removed Claim Seven (Oregon Unlawful Trade Practices Act) and Claim Eight (Negligence) from the First Amended Complaint. (ECF No. 97.) No response is required. To the extent a response is required, Askew denies those allegations.

**190–193.** Deny.

**194.** Admit that Plaintiff demands a jury. Askew also demands a jury on all issues so triable.

**195–202.** Deny that Plaintiff is entitled to any of the relief requested.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that she would not otherwise bear, Askew asserts the following defenses:

### FIRST DEFENSE

### (Failure to State a Claim)

The FAC fails, in whole or in part, to state a claim upon which relief can be granted, including because civil conspiracy and injunctive relief are not independent claims.

### SECOND DEFENSE

### (Truth and Substantial Truth)

Plaintiff's claims are barred to the extent the challenged statements were true or substantially true, including statements about Askew's product development and pending patent application and, on information and belief, the Elegance & Geekery storefront's sale of unlicensed third-party character items and copies of other creators' designs.

### THIRD DEFENSE

### (Opinion, Rhetorical Hyperbole, and Nonactionable Expression)

Plaintiff's claims are barred to the extent the challenged statements were opinion, rhetorical hyperbole, or opinion based on disclosed facts, including colloquial terms such as "thief," "stealing," and "rip off," used in a heated public dispute.

### FOURTH DEFENSE

### (Statements Not Of and Concerning Owen)

Plaintiff's defamation claims are barred to the extent the challenged statements were not reasonably understood to refer to Kursten Owen. Askew's statements were directed at Elegance & Geekery LLC, its products, its storefront, and the person Askew believed to be the product's creator, whom she did not perceive to be Kursten Owen. The Hair Hoop videos showed only hair

and hands, not a face. Askew, like other viewers, assumed the product's creator was the woman who was the public face of the Elegance & Geekery brand, who is not Owen; the FAC alleges that the woman Boyce used as her profile picture, whom Boyce called "likely just an influencer or affiliate," is one of Plaintiff's employees (FAC ¶ 78). Plaintiff alleges that Boyce's post was the first public identification of her by name (FAC ¶ 78). When Askew made her public statements of July 14 and 15, 2025, she believed the creator of Hair Hoop was the woman who appeared in Elegance & Geekery's advertisements, whom Askew did not perceive to be Kursten Owen.

**FIFTH DEFENSE**

**(Lack of Requisite Fault)**

Askew denies acting with knowledge of falsity, actual malice, reckless disregard, negligence, or any other degree of fault required for Plaintiff's respective claims.

**SIXTH DEFENSE**

**(Lack of Causation / Independent Third-Party Conduct)**

Plaintiff's claimed injuries resulted, in whole or in part, from independent causes, including the conduct of third parties and platforms and Elegance & Geekery's own July 15, 2025 video. Askew is responsible only for her own statements, not for the statements or conduct of any other person. By the FAC's own figures, content by persons other than Askew received far more views than Askew's content (compare FAC ¶ 134 with FAC ¶ 136).

**SEVENTH DEFENSE**

**(Failure to Prove Recoverable Damages)**

Plaintiff may recover only damages proven with the certainty required by law and proximately attributable to actionable conduct of Askew. Askew denies that gross sales, projected future sales, generalized loss of goodwill, or unsupported future opportunities establish recoverable damages. Plaintiff must prove that Askew's own statements, rather than the statements of Boyce or other third parties, caused injury to Plaintiff personally, as distinct from injury to Elegance & Geekery LLC.

**EIGHTH DEFENSE**

**(Failure to Mitigate)**

Any recovery must be reduced to the extent Plaintiff failed to mitigate her damages, including by voluntarily stopping sales through the storefront.

**NINTH DEFENSE**

**(No Actionable Tortious Interference)**

Plaintiff cannot recover for tortious interference absent proof of a qualifying economic relationship, intentional interference by a third party, improper means or purpose, causation, and damages. Askew denies those requirements are satisfied.

**TENTH DEFENSE**

**(No Unlawful Conspiracy)**

Askew made no agreement with Boyce or anyone else to accomplish an unlawful purpose. Askew and Boyce did not know each other personally before this dispute; that both live in Georgia is a coincidence. On information and belief, Boyce acted on her own initiative after seeing the public dispute online. Boyce stated, "I do not speak on her behalf" (FAC ¶ 91). Civil conspiracy is not an independent claim under Oregon law and fails with the underlying claims.

**ELEVENTH DEFENSE**

**(Lanham Act Failure)**

The Lanham Act claim fails because the challenged statements were not commercial advertising or promotion; because a GoFundMe request for legal costs is not commercial speech; to the extent it rests on statements about whether a product is patented, patent pending, or original, because those statements concern intangible properties, not the "nature, characteristics, [or] qualities" of goods under 15 U.S.C. § 1125(a)(1)(B); and because any commercial injury belongs to Elegance & Geekery LLC, a non-party.

**TWELFTH DEFENSE**

**(Injunctive Relief Is a Remedy)**

Injunctive relief is a remedy, not a claim, and depends on a viable underlying claim. An injunction against future speech would be an unconstitutional prior restraint.

**THIRTEENTH DEFENSE**

**(Preservation of Personal-Jurisdiction Objection)**

Askew preserves her objection to personal jurisdiction, which the Court denied, and files this Answer without waiving it.

**FOURTEENTH DEFENSE**

**(No Punitive Damages for Speech-Based Claims)**

Punitive damages are not recoverable on Plaintiff's defamation claims, or on any other claim to the extent liability rests on the content of Askew's speech. Or. Const. art. I, §§ 8, 10; Wheeler v. Green, 286 Or 99 (1979).

**FIFTEENTH DEFENSE**

**(Matter of Public Concern)**

The challenged statements addressed matters of public concern, including product originality, inventor credit, and race, so Plaintiff must prove falsity and fault and cannot recover presumed or punitive damages without proof of actual malice.

**SIXTEENTH DEFENSE**

**(Real Party in Interest / Lack of Standing)**

Elegance & Geekery LLC is a separate legal entity and not a party. Plaintiff cannot recover individually for the LLC's injuries, including those alleged in Claims 2, 3, and 6, and the LLC may appear only through licensed counsel. Fed. R. Civ. P. 17(a).

**SEVENTEENTH DEFENSE**

**(Qualified Privilege)**

Plaintiff's claims are barred to the extent the statements were qualifiedly privileged, including Askew's cease-and-desist and statements made in good faith to protect her own interests or to reply to Plaintiff's public statements.

**EIGHTEENTH DEFENSE**

**(Communications Decency Act)**

To the extent Plaintiff's claims are based on Askew's reposting or sharing of content created by third parties, they are barred by 47 U.S.C. § 230(c)(1).

**NINETEENTH DEFENSE**

**(No Justiciable Controversy)**

No patent has issued and Askew has asserted no infringement claim, so the requested declaration of non-infringement presents no actual controversy under 28 U.S.C. § 2201. Askew does not waive any claim or right.

**TWENTIETH DEFENSE**

**(Failure to Plead Special Damages)**

Claim Two fails because Plaintiff does not specifically state any item of special damage. Fed. R. Civ. P. 9(g).

**TWENTY-FIRST DEFENSE**

**(First Amendment Bar on Emotional-Distress Liability for Speech on Public Concern)**

Plaintiff's emotional-distress claim is barred by the First Amendment to the extent it rests on speech on matters of public concern.

**TWENTY-SECOND DEFENSE**

**(Recoupment)**

Any recovery by Plaintiff must be reduced, by way of recoupment, by the damages Askew suffered from Plaintiff's own false public statements about Askew arising out of the same transaction and occurrence as Plaintiff's claims, including Plaintiff's July 2025 public suggestion

that Askew had not filed a patent application and her public presentation of a 2021 magnetic accessory as "extremely similar functionally" to Hair Clique. Askew asserts recoupment defensively, to reduce or defeat Plaintiff's recovery, and it is available even if an affirmative claim on the same facts would be untimely.

**TWENTY-THIRD DEFENSE**

**(Unclean Hands)**

Plaintiff's requests for injunctive and declaratory relief are barred, in whole or in part, by her own inequitable conduct concerning the same dispute.

**TWENTY-FOURTH DEFENSE**

**(No Publication)**

Plaintiff's claims fail to the extent they rest on Askew's private emails to Elegance & Geekery's support address on July 16, 2025, which were not published to any third party.

**TWENTY-FIFTH DEFENSE**

**(Separate Conduct; Personal Damages Only; No Duplicative Recovery)**

Askew and Boyce made separate statements at different times to different audiences. Plaintiff may recover from Askew only those damages, if any, that she proves were caused by Askew's own actionable conduct and that Plaintiff suffered personally, not damages belonging to Elegance & Geekery LLC. Plaintiff may not recover the same damages more than once, whether from multiple defendants or under overlapping claims.

Askew reserves her right under Fed. R. Civ. P. 15(a)(1)(A) to amend this Answer within 21 days after serving it, including to assert counterclaims under Fed. R. Civ. P. 13.

**PRAYER FOR RELIEF**

Askew respectfully requests that the Court enter judgment in her favor on all of Plaintiff's claims, dismiss Plaintiff's claims against her with prejudice to the extent permitted by law, award taxable costs as allowed by law, and grant such other relief as the Court finds just.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Askew demands a trial by jury on all claims, defenses, and issues so triable.

DATED: September 28, 2026.

Respectfully submitted,

s/ Breana Askew
Breana Askew
Email: breanaaskew2@gmail.com
Defendant, Self-Represented

**CERTIFICATE OF SERVICE**

I certify that on September 28, 2026, I served a true and correct copy of the foregoing DEFENDANT BREANA ASKEW'S ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL on the following by the Court's CM/ECF system:

Kursten Owen, Plaintiff (self-represented), a registered CM/ECF user

Kiandria Demone Boyce, Defendant (self-represented), a registered CM/ECF user

s/ Breana Askew
Breana Askew, Self-Represented